# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON
LIVING TRUST; THE PRICHETT
LIVING TRUST; CYNTHIA W.
SADLER; SHIRLEY L. SCANLON
LIVING TRUST AND ROBERT
WESTFALL,

        Plaintiffs,

vs.                                       No. CIV 12-0039 JB/KBM

CONOCOPHILLIPS COMPANY, LLC,

        Defendant.

and

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON
LIVING TRUST; THE PRICHETT
LIVING TRUST; CYNTHIA W.
SADLER; and ROBERT WESTFALL,

        Plaintiffs,

vs.                                       No. CIV 12-0040 JB/LFG

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC and
WILLIAMS PRODUCTION COMPANY,
LLC; and WPX ENERGY ROCKY MOUNTAIN,
LLC, f/k/a WILLIAMS PRODUCTION RMT
COMPANY, LLC,

        Defendants.

## <u>MEMORANDUM OPINION</u>[1]

---

[1] On March 29, 2013, the Court entered an Order in both cases stating that it grants in part and denies in part Defendant ConocoPhillips Company's Motion to Dismiss Plaintiffs' First

**THIS MATTER** comes before the Court on:  (i) Defendant ConocoPhillips Company's Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0039 Doc. 11)("CP MTD"); (ii) and Defendants WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0040 Doc. 18)("WPX MTD").   Because the Plaintiffs named in the First Amended Complaint for Underpayment for Oil and Gas Royalties, filed in state court on December 5, 2011, filed in federal court on January 12, 2012 (Case No. CIV 12-0039 Doc. 1-1)("FAC") -- James H. Anderson Living Trust (through James Anderson as trustee), Pritchett Living Trust (through  April Pritchett as trustee), Cynthia W. Sadler, Shirley L. Scanlon Living Trust (through Shirley L. Scanlon, as trustee), and Robert Westfall -- and the Plaintiffs named in the Second Amended Complaint, filed February 16, 2012 (Case No. CIV 12-0040 Doc. 10)("SAC") -- James H. Anderson Living Trust (through James Anderson as trustee), Pritchett Living Trust (through  April Pritchett as trustee), Cynthia W. Sadler, and Robert Westfall -- are nearly identical and have made nearly identical allegations against the Defendants --

---

Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0039 Doc. 11), and Defendants WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0040 Doc. 18).  See Order, filed March 29, 2013 (Case No. CIV 12-0039 Doc. 73); Order, filed March 29, 2013 (Case No. CIV 12-0040 Doc. 94)(collectively, "Orders").  The Court stated that it would "at a later date issue an opinion more fully detailing its rationale for this decision."  Orders at 2 n.1.  This Memorandum Opinion is the promised opinion.

ConocoPhillips Company, LLC, and WPX Energy Production, LLC, f/k/a WPX Energy San

Juan LLC, Williams Production Company, LLC, and WPX Energy Rocky Mountain, LLC, f/k/a

Williams Production RMT Company, LLC -- in both matters, and the Defendants have made

nearly identical motions to dismiss the respective complaints against them, the Court will address

both parties' motions together in this Memorandum Opinion.  Any differences in fact or law

which exist between the two matters will be noted.

The Court held a hearing on both motions to dismiss on June 19, 2012.  The primary

issues are: (i) whether the Plaintiffs have sufficiently alleged that the Defendants are in breach of

the parties' oil and gas leases; (ii) whether the Plaintiffs have stated a claim for fraud that can

survive notwithstanding the parties' contractual relationship; (iii) whether the Plaintiffs have

sufficiently alleged that the Defendants breached the implied duty to market hydrocarbons as

recognized by New Mexico law; (iv) whether the Plaintiffs have alleged a plausible claim for

relief under the New Mexico Proceeds Payment Act, N.M.S.A. 1978, §§ 70-10-1 to 70-10-5 and

the Oil and Gas Conservation Act, Colo. Rev. Stat. §§ 34-60; (v) whether the Plaintiffs may

allege a claim for bad-faith breach of contract notwithstanding the parties' contractual

relationship; (vi) whether the Plaintiffs may allege a claim for unjust enrichment, and seek a

declaratory judgment and an injunction against the Defendants' actions, notwithstanding the

parties' contractual relationship; (vii) whether the Plaintiffs may allege a claim for conversion

against the Defendants notwithstanding the parties' contractual relationship; and (viii) whether

the Court should apply the Supreme Court of the United States' jurisprudence regarding rule 8(a)

of the Federal Rules of Civil Procedure to the Plaintiffs' class-action allegations and dismiss the Plaintiffs' class-action allegations. The Court grants in part and denies in part the CP MTD and WPX MTD. The Court will not dismiss the Plaintiffs' first cause of action, because the Plaintiffs have sufficiently alleged that the parties are in a contractual relationship and that the Defendants have breached the terms of the parties' leases. The Plaintiffs have plausibly alleged that the Defendants' reporting and royalty calculation conduct breaches the Defendants' duty of good faith and fair dealing, implied at law into every contract in New Mexico. The Court will not, therefore, dismiss the Plaintiffs' second cause of action to the extent it is a claim for a breach of the duty of good faith and fair dealing in contract. The Court dismisses the Plaintiffs' second cause of action to the extent it asserts a stand-alone claim of fraud in tort. The Court similarly dismisses the Plaintiffs' seventh cause of action, because the parties' leases preclude the Plaintiffs from recovering in tort for the breach of a duty that their leases cover. The Court will dismiss the Plaintiffs' third cause of action, because New Mexico law does not recognize that the Defendants' conduct alleged in the FAC and SAC breaches the Defendants' implied duty to market hydrocarbons. The Court will dismiss the Plaintiffs' fourth cause of action in part. The Plaintiffs may proceed on their theory that the Defendants' have failed to make timely payments as required under the Proceeds Payment Act, but may not proceed under Colorado's Oil and Gas Conservation Act in this Court. The Court will not dismiss the Plaintiffs' fifth cause of action because the Plaintiffs' have sufficiently alleged that the Defendants breached their duties under the leases, and as required by the covenant of good faith and fair dealing, in bad faith. The Court

will dismiss the Plaintiffs' sixth cause of action in part.  The Plaintiffs may not recover in equity

for conduct that allegedly breaches the parties' leases; the Court, therefore, dismisses the

Plaintiffs' claim for unjust enrichment.  The Court also dismisses the Plaintiffs' claim for

injunctive relief, because the Plaintiffs have alleged only that the Defendants' conduct will cause

them monetary harm in the future, and monetary harm is not irreparable.  The Plaintiffs may seek

a declaratory judgment proscribing the Defendants' future conduct under the leases.  Lastly, the

Court will not dismiss the Plaintiffs' class-action allegations because these allegations do not

purport to state a claim for relief, and, even if they did, the Plaintiffs' have made allegations,

sufficient to demonstrate that they may plausibly bring this matter as a class action.

## FACTUAL BACKGROUND

This matter arises from a dispute over the royalty payments that the Defendants,

producers of oil and gas in New Mexico and Colorado, and working interest holders on oil and

gas leases belonging to the Plaintiffs, owe to the Plaintiffs, royalty interest holders on the leases.

> The San Juan Basin, one of the largest natural gas producing fields located in
> northwest New Mexico and southwest Colorado, was originally developed in the
> early 1950's by El Paso Natural Gas Company . . . .  The natural gas produced in
> the San Juan Basin is conventional gas which contains methane (natural gas) and
> entrained natural gas liquids ("NGLs"), such as ethane and butane.  In order to
> make the gas safe to enter the interstate pipeline, the NGLs must be removed from
> the gas stream.

Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1099 (10th Cir. 2005)("Elliott

Indus.").  As this matter comes before the Court on a Motion to Dismiss, the Court will assume

that all facts in the Plaintiffs' complaints are true.  See Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007)(stating that, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

The Plaintiffs in this matter all own interests in hydrocarbons derived from wells in the States of New Mexico and Colorado.  See FAC ¶¶ 1-7, at 1-2; SAC, ¶¶ 1-4, at 1-2.  The Plaintiffs reside in the southwest, in the states of Utah (Anderson Living Trust), Colorado (Pritchett Living Trust), Texas (Sadler), and New Mexico (Scanlon Living Trust and Robert Westfall).  See FAC ¶¶ 1-7, at 1-2; SAC ¶¶ 1-4, at 1-2.  ConocoPhillips and WPX Energy Production, LLC, f/k/a WPX Energy San Juan LLC, Williams Production Company, LLC, and WPX Energy Rocky Mountain, LLC, f/k/a Williams Production RMT Company, LLC ("WPX") are producers and vendors of conventional natural gas, originating from the Fruitland coal formation; coalbed methane ("CBM") natural gas; and other petroleum hydrocarbons from wells in which the Defendants own lease-hold interests.[2]  See FAC ¶ 8, at 2-3; SAC ¶ 9, at 3.

---

[2] "Conventional natural gas" differs from "unconventional natural gas" in the manner, ease and cost associated with extracting the resources.  Conventional & Unconventional, Canadian Association of Petroleum Producers, http://www.capp.ca/CANADAINDUSTRY/ NATURALGAS/CONVENTIONAL-UNCONVENTIONAL/Pages/default.aspx  (last  visited Apr. 24, 2012).  Conventional natural gas is produced from "relatively highly porous and permeable sandstone or carbone geologic formations."  Natural Gas: A Primer, Natural Resources Canada, (last modified Jan. 18, 2011), http://www.nrcan.gc.ca/energy/sources/natural-gas/1233#conventional.  Unconventional natural gas is produced from "coal seams  (. . . CBM) , low permeability rocks . . . , or shale . . . ."  Id.

The Fruitland Coal formation is "one of the most prolific sources of U.S. coalbed methane reserves."  Mesa Royalty Trust: Topics: San Juan Basin Fruitland Coal Drilling, wikinvest (April 24, 2013, 11:14 AM EDT), http://www.wikinvest.com/stock/Mesa_Royalty_ Trust_%28MTR%29/San_Juan_Basin_Fruitland_Coal_Drilling.

"Plaintiffs each own a non-cost bearing interest in the revenues derived from the production and sale of hydrocarbons pursuant to the terms of oil and gas leases owned or partially owned by" the Defendants in the "subject wells," save for Scanlon Living Trust, which owns no interest in WPX lease-hold interests.  FAC ¶ 9, at 3; SAC ¶10, at 3.  The "subject wells" are "all wells in the States of New Mexico and Colorado in which [the Defendants own] all or a portion of the oil and gas leases under which non-cost bearing, royalty and/or overriding royalty payments are/were owed, and which produce or produced hydrocarbons."  FAC ¶ 10, at 3; SAC ¶ 11, at 3.  The Plaintiffs bring this action as a class against the Defendants on behalf of all owners of "non-cost bearing" royalty interests in the subject wells.[3]  FAC ¶ 12, at 4; SAC ¶ 13, at 4.

The Plaintiffs, or their predecessors, acquired their interests in the hydrocarbon revenues from the subject wells through executing oil and gas mining leases and/or permits to Defendants.  See FAC ¶ 10, at 3; SAC ¶ 11, at 3.  Under the leases, the Defendants owe the Plaintiffs a "duty to pay royalties on all hydrocarbons" for the value or price which the Defendants do or should receive from the "arm's length" sale of the hydrocarbons.  FAC ¶ 11, at 3; SAC¶ 12, at 3-4.  The leases give the Plaintiffs a right to royalties in the "drip condensate," a liquid product  which is

CBM natural gas is natural gas extracted from coal beds.  Coalbed Methane, Wikipedia (Apr. 23, 2013), http://en.wikipedia.org/wiki/Coalbed_methane.

[3] The Plaintiffs exclude from the FAC and SAC "any claims previously asserted in prior cases in which such claims were determined by final judgment and/or settled by final order approving settlement at the time of this filing between the parties hereto, inclusive of putative Class Members."  FAC ¶ 20, at 6; SAC ¶ 21, at 6-7.  The Plaintiffs also exclude from the proposed class definition all "interests owned by any federal, state or municipal governmental bodies, as well as any interest held in trust by the federal government for any Indian tribe or organization."  FAC ¶ 20, at 6; SAC ¶ 21, at 6-7.

recovered during the Defendants' oil and gas mining processes.[4]  FAC ¶ 26, at 9; SAC ¶ 28, at 9.

The leases do not provide for the Defendants to calculate the Plaintiffs' royalty payments using

the average sale price of a mixture of hydrocarbons from wells in which the Plaintiffs own a

royalty interest and other wells in which the Plaintiffs do not own royalty interests.  See FAC ¶

11, at 3-4; SAC ¶ 12, at 3-4.

The Defendants have not credited the Plaintiffs with the revenue derived from the drip

condensate.  See FAC ¶ 27, at 9; SAC ¶ 29, at 9-10.  Currently, the Defendants calculate the

Plaintiffs' royalty interests on the sale price received from the Defendants' affiliated

intermediaries for hydrocarbons from wells in which the Plaintiffs own royalty interests, mixed

with hydrocarbons from other wells in which the Plaintiffs do not own royalty interests.  See

FAC ¶¶ 31-32, at 10-11; SAC ¶¶ 33-34, at 11.  The Defendants' affiliated intermediaries sell the

hydrocarbons at a significant profit, a profit which the Defendants do not pass on to the

Plaintiffs.  See FAC ¶ 32, at 11; SAC ¶ 33, at 11.  Additionally, the Defendants royalty payments

to the Plaintiffs have not been consistent.  On "numerous instances," the Defendants have waited

---

[4] Drip condensate is a "high-grade liquid which is sold like oil, that comes off of the production . . . ."  Transcript of Hearing at 20:10-15 (taken July 5, 2012)(Doc. 54)(Brickell). Drip condensate is a "very valuable commodity."  Id. at 20:24-25 (Brickell).  The Department of Interior has defined drip condensate as:

> any condensate recovered downstream of the facility measurement point without resorting to processing.  Drip condensate includes condensate recovered as a result of its becoming a liquid during the transportation of the gas removed from the lease or recovered at the inlet of a gas processing plant by mechanical means, often referred to as scrubber condensate.

64 F.R. 43506-01.

longer than forty-five or even ninety days after receiving revenue from the Plaintiffs' shares to pay the Plaintiffs their royalty interest.  FAC ¶¶ 55-57, at 17; SAC ¶¶ 57-60, at 16-17.

The Defendants have not always disclosed to the Plaintiffs the gross volume of gas produced from the Plaintiffs' wells, the gross revenue or value the Defendants obtain from the gross production of gas, and the extent of costs that are deducted from the Plaintiffs' royalty payments.  See FAC ¶ 36, at 12; SAC ¶ 38, at 12.  One such cost which is deducted from the Plaintiffs' royalty payments is the cost of rendering the natural gas and other hydrocarbons taken from the subject wells marketable.  See FAC ¶ 49, at 14; SAC ¶51, at 15.

## PROCEDURAL BACKGROUND

Many of the Defendants' arguments for the Court to dismiss the Plaintiffs' FAC and SAC are grounded in a theory that the parties' contractual relationship, as defined by the Plaintiffs' leases, precludes the Plaintiffs' claims in tort.  The parties also dispute whether the Plaintiffs may bring a claim alleging that the Defendants have violated the marketable condition rule. These core issues dominate the parties' dispute.  Many of the Defendants' arguments overlap and are applicable against numerous causes of action in the FAC and SAC.

1.    **The Plaintiffs' First Cause of Action: Failure to Pay Royalty on Volumes of Hydrocarbons, Including Drip Condensate.**

The Plaintiffs allege in their first cause of action that the Defendants' continual failure to credit revenues from the value of the drip condensate is a breach of the Plaintiffs' leases and a violation of state law.  See FAC ¶ 27, at 9; SAC ¶ 29, at 9-10.  In support of this claim, the Plaintiffs allege that the Defendants are the working interest holders of leases belonging to the

Plaintiffs.  See FAC ¶¶ 22-23, at 7-8; SAC ¶¶ 23-25, at 7-8.  The Plaintiffs allege that the Defendants are in breach of the leases by failing to provide the Plaintiffs with a "certain fractional percentage of the revenue" derived from the value of the drip condensate.  FAC ¶¶ 25, 27, at 9; SAC ¶¶ 27, 29, at 9-10.   The Plaintiffs provide information identifying the leases at issue, including the name of the lessors, name of the lessees, the date of execution, and a description of each lease.  See FAC ¶ 24, at 8; SAC ¶ 26, at 8-9.[5]

---

[5] The Plaintiffs list the following leases in the FAC:

| | |
|---|---|
| Lessor: | M.L. Faverino and Mary Faverino, husband and wife |
| | John R. Anderson and Georgia Faye Anderson, husband and wife |
| Lessee: | C.H. Nye |
| Book/Page: | Book 130 Page 248 |
| Date: | December 9, 1947 |
| Description: | E/2 NW/4, Section 26-29N-10W |

| | |
|---|---|
| Lessor: | United States Land Office, Dept. of the Interior |
| Lessee: | Dr. J.F. Day |
| Serial No: | 047039 |
| Date: | October 13, 1923 |
| Description: | S/2 Section 7, S/2 Section 8, Sections 17, 18, and 20 |
| | Township 28N, Range 10W |

| | |
|---|---|
| Lessor: | State of New Mexico |
| Lessee: | L.N. Hagood |
| Serial No: | NM 012641 |
| Date: | July 1, 1951 |
| Description: | Section 26-31N-8W |
| | Section 35-31N-8W |

In addition, Plaintiff Robert Westfall is the owner of an undivided 82/306.47 mineral interest in and to 306.47 contiguous acres located in Section 4 and 9, T29N, R6W, Rio Arriba County, New Mexico, which is subject to a valid and existing oil and gas lease dated March 19, 1947, by and between Jose Pablo

---

Gomez and Mathilde A. Gomez, his wife, to Chas. W. McCarty, filed of record in the office of the County Clerk of Rio Arriba County at Book 3 Oil & Gas, Page 154.

FAC ¶ 24, at 8-9.  The Plaintiffs list the following leases in the SAC:

Lessor:        William H. McCarty and Lupe B. McCarty, husband and wife
Lessee:        Frank H. Denman
Date:          June 19, 1947
Book/Page:     Book 3 Page 243-244
Description:   N/2 NW/4 and SE/4 NW/4 Section 14-29-N-5W
               NE/2 NE/4 Section 15-29N-5W

Lessor:        Juan D. Montoya and Aleja M. Montoya, husband and wife
Lessee:        Chas. W. McCarty
Date:          December 16, 1946
Book/Page:     Book 3 Page 133
Description:   SE/4 NW/4, SW/4 NE/4, NW/4 SE/4 AND SE/4 SW/4 less 32
               acres deeded to Mrs. Emilio Garcia at Book 21 page 94,
               Section 34-29N-5W

Lessor:        Wallace B. Horn and Cora B. Horn, husband and wife
Lessee:        A.L. Duff, Jr.
Date:          April 16, 1946
Book/Page:     Book3 Page 119-120
Description:   SW/4 SE/4 Section 30-29N-5W
               W/2 NE/4, SE/4 NE/4, SE/4 NW/4 and
               N/2 SW/4 Section 31-29N-5W

In addition, Plaintiff Robert Westfall is the owner of an undivided 82.306.47 mineral interest in and to 306.47 contiguous acres located in Section 4 and 9, T29N, R6W, Rio Arriba County, New Mexico, which is subject to a valid and existing oil and gas lease dated March 19, 1947, by and between Jose Pablo Gomez and Mathilde A. Gomez, his wife, to Chas. W. McCarty, filed of record in the office of the County Clerk of Rio Arriba County at Book 3 Oil & Gas, Page 154.

SAC ¶ 26, at 8-9.

- 11 -

The Defendants contend that the Plaintiffs have failed to sufficiently allege the existence of a contractual relationship between the parties.  The Defendants point to the Tenth Circuit's ruling in Elliott Indus., and assert that oil and gas leases are construed "'like any other contract.'" CP MTD at 3 (quoting 407 F.3d at 1108); WPX MTD at 3 (same).  The Defendants argue that, although the Plaintiffs have referenced the original leases granting royalty interest in the SAC and FAC, the Plaintiffs have not shown with any specificity that the named Plaintiffs are the owners of those interests or how the Plaintiffs acquired royalty interests from those contracts. The Defendants assert that the Plaintiffs' assertion of ownership interests are conclusory, because the Plaintiffs have not provided the specific instruments giving them title to the leases. See CP MTD at 3-4; WPX MTC at 3-4.  Further, the Defendants argue that the Plaintiffs fail to state a claim, because the Plaintiffs have not pled the specific contractual term which the Defendants supposedly breached.  See CP MTD at 4-5; WPX MTD at 4.  ConocoPhillips points to Plaintiffs' statement that they are "entitled to a certain fractional percentage of the revenue" and argues that, without including the contractual term granting the percentage of the revenue in the FAC, the Plaintiffs' allegation is merely stating a legal conclusion.  CP MTD at 5.  WPX asserts that the Plaintiffs' "vague allegation" that WPX is required by state law to pay royalties is insufficient, because the Plaintiffs identify no legal provision that imposes a duty to pay royalties on WPX.  WPX MTD at 5.

The Plaintiffs contend that their first cause of action is well within the required pleading standards of Ashcroft v. Iqbal 556. U.S. 662 (2009), and Bell Atl. Corp. v. Twombly.  See

Plaintiffs' Response to Defendant ConocoPhillips Company, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas Royalties at 3, filed April 18, 2012 (Case No. CIV 12-0039 Doc. 23)("CP MTD Response"); Plaintiffs' Response to Defendants WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Underpayment of Oil and Gas Royalties at 3, filed April 18, 2012 (Case No. CIV 12-0040 Doc. 35)("WPX MTD Response").  The Plaintiffs assert that their FAC and SAC satisfy the Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly standards by alleging the elements of a claim for breach of contract: "(1) Plaintiffs and Defendants are parties to a contract; (2) the contract require Defendants to pay the Plaintiffs a proportionate share of the value of all production of hydrocarbons from Defendant[s'] wells; and (3) Defendant has failed to properly make such payments to Plaintiffs."  CP MTD Response at 6-7; WPX MTD Response at 6, 8.  The Plaintiffs assert that they have notified the Defendants of the specific contractual provisions that the Defendants are breaching the obligations: (i) to "pay royalties on all hydrocarbons, including drip condensate, produced from each of Plaintiffs' wells, for the value/price which is/should be received by the Defendant upon an arm's length sale of said hydrocarbons;" (ii) to "market Plaintiffs' natural gas and all other proceeded and/or processed hydrocarbons at the highest obtainable price; to account for and pay each Plaintiff accurately for its proportionate interest" in proceeds received from the sale of the Plaintiffs' share of hydrocarbons; (iii) to "pay royalties on the value of drip condensate;" (iv) to "pay royalties based on the value of the highest available price in an arm's-length transaction of the

products from Plaintiffs' well;" (v) to "market production to the mutual advantage of both the lessee and Plaintiffs;" and (vi) to "market condensate, natural gas, natural gas liquids, and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price to the parties' mutual advantage."  CPT MTD Response at 4 (citing FAC ¶¶ 11, 26, 30, 42, 43, at 3-4, 9, 10. 13-14); WPX MTD Response at 4 (citing SAC ¶¶ 12, 28, 32, 44, 45, at 3-4, 9, 11, 14).  The Plaintiffs further contend that they do not have a "duty to re-type each oil and gas lease 'into' the complaint, especially when the Defendant . . . has an entire department that maintains its lease files and . . . pays these Plaintiffs <u>every month</u>, based on said lease contracts."  CP MTD Response at 5 (emphasis in original); WPX MTD Response at 6 (same).  The Plaintiffs assert that the Defendants are asking the Court to apply a motion for summary judgment standard to their FAC and SAC.  <u>See</u> CP MTD Response at 6; WPX MTD Response at 6.  The Plaintiffs assert that "nothing in <u>Rule 8(a)</u>, <u>Twombly</u>, or <u>Iqbal</u> requires the level of specificity urged by" the Defendants.  CP MTD Response at 9; WPX MTD at 8 (emphasis in original).  The Plaintiffs contend that they need not attach a title to the FAC or SAC to survive a motion to dismiss.  <u>See</u> CP MTD Response at 9; WPX MTD at 8.  The Plaintiffs assert that their allegation that the Defendants failed to credit any revenues to them for the value of drip condensate is an allegation of fact, and not a legal conclusion, as the Defendants assert.  <u>See</u> CP MTD Response at 9-10; WPX MTD Response at 9.

The Plaintiffs also assert that there is no "alternative, lawful explanation" for the Defendants' conduct, and, therefore, the Court has no basis to conclude that the Defendants'

conduct has a plausible, legal explanation.  CP MTD Response at 7; WPX MTD Response at 7.

The Plaintiffs assert that the Defendants' denial of illegal conduct is "threadbare" and

"conclusory."  CP MTD Response at 7; WPX MTD Response at 8.  The Plaintiffs contend that

the Court must accept as true that the Plaintiffs, and/or their predecessors, executed oil and gas

mining leases and/or permits to the Defendants, and that the Defendants operate and/or are the

leasehold owners of the subject wells from which oil and gas/hydrocarbons are produced and

sold.  See CP MTD Response at 8 (citing Arkalon Grazing Assoc. v. Chesapeake, No. CIV 09-

1394-EFM, 2010 WL 4622441 (D. Kan. Nov. 4, 2010)); WPX MTD Response at 8.

The Plaintiffs assert that the Defendants' reliance on Elliott Indus. is misplaced.  The

Plaintiffs contend that, unlike the plaintiffs in Elliott Indus., who expressly disclaimed any

breach-of-contract claim, the "cornerstone" of the Plaintiffs' FAC and SAC is a breach of

contract claim.  CP MTD Response at 10 (citing Elliott Indus., 407 F.3d at 1108); WPX MTD

Response at 9 (same).  The Plaintiffs contend, therefore, that Elliott Indus. does not apply to the

motions to dismiss their FAC or SAC.  See CP MTD Response at 10; WPX MTD at 10.

The Defendants contend that the Plaintiffs have failed to demonstrate that they are parties

to a relevant contract.  See ConocoPhillips Company's Reply Memorandum in Further Support

of its Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas

Royalties at 2, filed May 24, 2012 (Case No. CIV 12-0039 Doc. 30)("CP Reply"); Defendants'

Reply Memorandum in Further Support of their Motion to Dismiss Plaintiffs' Second Amended

Complaint for Underpayment of Oil and Gas Royalties at 2, filed May 24, 2012 (Case No. CIV

- 15 -

12-0040 Doc. 45)("WPX Reply").  The Defendants point out that the Plaintiffs' names do not match the names of the lessors of the leases listed in the FAC and SAC.  See CP Reply at 2 (citing FAC ¶ 24, at 8-9); WPX Reply at 2 (citing SAC ¶ 24, at 7-8).  The Defendants also assert that it is impossible to determine their legal duties to the Plaintiffs, because neither the FAC nor SAC lists the specific interests which the Plaintiffs hold, and the Defendants' duties vary with different possible interests: the Defendants contend that an overriding royalty interest does not enjoy the benefit of an implied covenant to market production, an instrument creating an overriding royalty may have language that negates an obligation to make payments without subtracting downstream processing costs, and a unit agreement may allow for post-production costs to be deducted from royalty payments.  See CP Reply at 2-3; WPX Reply at 2 (citing Elliott Indus., 407 F.3d at 1109-10; Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶¶ 6, 12, 15, 24, 129 N.M. 529, 10 P.3d 835; Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. 690, 701, 705-06, 858 P.2d 66, 81-82 (1993).  The Defendants contend that the Plaintiffs' interests may vary in "legally significant ways," and the Plaintiffs have obfuscated their breach-of-contract claim by crafting the FAC and SAC as though one contract created each of the Plaintiffs' interests.  CP Reply at 3; WPX Reply at 3.

ConocoPhillips contends that for two of leases listed in the FAC -- which list the United States Land Office, Department of the Interior, and the State of New Mexico as lessors -- "it is simply not plausible that those sovereigns assigned their royalty interest to a private party," and,

- 16 -

therefore, the Plaintiffs' must own "something other than a royalty interest, such as an overriding royalty interest."  CP Reply at 2.

The Defendants also contend that the Plaintiffs cannot state a claim for breach of contract because they have not alleged any "terms of any payment obligations."  CP Reply at 3; WPX Reply 3.  The Defendants contend that the Plaintiffs' statement that the Defendants must "pay a percentage of revenue from production to Plaintiffs . . . calculated on arms-length transactions" is a legal conclusion.  CP Reply at 3; WPX Reply at 3.  The Defendants also assert that the allegations regarding sales to affiliated intermediaries does not make the Plaintiffs' breach-of-contract claim more plausible.  See CP Reply at 4; WPX Reply at 3.  The Defendants assert that the "sale of production to affiliates is not in and of itself a breach of a payment obligation."  CP Reply at 4 (citing Garfield v. True Oil Co., 667 F.2d 942, 946 (10th Cir. 1982)); WPX Reply at 3-4 (same).  The Defendants contend that the Plaintiffs' reliance on Arkalon Grazing Assoc. v. Chesapeake Operating, Inc. is misplaced, because the United States District Court for the District of Kansas did not evaluate the adequacy of the plaintiffs' breach-of-contract claim in that opinion, but, rather, provided information regarding the breach-of-contract allegations only as background for the defendants' motion to dismiss particular allegations of fraudulent concealment.  See CP Reply at 5 (citing 2010 WL 4622441, at *2); WPX Reply at 4 (same).  The Defendants assert that the Plaintiffs have "declined to satisfy their pleading burden" by not restating the particular contractual language allegedly breached, and, further, the Plaintiffs have failed to "plead the legal effect of each agreement with an adequate factual description of those

- 17 -

terms," and, therefore, the Plaintiffs' breach of contract claim fails to state a claim upon which relief can be granted.  CP Reply at 5-6; WPX Reply at 4-5.  The Defendants also assert that the Plaintiffs have mischaracterized the Tenth Circuit's holding in Elliott Indus., arguing that, just as the plaintiffs in Elliott Indus. divorced their claims from any contractual language, the Plaintiffs' failure to provide specific contractual language that the Defendants have breached renders their allegation of breach of contract legally inadequate.  See CP Reply at 6-7 (citing Elliott Indus., 407 F.3d at 1109-15); WPX Reply at 5 (same).

**2.** **The Plaintiffs' Second Cause of Action: Fraud and Misstatement of Value of Gas and Affiliate Sales.**

The Plaintiffs allege in their second cause of action that the Defendants have reaped "substantial, unjustified benefits and profits at Plaintiffs' direct expense;" and the Defendants have "knowingly failed to disclose excessive and impermissible charges and reductions . . . as well as the gross volume, value and type of all hydrocarbons produced, used, sold or traded" in violation of the Defendants' statutory and common-law duty to report that production, and to "act in good faith and fair dealing."  FAC ¶¶ 35, 38, at 11-12; SAC ¶¶ 37, 40, at 12-13.

The Plaintiffs allege that the Defendants have a duty under the leases and state law to "pay royalties based on the value of the highest available price in an arms-length transaction of the products from the Plaintiffs' wells."  FAC ¶ 30, at 10; SAC ¶ 32, at 11.  In support of their claim, the Plaintiffs assert that the Defendants' practice of calculating the Plaintiffs' royalty payments on the sale to affiliated intermediaries of hydrocarbons from wells in which the Plaintiffs' have ownership interests, mixed with hydrocarbons form wells in which the Plaintiffs

do not have royalty interests, is "self-dealing."  FAC ¶¶ 30-34, at 10-11; SAC ¶¶ 32-36, at 11-12. The Plaintiffs state that the Defendants and their affiliates have "realized substantial profits from the resale of said hydrocarbons, to Plaintiffs' detriment."     FAC ¶ 32, at 11; SAC ¶ 33, at 11. The Plaintiffs assert that this practice increases the "[l]egally assessable costs . . . downstream of the wellhead" beyond a reasonable level.  FAC ¶ 34, at 11; SAC ¶ 36, at 11.  The Plaintiffs allege that this practice is a breach of the "duties and covenants imposed upon ConocoPhillips by law, including good faith and fair dealing, by the Lease(s), covenants, and applicable spacing orders and/or unitization agreements and, as such, constitutes a continuing wrong."  FAC ¶ 35, at 11; SAC ¶ 37, at 12.

The Plaintiffs also allege, as part of their second cause of action, that Defendants knowingly "failed to disclose the gross volume and value and character/type of all hydrocarbons produced, processed, used, traded or sold from Plaintiffs' wells."  FAC ¶ 37, at 12; SAC ¶ 39, at 12.  The Plaintiffs allege that they have suffered damages as a result of the Defendants' "false" monthly statements.  FAC ¶ 37, at 12; SAC ¶ 39, at 12.  Further, the Plaintiffs allege that the Defendants "intended for Plaintiffs to rely upon" the monthly statements.  FAC ¶ 38, at 12; SAC ¶ 40, at 13.  The Plaintiffs argue that, by not disclosing the volume, value, and hydrocarbons produced with more particularity, the Defendants violated their duty to report and to act in good faith and fair dealing, constituting fraudulent concealment.  See FAC ¶ 38, at 12; SAC ¶ 40, at 13.

- 19 -

The Defendants assert that Tenth Circuit case law bars the Plaintiffs' second cause of action.  See CP MTD at 6-7; WPX MTD at 6.  The Defendants assert that Elliott Indus. requires the Plaintiffs to "allege sufficient facts to establish that tort liability does not conflict with the contractual duties between the parties" to avoid contractual duties precluding the Plaintiffs' tort claims. CP MTD at 6-7 (internal quotations omitted); WPX MTD at 6 (same).  The Defendants argue that the Plaintiffs have not shown that their tort claims are separate from any claims arising from the parties' contractual relationship, because the Plaintiffs have not provided specific contractual language in the FAC or SAC.  The Defendants assert, thus, that the parties' contractual duties preclude the Plaintiffs' tort claims.  See CP MTD at 6-7, WPX MTD at 6.

Additionally, the Defendants assert that the Court must dismiss the Plaintiffs' fraud claim because the Plaintiffs have not pled sufficient particular facts to establish the claim of fraud.  See CP MTD at 7; WPX  MTD at 6-7.  Specifically, the Defendants argue that the Plaintiffs' have not provided any facts which show that the Defendants knowingly made false representations to the Plaintiffs to induce them to act.  See CP MTD at 7-8; WPX MTD at 7.  The Defendants assert that the Plaintiffs' allegation of fraud is conclusory, merely stating the cause of action, and therefore insufficient.  See CP MTD at 7-8; WPX  MTD at 7.  With respect to Plaintiffs' allegation that the Defendants had a duty to disclose certain information in the monthly statements, the Defendants argue that the Plaintiffs have not shown any contractual authority which imposes that duty on the Defendants.  See CP MTD at 8; WPX MTD at 7.  The Defendants also assert that New Mexico law does not impose on them a duty to disclose.  See CP

MTD at 8; WPX MTD at 7.  The Defendants assert that the Plaintiffs have not shown that a fiduciary relationship exists between the parties and that, without a fiduciary relationship, New Mexico law does not impose a duty to disclose on a party.  Rather, the Defendants assert that, under Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. at 701, 858 P.2d at 77, an "arms-length relationship established by a mineral lease between the working interest owners and the royalty interest owners" does not create a fiduciary duty that would require disclosures be made. CP MTD at 9; WPX MTD at 8.  In response to the Plaintiffs' assertion that the duty of good faith and fair dealing creates a duty to disclose in the Defendants, the Defendants argue that "implied covenants" go to the issue of breach, and not to whether a party had a duty to disclose material information.  CP MTD at 9-10 (citing Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 115 N.M. at 701, 858 P.2d at 77); WPX MTD at 8 (same).  WPX further alleges that the Proceeds Payment Act does not impose a duty to disclose on payors of royalties in response to the Plaintiffs' statement that New Mexico law imposes a duty to disclose.  See WPX MTD at 9.

Lastly, the Defendants assert that the Plaintiffs' second cause of action fails to meet the pleading standards of rules 8(a)(1) and 9(b) of the Federal Rules of Civil Procedure.  See CP MTD at 10; WPX MTD at 9.  The Defendants assert that the Plaintiffs' allegations of fraud are insufficient, because the Plaintiffs did not point to the lack of any specific facts that demonstrates the Defendants' transactions with the affiliated intermediaries or any fact that identifies the affiliated intermediaries.  See CP MTD at 10-11; WPX MTD at 9-10.  The Defendants assert that, on the whole, the Plaintiffs' second cause of action for fraud and misstatements fails to

provide anything more than conclusory allegations, and is devoid of the facts necessary to survive a motion to dismiss.  See CP MTD at 10-12; WPX MTD at 9-11.

The Plaintiffs contend that they have pleaded all of the elements of a fraud claim, with particularity, under New Mexico law:

> that [the Defendants]  misrepresent[] the volume and value of gas produced; that [they] know[] the volumes and values reflected on Plaintiffs' check stubs are incorrect but [] state[] them anyway; [they] continue[] to mislead Plaintiffs as to the true volume value of the gas produced and uses on affiliate sale in order to decrease Plaintiffs' share of revenues on the true values and volumes of produced hydrocarbons; and [they] continue[] reporting in this fashion to conceal the true amounts owed Plaintiffs.

CP MTD Response at 11 (citing Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd., 113 N.M. 9, 14 , 820 P.2D 1323, 1328 (1991)); WPX MTD Response at 10 (same).

The Plaintiffs further contend that the Defendants' reliance on Elliott Indus. for the assertion that the Plaintiffs' contractual claims preclude their tort claims is inapposite, because the Tenth Circuit dismissed the plaintiffs' tort claims in Elliott Indus. on the basis of the plaintiffs' failure "to establish any contractual obligations owing the plaintiffs."  CP MTD Response at 11 (citing Elliott Indus., 407 F.3d at 116); WPX MTD Response at 11 (same).

The Plaintiffs also contend that they have pleaded misstatements giving rise to a claim of fraud: (i) that the Defendants engaged in self-dealing and non-arm's-length transactions with their affiliates resulting in improper charges to the Plaintiffs; (ii) that the Defendants failed to disclose the gross volume of gas produced from the subject wells on the monthly statements; (iii) that the Defendants failed to disclose the gross revenue or value attributed to the gross

production, and the reductions and/or costs to the Plaintiffs' royalty payments from the sale to the affiliated intermediaries, on the monthly statements; and (iv) that the Defendants failed to disclose the "character/type of all hydrocarbons 'produced, processed, used, traded or sold from Plaintiffs' wells'" on the monthly statements.  CP MTD Response at 11-12 (quoting FAC ¶¶ 36-37, at 12)(citing FAC ¶ 36, at 12); WPX MTD Response at 11 (quoting SAC ¶ 39, at 12)(citing SAC ¶¶ 38-39, at 11-12).  The Plaintiffs assert that the FAC and SAC allege that the Defendants improperly calculated the amount of their royalty payments, and that the Defendants do not inform the Plaintiffs of the actual volume of oil and/or hydrocarbons produced from the subject wells.  See CP MTD Response at 12 (citing Paiz v. State Farm Fire & Cas. Co., 118 N.M. 203, 212, 880 P.2d 300, 309 (1994); Spencer v. J.P. White Bldg., 92 N.M. 211, 213, 585 P.2d 1092, 1095 (1978)); WPX MTD Response at 11 (same).

The Plaintiffs assert that the Defendants' conduct is more than a breach of contract, but is also fraud, because the Defendants have intentionally failed "to disclose pertinent information to Plaintiffs and provide false production volumes, values and improper costs when calculating Plaintiffs' royalty with the intent to deceive Plaintiffs."  CP MTD Response at 12 (citing FAC ¶¶ 36-38, at 12); WPX MTD Response at 11-12 (citing SAC ¶ 38, at 12).  The Plaintiffs assert that they have relied upon the Defendants' representations to their detriment.  See CP MTD Response at 12; WPX MTD Response at 12.

The Plaintiffs concede that, as the Defendants allege, New Mexico has not recognized a fiduciary duty between mineral rights lessors and lessees.  See CPT MTD Response at 13; WPX

MTD Response at 12.   The Plaintiffs assert, however, that the leases created a "special relationship" between the Plaintiffs and the Defendants, under which the Defendants have a duty to disclose accurate reports regarding the production volumes, values, and associated costs from the subject wells.   CP MTD Response at 13 (citing IGEN Int'l Inc. v. Roche Diagnostics GmbH, 335 F.3d 303, 314-15 (4th Cir. 2003); R.A. Peck, Inc. v. Liberty Fed. Sav. Bank., 108 N.M. 84, 89, 766 P.2d 928, 933 (Ct. App. 1988)); WPX MTD Response at 12 (same).

The Plaintiffs assert, contrary to the Defendants' allegations, that the Defendants' sales to affiliated intermediaries constitutes fraud.   The Plaintiffs contend that the Defendants' sales to affiliated intermediaries, through which the Defendants "realize a higher value from the sale of hydrocarbons than what Defendant[s] report to Plaintiffs," are fraudulent transactions, because the Defendants use "artificial, non-arm's-length sales or transfers as the basis for its royalty payments to Plaintiffs," and because the Defendants do not share the "so-called 'profits' on its arm's length sales with Plaintiffs."   CP MTD Response at 14 (citing FAC ¶¶ 31, 32, 34, at 10-11; WPX MTD Response at 13 (citing SAC ¶¶ 33, 34, 36, 37, at 11-12).   The Plaintiffs assert that in Arkalon Grazing Assoc. v. Chesapeake, the United States District Court for the District of Kansas determined that plaintiffs had, in a similar suit, sufficiently alleged that the defendants' calculation of royalty payments constituted fraudulent concealment.   See CP MTD Response at 15; WPX MTD Response at 15.   The Plaintiffs urge the Court to reach the same conclusion here as the district court did in Arkalon Grazing Assoc. v. Chesapeake.   See CP MTD Response at 15; WPX MTD Response at 15.

- 24 -

The Defendants contend that the Plaintiffs' allegations of fraud only restate their allegations for breach of contract, and, therefore, are legally insufficient under New Mexico law. See CP Reply at 7 (citing Isler v. Tex. Oil and Gas Corp., 749 F.2d 22 (10th Cir. 1984); Rio Grande Jewelry Supply, Inc. v. Data Gen. Corp., 101 N.M. 798, 689 P.2d 1269 (1984)).   The Defendants further contend that the Plaintiffs have failed to plead an allegation of fraud with particularity, because neither the FAC nor the SAC references an "affirmative misrepresentation of fact, known to be untrue, made with intent to deceive and induce Plaintiffs to act, or that Plaintiffs relied on misrepresentations to their detriment."  CP Reply at 8 (emphasis in original); WPX Reply at 6 (same).  The Defendants contend that the Plaintiffs' closest allegation of fraud is the assertion that the Defendants withheld information in the monthly statements, but the Defendants contend that the Plaintiffs have not provided any information which would allow the Court to plausibly conclude that the Defendants had a duty to disclose the withheld information. See CP Reply at 8; WXP Reply at 7.  The Defendants assert that the Plaintiffs do not allege or contend that the leases require the Defendants to make the allegedly withheld disclosures, as the Plaintiffs rely on common law or statutory law to assert a breach of the duty to disclose information.  See CP Reply at 8, WPX Reply at 7.  The Defendants contend that under New Mexico law, an implied covenant of good faith and fair dealing does not create a duty to disclose information, the withholding of which constitutes fraud.  The Defendants contend, rather, that New Mexico law "unequivocally rejects the proposition that a mineral lease creates a fiduciary relationship between working-interest owners and royalty-interest owners such that a duty to

- 25 -

disclose material information arises."   CP Reply at 8-9 (citing <u>Cont'l Potash v. Freeport-McMoran, Inc.</u>, 115 N.M. at 701, 858 P.2d at 77); WPX Reply at 7-8 (same).

The Defendants contend, additionally, that even if a duty to disclose exists, the Plaintiffs' allegations are too conclusory to state a claim for a breach of that duty.   <u>See</u> CP Reply at 9; WPX Reply at 8.   The Defendants assert that "nothing in Plaintiffs' response shows that the complaint[s] meet[] the more stringent requirements of Rule 9(b) for pleading fraud," as the Defendants contend that the Plaintiffs' allegation of a method by which the Defendants may have underpaid royalties is insufficient to meet rule 9(b)'s requirements.   CP Reply at 9 (citing <u>United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.</u>, 232 F.2d 902, 2000 WL 1595976, at **5-6 (10th Cir. 2000)(unpublished); WPX Reply at 8 (same).   The Defendants assert that "Rule 8's preference for simplicity in pleading does not excuse a complete failure to state the circumstances of the fraud with particularity."   CP Reply at 10; WPX Reply at 9.

**3.**   **<u>The Plaintiffs' Third Cause of Action: Breach of the Duty to Market Hydrocarbons</u>.**

The Plaintiffs' third cause of action is based upon the allegation that the Defendants violated the terms of the leases by deducting from the Plaintiffs' royalties the cost of rendering the hydrocarbons marketable.   <u>See</u> FAC ¶¶ 46, 50, at 14, 15; SAC ¶¶ 47, 52, at 14, 15.   The Plaintiffs contend that deducting such costs is a violation of the "mutual covenants and obligations contained in the Leases and/or under state law," which impose a duty on the Defendants to "market condensate, natural gas, natural gas liquids and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price advantage" for the

- 26 -

Plaintiffs.  FAC ¶¶ 42-43, at 13; SAC ¶¶ 44-45, at 14.  The Plaintiffs assert that the Defendants,

as lessees and owners of working interests in the subject wells, have a duty to "render the natural

gas and other hydrocarbons marketable at [their] own expense, and not at the expense of

Plaintiffs and other non-cost bearing interest owners."  FAC ¶ 46, at 14; SAC ¶ 48, at 14.

The Defendants argue that the Plaintiffs have unsuccessfully attempted to state a claim

for a breach of the "marketable condition rule" in the third cause of action.  CP MTD at 12;

WPX MTD at 11.  WPX asserts that the Plaintiffs' claim can survive only if the duty to "not

deduct costs incurred before a gas is in a marketable condition" and to not "deduct costs that are

not actually incurred or are unreasonable" is implied into the language of the leases.  WPX MTD

at 11.  WPX posits that New Mexico case law does not allow a court to imply a covenant in an

oil and gas lease "except in the absence of any expressed" covenant on the subject.  WPX MTD

at 12 (citing Libby v. De Baca, 51 N.M. 95, 99, 179 P.2d 263, 265 (1947), State ex rel. Shell

Petroleum Corp. v. Worden, 44 N.M. 400, 103 P.2d 124, 126 (1940)).  WPX asserts that, under

Cont'l Potash, Inc. v. Freeport-McMoran, Inc., a court may imply a covenant only where the

covenant is "fundamental to the purposes" of the lease at issue and "justified upon the grounds of

legal necessity."  WPX MTD at 12.  The Defendants argue that the Plaintiffs' claim for breach of

the marketable condition rule fails to articulate a claim for an implied covenant under New

Mexico regarding implied covenants.  See CP MTD at 17-18; WPX MTD at 13.  The Defendants

allege that, because the Plaintiffs did not first demonstrate that leases are silent regarding the

payment of royalties, or that a covenant must be implied into the lease by necessity, the Court

cannot imply the marketable condition rule into the Leases.  See CP MTD at 17-18; WPX MTD at 13.  WPX further asserts that the implied duty to market does not extend beyond a lessee's obligation to "'make diligent efforts to market the production in order that the lessor may realize on his royalty interest.'"  WPX MTD at 16 (quoting Wolfe v. Texas Co., 83 F.2d 425, 432 (10th Cir. 1936)).

The Plaintiffs assert that the Defendants "again" confuse "the standard for pleading a claim with the standard for proving a claim."  CP MTD Response at 16 (emphasis in original); WPX MTD Response at 16 (same).  The Plaintiffs contend that the FAC and SAC adequately allege that the Defendants have breached the implied duty to market through their allegations that the leases impose a duty on the Defendants to "market production to the mutual advantage of both the lessee and Plaintiffs."  CP MTD Response at 16 (citing FAC ¶ 12, at 4); WPX MTD Response at 16 (citing SAC ¶¶ 44-45, at 14).[6]  The Plaintiffs further assert that they have alleged that, "under the mutual covenants and obligations contained in the Leases and/or under state law," the Defendants have a "duty to market condensate, natural gas, natural gas liquids and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price to the mutual advantage of" the parties.  CP MTD Response at 17 (citing FAC ¶ 45, at 14-15); WPX MTD Response at 16 (citing SAC ¶¶ 44, 45, 47, 48, at 14).  The Plaintiffs assert that

---

[6] In the CP MTD Response, the Plaintiffs refer to FAC ¶ 12 for the assertion that the FAC alleges that the Defendants have a "duty and covenant to market production to the mutual advantage of both the lessee and Plaintiffs."  CP MTD at 16.  This allegation, however, is in paragraph 42 of the FAC.  Compare FAC ¶ 12, at 4, with FAC ¶ 42, at 13).

they need not "attach a copy of the leases at issue" to the FAC or to the SAC to survive a motion

to dismiss.  CP MTD Response at 17; WPX MTD Response at 16.  The Plaintiffs assert that,

accepting their allegations as true, they have stated a plausible claim that the Defendants failed to

market hydrocarbons in accordance with their duty under the leases.  See CP MTD Response at

17; WPX MTD Response at 16.

The Plaintiffs further contend that New Mexico law recognizes the duty to market

hydrocarbons.  See CP MTD Response at 18 (citing Davis v. Devon Energy Corp., 2009-NMSC-

048, ¶ 35, 147 N.M. 157, 218 P.3D 75); WPX MTD Response at 17 (same).  The Plaintiffs assert

that, under New Mexico law, the duty to market hydrocarbons is implied in all-oil-and-gas

royalty instruments, unless the parties expressly disavow the duty in writing.  See CP MTD

Response at 18; WPX MTD Response at 17.  The Plaintiffs contend that New Mexico law

follows the "marketable condition rule," which requires the Defendants to bear the cost of

making oil and hydrocarbons marketable, and that the Defendants may not pass this cost onto the

Plaintiffs.  See CP MTD Response at 18 (citing Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶

13, 129 N.M. 529, 10 P.3d 835; WPX MTD Response at 18 (same).  The Plaintiffs assert that,

under the marketable condition rule, the producer/lessee of a gas well must bear specific post-

extraction costs, including the cost of rendering the production marketable.  See CP MTD

Response at 19; WPX MTD Response at 18.

The Plaintiffs assert that the Defendants falsely rely on Darr v. Eldridge, Libby v. De

Baca, and Elliott Indus. in arguing that they do not have a duty to render the hydrocarbons

- 29 -

marketable at their own cost.  The Plaintiffs assert that <u>Libby v. DeBaca</u> recognizes an implied obligation to market recoverable mineral interests and the lessee/producer's obligation to bear such costs as a reasonably prudent operator, although the decision does not reference the "marketable condition rule."  CP MTD Response at 19-20 (citing <u>Cont'l Potash v. Freeport-McMahon, Inc.</u>, 115 N.M. at 706, 858 P.2d at 82; <u>Libby v. DeBaca</u>, 51 N.M. at 99-100, 179 P.2d at 265); WPX MTD Response at 19 (same).  The Plaintiffs further assert that the Defendants' reliance on <u>Creson v. Amoco Prod. Co.</u> is misplaced, because the <u>Creson v. Amoco Prod. Co.</u> decision does not "stand for the proposition that, in all cases, there is no marketable condition rule in New Mexico," and, <u>Creson v. Amoco Prod. Co.</u> did not "involve issues related to the defendant's failure to produce CBM gas in marketable condition and did not reject the marketable condition rule," and the New Mexico Court of Appeals explicitly stated that it did not decide the applicability of the marketable condition rule in <u>Creson v. Amoco Prod. Co.</u>  CP MTD Response at 20; WPX MTD Response at 19.

The Plaintiffs assert that "courts from around the nation have adopted the marketable condition rule or some version thereof."  CP MTD Response at 22-22 (citing <u>Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.</u>, 679 F. Supp. 2d 1287 (D. Kan. 2010); <u>Estate of Tawney v. Columbia Natural Res. LLC</u>, 633 S.E. 2d 22 (W.Va. 2006); <u>Rogers v. Westerman Farm Co.</u>, 29 P.3d 887 (Colo. 2001); <u>Wood v. TXO Prod. Corp.</u>, 854 P.2d 880, 882-83 (Okla. 1992)); WPX MTD Response at 20-21.  The Plaintiffs assert that in the cases in which

courts have adopted the marketable condition rule, the courts derived the rule from the implied duty to market.  See CP MTD Response at 22; WPX MTD Response at 21.

The Defendants contend that the Plaintiffs have failed to allege a claim for breach of the marketable condition rule.  See CP Reply at 11; WPX Reply at 9.  The Defendants assert, first, that the Plaintiffs allegations are insufficient to state a claim that the Defendants breached an implied duty to not deduct post-production costs incurred in rendering hydrocarbons marketable from the Plaintiffs' royalty payments.  The Defendants assert, second, that the Plaintiffs' allegations that the marketable condition rule is implied in the leases is contrary to the Tenth Circuit's holding in Elliott Indus.  See CP Reply at 11; WPX Reply at 10-11.

The Defendants assert that the Plaintiffs must demonstrate that the leases are silent regarding the deduction of post-production costs, and that the parties intend to be bound by the marketable condition rule, as demonstrated by the leases' terms.  The Defendants assert that the Plaintiffs have failed on both fronts.  The Defendants contend that the FAC and SAC are devoid of any factual allegations which would lead to a plausible conclusion that the leases are silent regarding the deduction of post-production costs, and that the parties intended to be bound by the marketable condition rule.  See CP Reply at 12; WPX Reply at 10 (citing Cont'l Potash v. Freeport-McMahon, Inc., 115 N.M. at 704, 858 P.2d at 80).  The Defendants contend that, because the Plaintiffs have failed to specify the interests they own, it is just as plausible that the Plaintiffs' own overriding royalty interests which are not bound by the marketable condition rule. The Defendants assert that the Plaintiffs have admitted that their "interests have been 'granted or

- 31 -

reserved in lease agreement,'" which, the Defendants contend, indicates the Plaintiffs own overriding royalty interests.  CP Reply at 13 (quoting CP MTD Response at 17); WPX Reply at 11 (quoting WPX MTD Response at 17).

WPX further asserts that the Plaintiffs have not challenged its allegation that "the language of express royalty provisions customarily addresses the deductibility of post-productions costs."    WPX Reply at 11 (citing WPX MTD at 12-15).

The Defendants also assert that New Mexico has not adopted the marketable condition rule as part of an implied duty to market.  See CP Reply at 13 (citing Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 37, 147 N.M. 157, 218 P.3d 75); WPX Reply at 12 (same).  The Defendants contend that the Court should dismiss the Plaintiffs' allegations of a violation of the marketable condition rule under Elliott Indus.  See CP Reply at 13 (citing Elliott Indus., 407 F.3d at 1113-14); WPX Reply at 12 (same).  The Defendants contend that, contrary to the Plaintiffs' assertion, a majority of courts have rejected the marketable condition rule.  See CP Reply at 14 (citing Bice v. Petro-Hung, LLC, 768 N.W. 2d 496, 501-02 (N.D. 2009)); WPX Reply at 14 (same).  The Defendants assert that, although the Plaintiffs rely on cases from Kansas, Oklahoma, and West Virginia, those authorities are inapposite, because New Mexico treats royalty interests as real property, unlike those states.  See CP Reply at 14 (citing Uhden v. N.M. Oil Conservation Comm'n, 112 N.M. 528, 530, 817 P.2d 721, 723 (1991)); WPX Reply at 12-13 (same).  The Defendants contend that a royalty interests vests "upon the physical extraction of the gas from the ground and its removal," and, therefore, "costs incurred after production of the

gas or minerals are normally proportionately borne by both the operator and the royalty interests owners."  CP Reply at 14-15 (citing Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1230 (10th Cir. 1996); Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶ 18, 129 N.M. 529, 10 P.3d 835)(internal alterations and quotations omitted); WPX Reply at 13 (same).  The Defendants also assert that many royalty clauses in oil and gas leases expressly provide for the royalty to be valued based upon the value of the oil or gas "as it emerges at the wellhead," because the royalty interests vest when the oil or gas produced "has been reduced to possession."  CP Reply at 15 (citing Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶ 15, 129 N.M. 529, 10 P.3d 835); 8 Howard R. Williams & Charles J. Meyers, Oil and Gas Law § 645.2, at 614.4 (Patrick H. Martin & Bruce M. Karmer, eds. 2010)(internal quotations omitted)); WPX Reply at 13 (same).  The Defendants contend that because the Plaintiffs' royalty interests are real property, and not personal property, the marketable condition rule does not apply to their royalty interests.  See CP Reply at 15 (citing N.M.S.A. 1978, §55-2-107(1); Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 6, 147 N.M. 157, 218 P.3d 75; Williams & Meyers, supra, § 645.2, at 614.4); WPX Reply at 13-14 (same).  The Defendants note that the Plaintiffs' reliance on decisions from Colorado state courts is inapposite to the Plaintiffs' allegations, because the Plaintiffs have not alleged that the leases are silent regarding the allocation of post-production costs, and, the Defendants assert, Colorado has not adopted  a standard for determining when to imply the marketable condition rule into an oil and gas lease, unlike the standard New Mexico announced in Cont'l Potash, Inc.

v. Freeport-McMoran, Inc.  See CP Reply at 15-16 (citing Rogers v. Westerman Farm. Co.; Fort Lupton State Bank v. Murata, 626 P.2d 757 (Colo. App. 1981)); WPX Reply at 14-15 (same).

The Defendants contend that they have not misinterpreted or misapplied Creson v. Amoco Prod. Co., as the Plaintiffs assert.  The Defendants argue that, just as in Creson v. Amoco Prod. Co. the Court of Appeals of New Mexico held that the gas leases at issue governed the plaintiffs' royalty interests, the Plaintiffs' oil and gas leases here govern whether the Defendants may deduct post-production costs from the Plaintiffs' royalty interests.  See CP Reply at 16-17 (citing Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶¶ 3, 22, 129 N.M. 529, 10 P.3d 835); WPX Reply at 15 (same).  The Defendants further assert that Creson v. Amoco Prod. Co. is relevant to the Plaintiffs' allegations, because the Court of Appeals of New Mexico rejected the plaintiffs' assertion that "gas is not in a 'marketable condition' until it is suitable for delivery into the pipeline transportation system,'" because the leases did not require that gas be in a condition appropriate for delivery into the pipeline system before the Plaintiffs' royalty payments would be calculated.  CP Reply at 17 (quoting Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶ 25, 129 N.M. 529, 10 P.3d 835); WPX Reply at 15 (same).  The Defendants assert that, as they argue in the CP MTD and WPX MTD, Elliott Indus. controls the Plaintiffs' claims that the Defendants breached the implied marketable condition rule, and the Plaintiffs have provided no explanation why Elliott Indus. does not control the Court's analysis of the FAC and of the SAC.  See CP Reply at 17 (citing CP MTD Response at 19; CP MTD at 13-19); WPX Reply at 16 (citing WPX MTD Response at 19; WPX MTD at 15-18).

- 34 -

4.      **The Plaintiffs' Fourth Cause of Action: Violation of the New Mexico Oil and Gas Proceeds Payment Act**.

The Plaintiffs allege that the Defendants failed on "numerous instances" to make timely royalty payments to the Plaintiffs as required by New Mexico and Colorado statutes.  FAC ¶¶ 55-57, at 16; SAC ¶¶ 57-59, at 16-17.  See FAC at 16; SAC at 16.  The Plaintiffs state that the Proceeds Payment Act requires the Defendants to pay royalties within forty-five days of the end of the calendar month in which the Defendants receive payment for the Plaintiffs' interests.  See FAC ¶ 55, at 16; SAC ¶ 57, at 16.  The Plaintiffs also allege that Colo. Rev. Stat. § 34-60-118.5 imposes the same duty on the Defendants, but provides a ninety-day window for the Defendants to pay the Plaintiffs' royalties.  See FAC ¶ 56, at 16; SAC ¶ 58, at 16.  The Plaintiffs assert that the Defendants have failed to meet both of these time limits on numerous occasions.  See FAC ¶¶ 55-57, at 16; SAC ¶¶ 57-59, at 16-17.

The Defendants argue that the Court should dismiss the Plaintiffs' fourth cause of action, because the statutes upon which the Plaintiffs rely do not support their allegations.  See CP MTD at 20; WPX MTD at 22-23.   The Defendants asserts that the Proceeds Payments Act provides only a derivative remedy and will not support a claim for relief absent evidence that a lessor breached an underlying agreement with an interest owner.  See CP MTD at 20; WPX MTD at 25-26.   WPX argues that, under Elliott Indus., the Plaintiffs must allege a "'claim for underpayment of royalties or theory of liability . . . independent of any claim under the Act itself.'"  WPX MTD at 26 (quoting Elliott Indus., 407 F.3d at 1120)(internal alterations omitted). WPX asserts that, because the Plaintiffs have failed to allege a "viable" claim for underpayment

- 35 -

of royalties, their allegations arising from the Proceeds Payment Act are doomed as well. WPX MTD at 26.

ConocoPhillips additionally argues that "[n]othing in the Act suggests that the interest 'penalty' and attorneys' fees provision apply to contractually-based claims by royalty owners contending payments previously received were incorrectly calculated under novel legal theories." CP MTD at 20 (quoting N.M.S.A. 1978, § 70-10-5). ConocoPhillips asserts that, because the Proceeds Payment Act imposes a penalty, the Court cannot expand its reach "beyond that clearly supported by the statutory language." CP MTD at 20 (citing United Rentals N.W., Inc. v. Yearout Mech., Inc., 2010-NMSC-030, ¶ 27, 148 N.M. 426, 237 P.3d 728); United Nuclear Corp. v. Allendale Mut. Insur. Co., 103 N.M. 480, 495, 709 P.2d 649, 664 (1985); GEA Integrated Cooling Tech. v. N.M. Taxation and Revenue Dep't, 2012-NMCA-010, ¶ 7, 268 P.3d 48). ConocoPhillips asserts that, "in the twenty five year history of the Proceeds Payment Act, not one court has held that the penalty and attorneys' fees provisions of the Act apply to contractual royalty underpayment claims." CP MTD at 21.

WPX also asserts that the Proceeds Payment Act does not extend relief to the Plaintiffs' allegation of royalty underpayments. See WPX MTD at 22. Further, WPX asserts that the Proceeds Payment Act provides relief to a royalty owner only after the royalty owner has submitted to a royalty payor a division order "setting forth the royalty owner's proper interests" in oil and gas proceeds, and the royalty payor withholds a royalty payment, as explained in N.M.S.A. 1978, § 70-10-5. WPX MTD at 22. WPX asserts that, under N.M.S.A. 1978, § 70-10-

5, a royalty payor may withhold payment of oil-and-gas proceeds, and avoid interest, when: (i) "the payor believes in good faith that the payee does not have good and marketable title;" (ii) "the payor has received other information" questioning the payee's asserted title to a royalty payment; (iii) the royalty owner has "failed or refused to execute a division or transfer order in favor of the payor;" or (iv) "the amount is less than $100."   WPX MTD at 23-24 (citing N.M.S.A. 1978, § 70-10-5 (A)-(D); Murdock v. Pure-Lively Energy 1981-A, Ltd., 108 N.M. 575, 579, 775 P.2d 1292, 1296 (1989)).   WPX asserts that the Proceeds Payment Act provides a remedy to royalty owners only if: (i) "the royalty payment has been withheld for longer than the statutorily authorized time period provided in Section 70-10-3;" and (ii) the royalty payor has withheld the payment "after the payor has received a division or transfer order from the royalty owner showing the interest to which the royalty owner is legally entitled, as provided in Section 70-10-3.1."  WPX MTD at 24.

WPX asserts that the Plaintiffs' allegations do not set forth a situation that the Proceeds Payment Act covers.  WPX first contends that the Plaintiffs have not demonstrated that they hold an interest in oil and gas proceeds, the payment of which WPX has withheld.  ConocoPhillips contends that the Plaintiffs have failed to identify any "specific interest" in an oil and gas proceed, or the "type of 'proceeds' or the 'value' to which their purported interests apply."  WPX MTD at 24-25 (quoting N.M.S.A. 1978, § 70-10-2(B)).  WPX argues that the Plaintiffs' assertion of an ownership in "'non-cost bearing interests'" is insufficient to qualify for relief under the Proceeds Payment Act, because it covers only those oil and gas proceeds described in N.M.S.A.

1978, § 70-10-2(B)).  WPX MTD at 25 (quoting SAC ¶¶ 10, 23, at 3, 7).  WPX also argues that the Plaintiffs do not qualify for relief under the Proceeds Payment Act unless they demonstrate that WPX "has withheld royalty payments from them after having been furnished with a division or transfer order declaring Plaintiffs' interest in the oil and gas proceeds," in addition to the information N.M.S.A. 1978, § 70-10-3.1 requires.  WPX MTD at 25.

The Plaintiffs assert that they have sufficiently alleged that the Defendants are in breach of their contract and that they need not assert an additional claim for underpayment of their royalties to qualify for relief under the Proceeds Payment Act.  See CP MTD Response at 22; WPX MTD Response at 22.  The Plaintiffs assert that, contrary to the Defendants' use of the Elliott Indus. in the motions to dismiss, the Tenth Circuit stated, in dicta in Elliott Indus., that "'a claim for underpayment of royalties may very well fall within the provisions of the payment act.'"  CP MTD Response at 23 (quoting Elliott Indus., 407 F.3d at 1120); WPX MTD Response at 22 (same).  The Plaintiffs assert that they have alleged that the Defendants have failed to make any payment for the value of drip condensate from the subject well, which, the Plaintiffs assert, qualifies them for relief under N.M.S.A. 1978, § 70-10-5.  The Plaintiffs further assert that, because they set forth in the FAC and SAC that the Defendants make monthly royalty payments to the Plaintiffs, the Defendants' allegation that the Plaintiffs have failed to identify "the type of proceeds or the value to which their purported interests apply" is baseless.  CP MTD Response at 23; WPX MTD Response at 23.

- 38 -

The Plaintiffs contend that WPX's allegation that the Plaintiffs do not qualify for relief under the Proceeds Payment Act because they have not alleged that WPX received a division or transfer order pursuant to N.M.S.A. 1978, § 70-10-3.1 before failing to pay the Plaintiffs' royalties fails for two reasons.  First, the Plaintiffs contend that the Proceeds Payment Act does not predicate a party's right to relief upon the party's submission of a division or transfer order to a payor.  Second, the Plaintiffs assert that the Proceeds Payment Act requires the producer, and not a royalty owner, to provide a division or transfer order.  The Plaintiffs assert that their theory for relief under the Proceeds Payment Act is not predicated upon the allegation that the Defendants failed to make payment because a producer was "unaware of its interest or mailing address."  WPX MTD Response at 23.

The Defendants contend that the Plaintiffs cannot bring a claim under the Proceeds Payment Act, because they have not alleged an independent claim for breach of contract.  See CP Reply at 18 (citing Elliott Indus., 407 F.3d at 1120); WPX reply at 18 (same).  The Defendants further contend that the Proceeds Payment Act redresses only the non-payment of royalties, and not, as the Plaintiffs allege, underpayment of royalties.  See CP Reply at 18 (citing N.M.S.A. 1978, § 70-10-1); WPX Reply at 16-17 (same).  The Defendants further contend that the Plaintiffs have failed to allege that the Defendants withheld proceeds for more than forty-five days after receipt, as N.M.S.A. 1978, § 70-10-3 requires the Plaintiffs to allege.  The Defendants contend that the Plaintiffs' allegation that they never received proceeds from drip condensate does not meet N.M.S.A. 1978, § 70-10-3's requirement, because the Plaintiffs have not

demonstrated that the Defendants were contractually bound to pay royalties on drip condensate. See CP Reply at 19 (citing CP MTD Response at 23; WPX Reply at 18, 19 (citing WPX MTD Response at 22).

WPX further asserts that the Proceeds Payment Act redresses only the withholding of royalty payments after a payor receives a division order setting forth an interest owner's interest in oil and gas proceeds. See WPX Reply at 17 ("In other words, the harm which the Act is intended to protect against is the withholding by a royalty payor of oil-and-gas proceeds in violation of the law of division orders as codified in the Act."). The Defendants contend that the Proceeds Payment Act imposes a penalty on a payor only if the payor withholds proceeds after the payor receives a "duly executed division order from the interest owner, or if the payor through lack of diligence, fails to furnish the interest owner with a division order in the first place," and the Plaintiffs have not alleged in the SAC that the Defendants withheld proceeds in such a situation. WPX Reply at 17-18 (citing N.M.S.A. 1978, § 70-10-5(D)). WPX points out that the Plaintiffs concede that WPX did not receive a division order, and, therefore, the Proceeds Payment Act does not apply to the Plaintiffs' claims. See WPX Reply at 18 (citing WPX MTD Response at 23). WPX further contends that the Plaintiffs' assertion that WPX need not receive a division order for the Proceeds Payment Act to cover their claims is contrary to the "only reasonable construction of the relevant statutory provisions." WPX Reply at 18.

5.      **The Plaintiffs' Fifth Cause of Action: Bad Faith Breach of Contract**.

The Plaintiffs' fifth cause of action alleges that the Defendants have "continuously, maliciously and wrongfully withheld the benefits owed to Plaintiffs . . . under the terms of the Leases."  FAC ¶ 61, at 17; SAC ¶ 63, at 17.  The Plaintiffs allege that the Defendants breached their duty to make proper royalty payments, properly report production and sales values, and to act with good faith and fair dealing.  See FAC ¶ 61, at 17; SAC ¶ 63, at 17.  The Plaintiffs allege that the Defendants' "breach of these contractual duties was continuous, intentional, unjustified, and further constitutes fraudulent concealment."  FAC ¶ 61, at 17; SAC ¶ 63, at 17.  The Plaintiffs allege they are entitled to punitive damages to recover from the Defendants' bad faith breach of contract.  See FAC ¶¶ 63-64, at 17; Second AC-Williams ¶¶ 64-65, at 17.

The Defendants assert, similar to their arguments against Plaintiffs' second cause of action, that the Court must dismiss the Plaintiffs' claim of bad-faith breach of contract, because the Plaintiffs are seeking tort remedies for the breach of a contractual duty.  See CP MTD at 21-22; WPX MTD at 26-27.   The Defendants argue that New Mexico case law precludes tort recovery for a breach-of-contract claim, save for instances where a fiduciary relationship exists between the parties.  See CP MTD at 21-22 (citing Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 872 P.2d 852 (1994); WPX MTD at 26-27 (same).  The Defendants assert that the Plaintiffs have not plead facts to show a fiduciary relationship between the Defendants and the Plaintiffs, and that the Plaintiffs cannot plead facts to demonstrate a fiduciary relationship, because the Defendants do not have a fiduciary relationship with the Plaintiffs.  See CP MTD at

- 41 -

22-23; WPX MTD at 26.  The Defendants argue that the Plaintiffs are limited to recovering the damages arising from the Defendants' alleged breach of contract, and the Plaintiffs may not recover for damages allegedly resulting from the Defendants' tortious conduct.  The Defendants argue, thus, that Plaintiffs' fifth cause of action fails to state a claim for relief.  See CP MTD at 23-24; WPX MTD at 27-28.

The Plaintiffs assert that they may recover for the Defendants' bad faith breach of contract under New Mexico law if they prove that the Defendants acted with a "culpable state of mind."  CP MTD Response at 24 (citing Pub. Serv. Co. of N.M. v. Diamond D Constr. Co., 2001-NMCA-082, ¶¶ 37, 43, 131 N.M. 100, 33 P.3d 651); WPX MTD Response at 24 (same). The Plaintiffs assert that they have sufficiently alleged that the Defendants breached the leases in bad faith, by "'maliciously, without justification, and in bad faith'" withholding revenues from the Plaintiffs.  CP MTD Response at 24 (quoting FAC ¶¶ 61, 63, at 17); WPX MTD Response at 24 (quoting SAC ¶¶ 63, 65, at 17-18).

The Defendants contend that the Plaintiffs have not attempted to distinguish or even address New Mexico case law which preclude a party from recovering in tort for the breach of a contract.  See CP Reply at 19 (citing Bourgeous v. Horizon Healthcare Corp.; Sunnyland Farms, Inc. v. Cen. N.M. Elec. Coop, 2011-NMCA-049, ¶ 33, 149 N.M. 746, 255 P.3d 324; Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 134 N.M. 43, 73 P.3d 181); WPX Reply at 19 (same). The Defendants also assert that the Plaintiffs' theory that punitive damages may be available for a breach of contract in certain circumstances, although an "accurate statement of the law . . . is

irrelevant here."  CP Reply at 19-20 (citing CP MTD Response at 24); WPX Reply at 19-20 (citing CP MTD Response at 24).  The Defendants contend that the Plaintiffs have improperly conflated punitive damages, an available remedy, with the breach of the implied duty of good faith and fair dealing, a cause of action; the Defendants assert that whether punitive damages are available is a separate inquiry, and does not relieve the Plaintiffs from New Mexico's prohibition on claims sounding in tort for the breach of a contract.  See CP Reply at 20; WPX Reply at 20.

> **6.    The Plaintiffs' Sixth Cause of Action: Unjust Enrichment and Declaratory Relief.**

In their sixth cause of action, the Plaintiffs allege that the Defendants' method of paying the Plaintiffs' royalties has unjustly enriched the Defendants, and the Plaintiffs assert that they are entitled to declaratory relief enjoining the Defendants' current method royalty payments.  See FAC ¶¶ 65-68, at 18; SAC ¶¶ 67-69, at 18.  The Plaintiffs allege that they are entitled to restitutionary recovery and declaratory relief from the Defendants' "contractual breach(es) and . . . tortious conduct" described in the FAC and SAC.  FAC ¶ 66, at 18; SAC ¶ 68, at 18.  The Plaintiffs state that injunctive relief is necessary to avoid multiple suits against the Defendants, and the Plaintiffs request the Court to enjoin the Defendants from their "current and historic payment methods and to order [the Defendants] to utilize a method of payment which results in Plaintiffs receiving an arm's length value of their hydrocarbons, without reduction for unlawful costs or charges."  FAC ¶¶ 67-68, at 18; SAC ¶¶ 69-70, at 18-19.  The Plaintiffs request that the Court issue a declaratory judgment "governing, restraining, and enjoining" the Defendants' activities "relating to such production and payments to Plaintiffs and Class Members and

reporting in monthly statements for all volumes of natural gas production, drip condensate and other hydrocarbons, as well as revenues, values/sales of said hydrocarbons in accordance with applicable state law."  FAC ¶ 74 at 19-20; SAC ¶ 76, at 20.  The Plaintiffs also move the Court to fashion the declaratory judgment so as to "adjudicate and govern the future reporting of all production and imposition of any expenses or costs to Plaintiffs" incurred in the production and sale process of Plaintiffs' hydrocarbon interests.  FAC ¶ 75 at 20; SAC ¶ 77, at 20.

The Defendants argue that the Plaintiffs' claim for unjust enrichment and declaratory relief are improper.  Similar to the Defendants' arguments against the Plaintiffs' claim for bad-faith breach of contract, the Defendants assert that "the Tenth Circuit . . . does not recognize unjust enrichment claims where the same parties have an express contract."  CP MTD at 25 (citing Elliott Indus., 407 F.3d at 1117 ); WPX MTD at 29 (same).  The Defendants argue, thus, that the Tenth Circuit does not allow the Plaintiffs' claim for unjust enrichment because the basis for the Plaintiffs' allegation is the parties' contractual relationship.  See CP MTD at 25; WPX MTD at 29.

The Defendants also argue that the Court should dismiss the Plaintiffs' claim for declaratory relief, because the Plaintiffs' claims for relief are non-specific and their requested relief is impermissible under the Declaratory Judgment Act.  See CP MTD at 27; WPX MTD at 29.  First, the Defendants assert that the Plaintiffs' request for a declaratory judgment does not identify the legal rights and obligations that the Plaintiffs wish the Court to declare, and, thus, fails to state a claim for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (2005).

- 44 -

See CP MTD at 27; WPX MTD at 29.  Additionally, the Defendants argue that the Plaintiffs are asking the Court to grant "coercive" relief in their request, because the Plaintiffs move the Court to "govern," "restrain," "enjoin," "report," and "adjudicate" the Defendants' actions.   CP MTD at 27-29; WPX MTD at 29.  ConocoPhillips further asserts that the Plaintiffs' request for a declaratory judgment is redundant, because the Plaintiffs are asking the Court to declare contractual rights, which the Court will resolve when deciding the Plaintiffs' contractual allegations.  See CP MTD at 28-29.  ConocoPhillips also argues that the Court should dismiss the Plaintiffs' request for declaratory relief, because the Court's adjudication of the Plaintiffs' contractual claims provides an adequate, alternative remedy to the Plaintiffs.  See CP MTD at 28-29 (citing State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994); Postal Instant Press v. Jackson, 658 F. Supp. 739, 742 (D. Colo. 1987)).

The Plaintiffs concede that their claims are "grounded in breach of contract," but contend nonetheless that they may pursue "an equitable claim at this juncture."  CP MTD Response at 25; WPX MTD Response at 24.  The Plaintiffs assert that, if the Court determines that the parties are not in privity of contract, the Court may determine that the Plaintiffs may prevail on their "alternative claim for unjust enrichment [] against the Defendant."  CP MTD Response at 25; WPX MTD Response at 24-25.  The Plaintiffs assert that Elliott Indus. does not support the Defendants' contention that they may not proceed on an unjust enrichment theory for claims grounded in a contract, because the Tenth Circuit was reviewing the district court's ruling on a

motion for summary judgment and not on a motion to dismiss.  See CP MTD Response at 25; WPX MTD Response at 25.

The Plaintiffs also assert that their claim for declaratory relief is not redundant to their breach-of-contract claims, because, even if the Court finds that the Defendants have breached the leases, the Defendants may still "continue to breach the lease agreement, and send false monthly reports," without a declaratory judgment.  CP MTD Response at 25-26; WPX MTD Response at 25.  The Plaintiffs assert that their requested relief is "precisely the type of situation that the Federal Declaratory Judgment Act . . . is intended to remedy."  CP MTD Response at 26; WPX MTD Response at 25.  The Plaintiffs assert that their request for declaratory relief in the FAC and SAC are sufficiently specific to survive a motion to dismiss.  See CP MTD Response at 26 (citing FAC ¶¶ 68, 74-75, at 18-20); WPX MTD Response at 26 (citing SAC ¶¶ 70, 76-77, at 19-20).  The Plaintiffs contend that the Defendants have cited to no authority which would support their request for the Court to dismiss their request for declaratory relief.  See CP MTD Response at 27; WPX MTD Response at 26-27.  The Plaintiffs further assert that New Mexico law does not preclude the Plaintiffs from pursuing a claim for declaratory relief upon the same facts that give rise to their claims for breach of contract.  See CP MTD Response at 27-28 (citing Powell v. McCormack, 395 U.S. 486, 517-18 (1969); WPX MTD Response at 27 (same).

The Defendants note that the Plaintiffs concede that their claims for unjust enrichment are "'grounded in breach of contract'" and assert that the Plaintiffs have argued in a conclusory manner that New Mexico law does not preclude them from seeking an equitable remedy for the

Defendants' alleged breach.  CP Reply at 20 (citing CP MTD Response at 25); WPX Reply at 20 (citing WPX MTD Response at 24).  The Defendants also assert that the Plaintiffs have not pled unjust enrichment in the alternative, as they allege.  See CP Reply at 20 (citing CP MTD Response at 25 n.5; FAC ¶ 66, at 18); WPX Reply at 20; (citing WPX MTD Response at 25 n.5; SAC ¶ 68, at 18).  Regarding the Plaintiffs' request for declaratory relief, the Defendants assert that the Plaintiffs have not refuted their reasons for dismissing the request and assert that declaratory relief is inappropriate, because the Court will resolve the parties' contractual obligations on the Plaintiffs' breach-of-contract claims.  See CP Reply at 21-22; WPX Reply at 21-22.

       **7.**      **The Plaintiffs' Seventh Cause of Action: Conversion.**

Last, the Plaintiffs allege that the Defendants have "exercised, and [are] exercising unlawful dominion and control over said proceeds otherwise payable to Plaintiffs, and have willfully and intentionally and unlawfully converted same to their own use and benefit."  FAC ¶ 70, at 19; SAC ¶ 72, at 19.  The Plaintiffs allege that the Defendants' conversion of the Plaintiffs' proceeds has damaged them, and the Plaintiffs allege that the Defendants' conversion was and is "malicious, oppressive and/or committed recklessly with wanton disregard for the rights of the Plaintiffs."  FAC ¶ 72, at 19; SAC ¶ 74, at 19.

The Defendants assert similar arguments against the Plaintiff's conversion allegation as against the Plaintiffs' second, fifth, and sixth causes of action.  See CP MTD at 30-31; WPX MTD at 31-32.  The Defendants argue that the law does not provide a cause of action for

conversion where the only allegation is that a party has withheld payments contractually owed, as the Plaintiffs allege here.  See CP MTD at 30-31; WPX MTD at 32.  WPX also asserts that the Plaintiffs' cause of action for conversion is "duplicative of their first cause of action for failure to pay royalties on volumes of hydrocarbons."  WPX MTD at 31-32.  WPX argues that the "existence of a contractual relationship . . . covering the same subject matter" as the conversion claim bars the Plaintiffs' seventh cause of action.  WPX MTD at 31 (citing Isler v. Tex. Oil & Gas Corp., 749 F.2d 22 (10th Cir. 1984), Elliott Indus., 407 F.3d at 1116).

The Plaintiffs admit that their seventh cause of action is "inartfully pleaded," but contend that their claim of conversion is grounded in the Defendants' "wrongful conversion of hydrocarbons in the form of fuel gas and retention of the monies earned from the sale of such fuel gas, as indicated in multiple paragraphs" in the FAC and SAC.  CP MTD Response at 28; WPX MTD Response at 27-28.  The Plaintiffs contend that they have alleged that the Defendants derive drip condensate from the subject wells but do not pay the Plaintiffs for the value of the drip condensate, which the Plaintiffs assert is sufficient to state a claim for conversion.  See CP MTD Response at 28 (citing FAC ¶¶ 26-27, at 9); WPX MTD Response at 38 (citing SAC ¶¶ 28-29, at 9-10).

The Defendants contend that the Plaintiffs have entirely ignored their argument that "there can be no tort action to recover money owed under a contract."  CP Reply at 23; WPX Reply at 23.  The Defendants assert that the Plaintiffs are not suing for the conversion of their share of hydrocarbons and are, based upon the FAC and SAC, suing for conversion of money.

<u>See</u> CP Reply at 23 (citing FAC ¶¶ 70-72, at 19); WPX Reply at 23 (citing SAC ¶¶ 72-73, at 19). The Defendants also assert that, even if the Plaintiffs are suing for the alleged conversion of hydrocarbons, this allegation is nothing more than a "breach of contract claim, and Plaintiffs cannot recover in tort for breach of contract."  CP reply at 23-24; WPX Reply at 23.

>    **8.**    **<u>The Plaintiffs' Class Action Allegations.</u>**

The Plaintiffs file their suit as a class action under N.M.R.A. CIV 1-023 (2011), on behalf of themselves and as "representatives of . . . all other owners of 'non-cost bearing' interest in the subject wells."  FAC ¶ 12, at 4; SAC ¶ 13, at 4.  The Plaintiffs allege, on information and belief, that the absent class members total more than 1,000 non-cost-bearing interest owners throughout New Mexico, Colorado, and numerous other states.  <u>See</u> FAC ¶ 13, at 4; SAC ¶ 14, at 4.  The Plaintiffs allege that joinder of "all or even a majority of the Class herein is impracticable, if not impossible."  <u>See</u> FAC ¶ 13, at 4; SAC ¶ 14, at 4.  The Plaintiffs state that their "individual loss and potential recovery is and will be" so small as to preclude them from bringing their claims individually, and, thus, the only way for them to litigate their claims is as a class action.  FAC ¶ 14, at 5; SAC ¶ 15, at 5.  The Plaintiffs further state that separate actions would create a risk of inconsistent adjudications, or would result in adjudications that are "dispositive of the interests of the other Class Members" and thus be an impediment to the ability of all class members to protect their interests.  FAC ¶ 15 at 5; SAC ¶ 16, at 5.  The Plaintiffs allege that "substantial questions of law and fact" are common to their claims against the Defendants, only varying with respect to the "quantum or amount of interest owned by each [c]lass [m]ember."  FAC ¶ 16 at 5;

SAC ¶ 17 at 5-6.  The named Plaintiffs allege that their claims are typical of the claims of each of the class members', having derived their claims from "identical facts which demonstrate improper conduct on the part of [the Defendants] and damages incurred by the [c]lass [m]embers." FAC¶ 17 at 5-6; SAC ¶ 18 at 6.   The Plaintiffs state that they will "fairly and adequately protect and represent the interest of the" class and individual class members, and state that a "class action is superior to multiple individual lawsuits for the fair and efficient adjudication of the matters alleged herein," because common questions of law and fact predominate over individual questions of the class members.  FAC ¶ 18-19, at 6; SAC ¶ 19-20, at 6.

The Defendants assert that the Plaintiffs' claims are "insufficient to support a class action." CP MTD at 31; WPX MTD at 32.  The Defendants assert that the FAC and SAC do not comply with pleading standards of rule 8(a), or those that the Supreme Court of the United States articulated in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).  See CP MTD at 31; WPX MTD at 32-33.  The Defendants assert that the Supreme Court "made clear that Rule 23 sets forth not only a burden of proof for class certification, but also a 'pleading standard.'" CP MTD at 31 (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551); WPX MTD at 32 (same). The Defendants asserts that class-action allegations must comply with rule 8(a), Ashcroft v. Iqbal's, and Bell Atl. Corp. v. Twombly's standards to proceed to discovery.  See CP MTD at 32 (citing Nicholas v. CMRE Fin. Serv., No. CIV 08-4857 (JLL), 2009 WL 1652275, at *4 (D.N.J. 2009); Hodczak v. Latrob Specialty Steel Co., No. CIV 08-649, 2009 WL 911311, at **8-10

(W.D. Pa. Mar. 31, 2009); <u>Smith v. Lyons, Doughty & Valdhuius, P.C.</u>, No. CIV 07-5139, 2008

WL 2885887, at **5-6 (D.N.J. July 23, 2008)).   The Defendants contend that the Plaintiffs' class

allegations of commonality, typicality, adequate representation, and predominance and

superiority, are devoid of "factual content . . . and are wholly conclusory."   CP MTD at 32-33;

WPX MTD at 33.   The Defendants contend that the Plaintiffs have failed to "allege even a single

question of law or fact that purportedly is common to the class and the named plaintiffs."   CP

MTD at 33; WPX MTD at 33.   The Defendants contend that the Plaintiffs have merely repeated

rule 23(a)'s language in the FAC and in the SAC, and, therefore, their class allegations are

insufficient.   CP MTD at 33; WPX MTD at 34.

       The Plaintiffs contend that <u>Wal-Mart Stores, Inc. v. Dukes</u> is "factually dissimilar,

inapposite, and therefore inapplicable to the allegations in this case."   CP MTD Response at 29;

WPX MTD Response at 28.   The Plaintiffs contend that, unlike the plaintiffs in <u>Wal-Mart Stores,

Inc. v. Dukes</u>, which could not meet the commonality requirement, because they could not allege

a "'companywide discriminatory pay and promotion policy,'" the Plaintiffs' have alleged that the

Defendants committed a systematic wrong of failing to "accurately report, value, calculate and

pay royalty on produced hydrocarbons."   CP MTD Response at 29 (quoting <u>Wal-Mart Stores,

Inc. v. Dukes,</u> 113 S. Ct. at 2554-55); WPX MTD Response at 28-29 (same).   The Plaintiffs

contend that numerous other courts have certified similar class actions in "cases arising out of

underpayment of royalty claims similar to those present here."   CP MTD Response at 29-30

(citing <u>Chieftain Royalty Co. v. QEP Energy Co.</u>, 281 F.R.D. 499 (W.D. Okla., 2012); <u>Anderson</u>

v. Merit Energy Co., Nos. 07-cv-00916-LTB, 07-cv-01025-LTB-BNB, 2008 WL 2484187 (D.

Colo. June 19, 2008); WPX MTD Response at 29 (same).  The Plaintiffs assert that the United

States District Court for the Western District of Oklahoma recently granted summary judgment

to a class of royalty owners alleging that oil and gas lessee's sales to affiliates breached the

implied duty of marketability owed to the royalty owners.  See CP MTD Response at 30 (citing

Fankhouser v. XTO Energy, Inc., No. CIV 07-798-L, 2012 WL 831092 (W.D. Okla., Mar. 8,

2012)); WPX MTD Response at 29-30 (same).  The Plaintiffs contend, therefore, that the FAC

and the SAC "more than sufficiently state[] facts from which this Court may grant class

certification for the more than 1,000 non-cost-bearing interest owners which comprise the class

in this case."  CP MTD Response at 31; WPX MTD Response at 30.

The Defendants assert that they are not requesting the Court to dismiss the Plaintiffs'

class-action allegations because they will "'ultimately be denied in this case,'" but rather because

the Plaintiffs have "failed under Rule 8(a) to state a claim for class relief."  CP Reply at 24

(quoting CP MTD Response at 28); WPX Reply at 23 (quoting WPX MTD Response at 28).

The Defendants contend that the Plaintiffs have not demonstrated that their class allegations rise

above conclusory recitations of rule 23's requirements.  The Defendants also assert that the

authorities upon which the Plaintiffs rely in asserting that their class-action allegations are

sufficient are not helpful to the Plaintiffs' case, because the Plaintiffs do not rely on any

authorities which, like New Mexico, do not apply the marketable condition rule or which has

determined the sufficiency of class-action allegations under rule 8(a).  <u>See</u> CP Reply at 24-25;
WPX Reply at 24-25.

**9.      <u>The Court's Hearing on June 19, 2012</u>.**

The Court held a hearing on the CP MTD and WPX MTD on June 19, 2012.  <u>See</u>
Transcript of Hearing (taken June 19, 2012), filed July 5, 2012 (Case No. CIV 12-0039 Doc. 39);
Transcript of Hearing (taken June 19, 2012), filed July 5, 2012 (Case No. CIV 12-0040 Doc. 54)
("Tr.").  Because the Plaintiffs have filed near-identical complaints against ConocoPhillips and,
in a separate matter, WPX, the Court invited the Defendants to present their arguments in
support of the CP MTD and WPX MTD together at the hearing.  <u>See</u> Tr. at 3:8-18 (Court).  Both
sets of Defendants agreed to so do.  <u>See</u> Tr. at 3:19-20 (Berge); <u>see id.</u> at 3:22-24 (Campbell).

The Defendants asserted that all of the Plaintiffs' causes of action in the FAC and SAC
"suffer from the same deficiencies[:] . . . being long on conclusory statements and short on actual
specificity."  Tr. at 5:18-6:10 (Campbell).  The Plaintiffs contended that they have "alleged
specific causes of action based centrally around breach of contract that entitle the plaintiffs to
relief once proven with the facts that we will elicit."  Tr. at 9:23-10:1 (Brickell).

Turning to the Defendants' request that the Court dismiss the Plaintiffs' first cause of
action for breach of contract, the Defendants contended that the FAC and the SAC completely
lack factual specificity regarding the nature, scope, and import of the parties' contractual
relationship.  <u>See</u> Tr. ta 10:14-23 (Campbell).  The Defendants pointed out that, in paragraph 24
of the FAC, the Plaintiffs list four leases and asserted that the named Plaintiffs are not the named

parties on the leases. <u>See</u> Tr. at 10:24-11:2 (Campbell). ConocoPhillips conceded, however, that it is currently making royalty payments to the named Plaintiffs. <u>See</u> Tr. at 11:3-8 (Court, Campbell). The Defendants asserted, nonetheless, that the Plaintiffs have failed to point to a specific contractual term that the Defendants have breached. <u>See</u> Tr. at 11:12-16 (Campbell). The Defendants contended that the oil-and-gas lease referenced in paragraph 24 of the FAC, which lists the United States Land Office, Department of the Interior as the lessor, cannot entitle a plaintiff to a royalty interest. <u>See</u> Tr. at 11:20-25 (Campbell). The Defendants asserted that they need to know whether the Plaintiffs hold royalty interests or overriding interests, but the Court countered that, if the Defendants are paying a royalty to the Plaintiffs, then the Defendants must know what type of interest the Plaintiffs own, which Defendants conceded is true. <u>See</u> Tr. at 12:7-18 (Campbell, Court). The Defendants contended however, that, without the Plaintiffs' reference to "specific terms in the contract which we are alleged to have breached," they cannot structure a response. Tr. at 12:22-13:11 (Campbell). The Defendants conceded that, if the Plaintiffs informed them of the specific nature of their interests, "it's possible that they will have nudged their Count 1 breach of contract claim across the line between conceivable and plausible." Tr. at 13:12-18 (Campbell). The Defendants stated they would also like to know how the Plaintiffs acquired interests in the leases. <u>See</u> Tr. at 13:25-14:4 (Berge).

Regarding the Plaintiffs' second cause of action -- that the Defendants' sale of oil and gas to affiliated intermediaries constitutes fraud -- the Defendants contended that they are not certain that the "affiliate transactions exist as they've been alleged." Tr. at 14:11-19 (Berge). The

- 54 -

Defendants stated that they need to know which sale to which affiliated intermediary the Plaintiffs allege is in violation of the leases.  See Tr. at 14:25-15:6 (Berge).  The Defendants contended that, if the Plaintiffs are aware of a sale to an affiliated intermediary, the Plaintiffs should include facts regarding that sale in the FAC and SAC to move their allegations beyond legal conclusions and into the realm of plausibility.  See Tr. at 15:13-23 (Berge).

The Plaintiffs contended that the Defendants have access to the title opinions for the Plaintiffs' ownership interests, any division orders, and any previous title opinions.  See Tr. at 16:9-20 (Brickell).  The Plaintiffs contended that they do not have any of those items, but that the Defendants "are always going to be in possession of all of the information" necessary to prove the Plaintiffs' case.  Tr. at 16:21-24 (Brickell).  The Plaintiffs contended that the leases normally do not contain more than one royalty clause and that the Defendants have the instruments creating each of the Plaintiffs' interests.  See Tr. at 17:6-20 (Brickell).  The Plaintiffs asserted that "there is no doubt to anyone in the room here they know which provision in the lease provides for royalty and what it says."  Tr. at 17:21-25 (Brickell).  The Plaintiffs explained that the leases listing the United Sates Land Office, Department of the Interior, and the State of New Mexico, as lessors, are leases in which the Plaintiffs own overriding interests.  See Tr. at 19:6-12 (Court, Brickell).  The Plaintiffs explained that the royalty clauses are not identical in each of the Plaintiffs' leases, but that the exact language does not matter, because the Plaintiffs allege in the first cause of action that the Defendants have breached each of the leases by not

paying the Plaintiffs for the value of drip condensate derived from the subject wells.  See Tr. at 18:22-21:12 (Brickell).

Regarding the Defendants' assertion that the Plaintiffs should have provided facts regarding the sales to affiliated intermediaries, the Plaintiffs stated that they do not "know exactly who the affiliates are."  Tr. at 23:1-2 (Brickell).  The Plaintiffs contended, however, that they would request the intermediaries' gas purchase contracts in discovery.  See Tr. at 23:3-7 (Brickell).

The Defendants conceded that, given that they possess the lease contracts, if the Plaintiffs are alleging that the Defendants breached the royalty clause, the Plaintiffs' breach of contract claim does not lack specificity.  See Tr. at 23:14-20 (Campbell)("[W]e know whether these individual plaintiffs are royalty owners or overriding royalty owners. . . .  If it is the plaintiffs' statement that it is the royalty clause . . . that has been breached . . . then, arguably, we have all we need . . . .").  The Plaintiffs stated that the royalty clause, in some instances, includes the term "drip condensate" or "oil removed by mechanical means," and that the clause which the Defendants are breaching in the overriding interests is in the "assignment creating the override and specifying the exact percentage or decimal interest in production."  Tr. at 23:24-24:7 (Brickell).  The Plaintiffs stated that the Defendants have all of the instruments in question in their land file.  See Tr. at 24:7-9 (Brickell).  The Plaintiffs stated that they do not want to be "hamstrung" by alleging that the Defendants are breaching only the royalty clause, and asserted that, because the issue is before the Court on a motion to dismiss, the Plaintiffs need not state

more than their allegation that "they have failed to pay us properly under the terms of these leases, and the only provision that talks about payment in those leases is the royalty clause." Tr. at 25:2-11 (Brickell). The Plaintiffs asserted, however, that "all portions of the paragraph would be encompassed by that as" the royalty clause may have more than one sentence. Tr. at 25:11-14 (Brickell). The Defendants asserted that, in the WPX MTD Response, the Plaintiffs refer to a number of obligations that the Defendants have allegedly breached, including paying royalty on the value of the drip condensate, paying royalty on the highest price available, marketing the oil and gas to the parties' mutual advantage, marketing the drip condensate, creating revenue for drip condensate, in addition to alleging that the sales to affiliated intermediaries breaches the terms of the leases. See Tr. at 26:7-19 (Berge). The Defendants stated that, if all of those allegations are based in the royalty clause, then the Plaintiffs should amend the FAC and SAC to that effect. See Tr. at 26:20-23 (Berge).

The Court stated that it is inclined to find that the Plaintiffs have alleged a plausible claim for breach of contract, given that the Plaintiffs have identified the contracts at issue and the provisions allegedly breached. See Tr. at 27:9-14 (Court).

Turning to the Plaintiffs' second cause of action for fraud, the Defendants contended that, under Elliott Indus., the Plaintiffs must demonstrate that the tort damages which they seek do not conflict with the contractual remedies available to the Plaintiffs. See Tr. at 27:22-28:2 (Campbell). The Defendants asserted that, under Elliott Indus. and Isler v. Tex. Oil and Gas Co., the Plaintiffs may not seek tort damages for the breach of a contract. See Tr. at 28:3-7

- 57 -

(Campbell).  The Defendants asserted that the same problem infects the Plaintiffs' second, fifth, and seventh causes of action.  <u>See</u> Tr. at 28:8-10 (Campbell).

The Defendants further asserted that the Plaintiffs fail to meet rule 9(b)'s heightened pleading standard.  <u>See</u> Tr. at 28:14-22 (Campbell).  The Defendants asserted that transactions with affiliated intermediaries do not, alone, constitute fraud.  <u>See</u> Tr. at 28:23-29:2 (Campbell).  Regarding the Plaintiffs' assertion that the Defendants committed fraud by omission, the Defendants contended that, under <u>Cont'l Potash, Inc. v. Freeport-McMoran, Inc.</u>, breach of an implied covenant of good faith and fair dealing sounds in contract, not tort, and that, because the Defendants do not owe fiduciary duties to the Plaintiffs, the Defendants have no duty to disclose information to the Plaintiffs.  <u>See</u> Tr. at 29:3-11 (Campbell).  The Defendants contended that, in the Tenth Circuit, royalty payors do not owe fiduciary duties to royalty payees.  <u>See</u> Tr. at 29:12-15 (Campbell).

The Court inquired whether the Defendants understand <u>Elliott Indus.</u> to preclude the Plaintiffs from bringing a fraud claim based upon the Defendants' alleged breach of a contract.  <u>See</u> Tr. at 29:21-25 (Court).  The Defendants stated that they understand <u>Elliott Indus.</u> to hold that a party may not bring a fraud claim based upon the same conduct as a breach-of-contract claim.  <u>See</u> Tr. at 30:1-5 (Campbell).  The Defendants asserted that, if all the Plaintiffs assert is that the Defendants breached a contract, then the Plaintiffs may not, under <u>Elliott Indus.</u>, bring a claim for conversion or bad-faith breach of contract.  <u>See</u> Tr. at 30:10-15 (Campbell).

- 58 -

The Defendants also asserted that, apart from 9(b)'s heightened pleading standards, the Plaintiffs' allegations in the second cause of action, even if true, do not allege a claim of fraud. See Tr. at 30:18-24 (Berge). The Defendants pointed out that the Plaintiffs have not alleged that the Defendants had a duty to disclose information or that they disclosed false information upon which the Plaintiffs relied to their detriment. See Tr. at 31:2-9 (Berge).

The Plaintiffs asserted that Elliott Indus. does not govern their claim for fraud, because unlike the plaintiffs in Elliott Indus., the Plaintiffs have not dismissed their breach-of-contract claims. See Tr. at 31:15-22 (Brickell). The Court inquired whether the Plaintiffs agreed that Elliott Indus. requires them to allege their claim for fraud separately from the facts necessary to support their breach-of-contract claim, and the Plaintiffs stated they agree. See Tr. at 31:24-32:7 (Court, Plaintiffs). The Plaintiffs asserted, however, that they understood Elliott Indus. to hold that, "without the . . . breach of contract claim, then the fraud claim cannot lie, because that was the essence of the relationship between the parties." Tr. at 32:9-13 (Brickell). The Court stated that it understood Elliott Indus. to hold that a party cannot use the same set of facts to allege both a breach-of-contract and tort claim. See Tr. at 32:14-25 (Court). The Plaintiffs asserted that, under New Mexico law, a fraud claim may arise from a contractual relationship, as long as the fraud claim is based upon independent activity. See Tr. at 33:1-6 (Brickell). The Plaintiffs asserted that, if they can allege a "fraudulent context in the context of this contractual relationship, we can recover punitive damages in addition to the actual damages." Tr. at 33:7-14 (Brickell).

The Plaintiffs contended that they have adequately alleged a claim for fraud, by alleging that the Defendants withheld information in the monthly check stubs, check stubs upon which the Plaintiffs have relied to their detriment. See Tr. at 33:15-24 (Brickell). The Plaintiffs asserted that once the Defendants choose to speak to them, they incurred a duty to speak accurately. See Tr. at 34:4-10 (citing R.A. Peck, Inc. v. Liberty Fed. Sav. Bank). The Plaintiffs asserted that they allege in the FAC and in the SAC that the monthly statements do not include the value of the drip condensate, which renders the monthly statements fraudulent, because the Defendants purport to include the total value of the oil-and-gas proceeds in the monthly statements. See Tr. at 34:11-25 (Brickell). The Plaintiffs asserted that their allegations of fraud in the FAC and SAC are consistent with New Mexico's Uniform Jury Instruction 13-633, which recites the elements of fraud. See Tr. at 35:1-19 (Brickell). The Plaintiffs contended that, in Jessen v. Nat'l Excess Ins. Co., the Supreme Court of New Mexico found that a plaintiff was entitled to punitive damages for a defendant's breach of a contract, because the defendants' breach was "malicious, fraudulent, oppressive, or committed with wanton disregard for plaintiff's rights." Tr. at 34:20-35:2 (Brickell). The Plaintiffs contended that they have pleaded sufficient allegations of fraud to put the Defendants on notice of their claims. See Tr. at 36:5-24 (Brickell).

The Court inquired how the Plaintiffs relied upon the monthly statements in any way that would separate the Plaintiffs' fraud claims from their breach-of-contract claims. See Tr. at 37:1-5 (Court). The Plaintiffs contended that the Defendants are not including all of the post-

production reductions in the monthly statements.  <u>See</u> Tr. at 37:6-14 (Brickell).  The Plaintiffs asserted that the Defendants' disclosure of some, but not all, of the deductions causes them to believe that the reductions "must be reasonable, [and] . . . lawful."  Tr. at 37:15-25 (Brickell).

The Court inquired how the Plaintiffs' damages for the Defendants' omissions would be different from their alleged damages for the Defendants' breach of the leases.  <u>See</u> Tr. at 38:20-22 (Court).  The Plaintiffs conceded that their actual damages would not be different, but that punitive damages are available under their claim for fraud, but not for breach of contract.  <u>See</u> Tr. at 38:23-25 (Brickell).  The Plaintiffs further asserted that the Defendants' fraudulent actions are separate from their breach of the leases, because the Defendants committed fraud by attempting to conceal that they were breaching the leases through sending false monthly statements.  <u>See</u> Tr. at 39:1-14 (Court, Brickell).

The Court stated that the Plaintiffs' allegation of fraud seems to be sufficiently specific, but that the determination whether to dismiss the claim is dependent upon whether the Plaintiffs legally may allege fraud based upon the facts in the FAC and in the SAC.  <u>See</u> Tr. at 40:3-10 (Court).  The Defendants contended that, under <u>Elliott Indus.</u> and <u>Isler v. Tex. Oil and Gas Corp.</u>, the facts set forth in the FAC and in the SAC cannot give rise to a claim of fraud.  <u>See</u> Tr. at 40:15-16 (Campbell).  The Defendants asserted further that the Plaintiffs have pointed to no clause in the leases which requires them to send out accurate monthly statements.  <u>See</u> Tr. at 41:10-11 (Campbell).  The Court inquired whether the absence of such a provision in the lease supports the Plaintiffs' claim for fraud under <u>Elliott Indus.</u> and  <u>Isler v. Tex. Oil and Gas Corp.</u>,

and the Defendants contended that the Plaintiffs are still alleging only that the Defendant breached the contract and failed to disclose that they breached the contract, which does not support their allegation of fraud under Tenth Circuit law.   See Tr. at 41:12-42:8 (Court, Campbell).  The Defendants contended that, in Elliott Indus., the Tenth Circuit held that "'[n]o tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract,'" which the Defendants assert means that the parties' contractual relationship precludes the Plaintiffs' claim for fraud.  Tr. at 46:10-13 (Berge)(quoting Elliott Indus., 407 F.3d at 2005).  The Defendants asserted that the availability of punitive damages for a breach of contract is a separate legal issue than whether the Plaintiffs may allege a claim of fraud based upon a breach of contract.  See Tr. at 42:9-17 (Campbell).

The Plaintiffs contended that the leases do not require the Defendants to send out monthly statements, and, therefore, the leases define the Defendants' duty regarding monthly statements, rather than the Tenth Circuit's ruling in Elliott Indus.  See Tr. at 47:3-20 (Brickell). The Defendants countered, however, that the plaintiffs in Elliott Indus. made exactly the same allegation -- that the defendants' failure to disclose certain reductions in monthly statements amounted to fraud.   See Tr. at 48:18-49:9 (Campbell).   The Defendants asserted that the Plaintiffs' failure to link the duty to disclose to a contractual term is the same fatal flaw which the plaintiffs made in Elliott Indus., and, therefore, the Court should dismiss the Plaintiffs' allegations of fraud.  See Tr. at 49:10-17(Campbell).

Turning to the Plaintiffs' third cause of action -- that the Defendants have breached a duty to market hydrocarbons, the Defendants asserted that the marketable condition rule runs afoul of the "history of the industry in the San Juan Basin and in the country." Tr. at 50:2-3 (Campbell). The Defendants contended that the "vast majority of states," including Texas and New Mexico, have rejected the marketable condition rule. Tr. at 50:9-51:3 (Campbell). The Defendants asserted that the Tenth Circuit rejected the same theory of a violation of the marketable condition rule in Elliott Indus. See Tr. at 51:8-21 (Campbell). The Defendants asserted that Elliott Indus. extinguished a claim for a violation of the marketable condition rule "as a matter of New Mexico law." Tr. at 51:22-24 (Campbell). The Defendants contended that the Supreme Court of New Mexico could have commented on the existence of a marketable condition rule in Davis v. Devon Energy Corp., but, because the Supreme Court of New Mexico choose not to decide whether the rule exists in New Mexico, the Tenth Circuit's ruling in Elliott Indus. stands. See Tr. at 52:13-17 (Campbell).

The Plaintiffs countered that the Defendants' assertion that New Mexico choose not to adopt the marketable condition rule is not consistent with the Supreme Court's decision in Davis v. Devon Energy Corp., because the Supreme Court remanded the case to the district court for an adjudication on the merits. See Tr. at 53:20-24 (Brickell). The Plaintiffs asserted that whether the Supreme Court of New Mexico will adopt the marketable condition rule is still an open question, because the Supreme Court of New Mexico did not reject the rule in Davis v. Devon Energy Corp. See Tr. at 54:15-55:13 (Brickell). The Plaintiffs asserted that Creson v. Amoco

Prod. Co. is inapplicable, because the parties in that case stipulated that the gas was marketable at the wellhead, and on that basis, the Tenth Circuit explained, in Elliott Indus., that "expenses that may be imposed that enhance the value of that gas to the royalty share might be proportionately borne by the royalty side."  Tr. at 55:14-22 (Brickell).  The Plaintiffs contended that they have not stipulated that the oil and gas from the subject wells is marketable at the wellhead, and, therefore, that aspect of Elliot Indus.'s holding does not bind their claims.  See Tr. at 55:23-56:2 (Brickell).  The Plaintiffs asserted that the Defendants are attempting to characterize the Supreme Court of New Mexico's decision in Davis v. Devon Energy Corp. as "wrong," but that the Court must follow New Mexico's law as the Supreme Court of New Mexico announced it.  Tr. at 56:11-16 (Brickell).  The Plaintiffs contended that, in Davis v. Devon Energy Corp., the Supreme Court of New Mexico did not disturb the district court's finding of an implied duty to market hydrocarbons.  See Tr. at 56:17-23 (Brickell).

The Plaintiffs stated that they do not agree that the Tenth Circuit construed New Mexico law, in Elliott Indus., to not follow the marketable condition rule.  See Tr. at 57:16-21 (Court, Brickell).  The Plaintiffs contended that the Tenth Circuit did not rule on the existence of an implied duty to market hydrocarbons in Elliott Indus. because the plaintiffs had expressly dropped their breach-of-contract claims.  See Tr. at 58:3-13 (Brickell).

The Defendants countered that the Tenth Circuit addressed precisely the posture of the Plaintiffs' claims in Elliott Indus., when the Tenth Circuit found that "'[t]his conception of the implied duty to market finds no support within New Mexico case law.'"  Tr. at 59:5-15

(Campbell)(quoting Elliott Indus., 407 F.3d at 1114).  The Defendants asserted that Davis v. Devon Energy Corp. does not leave open the possibility that the Supreme Court of New Mexico will adopt the marketable condition rule in the future, because the Supreme Court of New Mexico stated that "'[n]othing in this opinion should be construed as either the recognition or disapproval of the market-condition rule, its scope, or its applicability.'"  Tr. at 60:4-11 (Brickell)(quoting Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 15, 147 N.M. 157, 218 P.3d 75).  The Defendants asserted that the Supreme Court did not intimate that it disagrees with Elliott Indus.  See Tr. at 60:12-20 (Brickell).  The Defendants further requested the Court examine Creson v. Amoco Prod. Co. for its analysis of how to construe oil-and-gas leases.  See Tr. at 60:24-61:15 (Berge).  The Defendants asserted that the royalty clauses at issue in the leases have addressed the parties' duties, and, based upon New Mexico law, the Court cannot imply a duty to market hydrocarbons beyond what is in the terms of the leases.  See Tr. at 61:22-62:3 (Berge).

The Court stated that it will study Elliott Indus. in further detail regarding the Plaintiffs' claims for fraud and breach of an implied duty to market hydrocarbons.  See Tr. at 62:4-7 (Court).  The Court stated, however, that it understands Elliott Indus. to interpret New Mexico law as not adopting the marketable condition rule, and is inclined to grant the CP MTD and WPX MTD regarding the Plaintiffs' third cause of action.  See Tr. at 62:12-25 (Court).  The Plaintiffs urged the Court to examine Creson v. Amoco Prod. Co., because, they asserted, the Tenth Circuit relied on that case in Elliott Indus., but in that case, the parties stipulated that the

- 65 -

oil and gas was marketable at the wellhead, therefore distinguishing their FAC and SAC from the Tenth Circuit's holding in Elliott Indus. See Tr. at 63:6-16 (Brickell). The Court responded that it is "stuck with Elliott," notwithstanding factual distinctions between the Plaintiffs' claims and the claims in Creson v. Amoco Prod. Co. See Tr. at 64:2-12 (Court, Brickell). The Plaintiffs also asserted that their third cause of action is not limited to a violation of an implied duty to market hydrocarbons, but that they have also alleged that the Defendants underpaid them for their royalty interests by deducting more than the reasonable or actual expenses from the royalty payments. See Tr. at 64:13-21 (Brickell); id. at 65:1-18 (Brickell)(citing FAC ¶¶ 51-51, at 15). The Plaintiffs requested that the Court grant them leave to file an amended complaint to more fully state their claim for underpayment if the Court dismisses their third cause of action. See Tr. at 65:19-25 (Brickell). The Defendants countered that, in Elliott Indus., the Tenth Circuit rejected a claim that a payor deducted more than actual or reasonable costs from royalty payments, and asserted that any similar claim for underpayment may be alleged only under a breach-of-contract theory, and not under an implied duty to market. See Tr. at 66:5-14 (Campbell).

Turning to the Plaintiffs' fourth cause of action -- the Defendants' alleged violation of the Proceeds Payment Act -- the Defendants asserted that their challenge is on "strictly legal grounds." Tr. at 66:22-25 (Court, Campbell). The Defendants asserted that Elliott Indus. clearly holds that a claim under the Proceeds Payment Act is not an independent cause of action. See Tr. at 67:1-8 (Campbell). The Defendants asserted that the Plaintiffs may prevail under the

Proceeds Payment Act only if they can allege "facts intended to be encompassed within the harm and injury sought to be protected by the statute."  Tr. at 67:13-22 (Campbell).  The Defendants asserted that the Proceeds Payment Act is intended only to redress the harm a party suffers when a "royalty payor having received royalty payment -- having received a signed division order withholds a payee's royalty payments for more than the statutorily period."  Tr. at 68:12-19 (Campbell).  The Defendants contended that the Plaintiffs' allegation that the Defendants failed to accurately calculate their royalty payments is not redressable injury under the Proceeds Payment Act.  See Tr. at 68:23-69:8 (Campbell).

The Plaintiffs asserted that they are not alleging a cause of action under the Proceeds Payment Act alone, but, rather, are alleging that the Defendants' failure to pay their full royalty interests, as provided in the leases, is actionable under the Proceeds Payment Act.  See Tr. at 70:6-20 (Brickell).  The Plaintiffs asserted that the Defendants are not relieved of their obligation under the Proceeds Payment Act by paying "some" of the royalty interests and further asserted that the Plaintiffs allege that the Defendants have not paid them for any of the value of the drip condensate.  Tr. at 71:1-5 (Brickell).  The Plaintiffs contended that N.M.S.A. 1978, § 70-10-3's language indicates that the Proceeds Payment Act applies to any failure to pay royalties, regardless whether a payor paid a portion of a payee's interests, and that, if the Legislature had intended otherwise, they would have so indicated in the statute.  See Tr. at 71:6-11 (Brickell). The Plaintiffs contended that the FAC and SAC have put the Defendants on notice of their allegation that the Defendants have failed to make full royalty payments within the time frames

- 67 -

which the Proceeds Payment Act and Colorado state law require.   See Tr. at 71:21-72:7 (Brickell).   The Plaintiffs asserted that, in <u>Murdock v. Pure-Lively Energy 1981-A, Ltd.</u>, the Supreme Court of New Mexico interpreted the Proceeds Payment Act to require a division order only when title to a royalty interest was disputed, and that, because the title to the Plaintiffs' royalty interest is not disputed, they do not need ensure that the Defendants receive a division order before coming within the terms of the Act.   See Tr. at 72:14-73:1 (Brickell).

The Court stated that it is inclined to find that the statement "'to make payment'" in N.M.S.A. 1978, § 70-10-5 "is going to include making an underpayment," and, therefore, is inclined to deny the Defendants' request to dismiss the Plaintiffs' fourth cause of action.   Tr. at 73:8-14   (Court)(quoting N.M.S.A. 1978, § 70-10-5).    The Court noted that any other construction of the statute may be unreasonable, because a payor could avoid a penalty by making a miniscule payment.   See Tr. at 73:11-13 (Court).   The Defendants asserted that the Legislature did not intend to impose an eighteen-percent penalty when a payor miscalculates a payment.   See Tr. at 73:21-25 (Campbell).

Turning to the Plaintiffs' fifth cause of action -- for bad-faith breach of contract -- the Defendants asserted that the claim is barred for three reasons.   See Tr. at 73:3-8 (Campbell).   The Defendants asserted <u>Elliott Indus.</u> and <u>Isler v. Tex. Oil and Gas Corp.</u> "preclude absorption of tort claims and tort remedies in a contract case like this one."   Tr. at 73:9-12 (Campbell).   The Defendants further asserted that the New Mexico law regarding the implied covenant of good faith and fair dealing sounds in contract, and not in tort, and, therefore, the Plaintiffs cannot

allege a separate claim seeking tort remedies absent a fiduciary relationship between the parties. See Tr. at 73:13-19 (Campbell)(citing Bourgeous v. Horizon Healthcare Corp.).  Last, the Defendants contended that the Plaintiffs have not established that the Defendants owe them fiduciary duties, and that the Tenth Circuit construes New Mexico law to not impose fiduciary duties between royalty owners, and the holders of oil-and-gas leases.  See Tr. at 74:20-25 (Campbell).  The Defendants contended that the Plaintiffs base their bad-faith breach-of-contract claim upon the supposed existence of a fiduciary relationship between the parties, which, the Defendants assert, the Tenth Circuit does not recognize.  See Tr. at 76:1-5 (Berge).  The Defendants asserted that the Plaintiffs have mischaracterized their fifth cause of action by asserting that they are seeking punitive damages, and not tort remedies, for the Defendants' alleged breach of contract; the Defendants contended that whether punitive damages are available for the breach of a contract is a separate legal question from whether a cause of action for bad faith breach of contract is available for their alleged breach.  See Tr. at 75:3-16 (Campbell).

The Court asked the Plaintiffs how their bad-faith breach-of-contract claim is separate from their breach-of-contract claim.  See Tr. at 76:11-16; id. at 76:22-24 (Court).  The Court stated that an implied covenant of good faith and fair dealing usually covers actions which the contract does not expressly govern, which does not appear to be the case with the leases.  See Tr. at 77:1-13 (Court).  The Plaintiffs asserted that, under Cont'l Potash, Inc. v. Freeport-McMoran, Inc., an overriding royalty interest may have a remedy through alleging a breach of the implied

- 69 -

duty of good faith and fair dealing, notwithstanding that other covenants will not be implied into their leases.  Tr. at 77:14-21 (Brickell).  The Court countered that the holding of Cont'l Potash, Inc. v. Freeport-McMoran, Inc. seem apposite to the Plaintiffs' allegations, because they base the Defendants' alleged underpayments on contractual provisions.  See Tr. at 77:22-78:4 (Court). The Plaintiffs asserted that the Defendants' are "intentionally underpaying and intentionally defeating the purpose of the contract . . . . [T]hey're intentionally misrepresenting the volumes and values of the hydrocarbons produced to further their ability to pay correctly."  Tr. at 78:5-11 (Brickell).  The Plaintiffs contended that this constitutes bad faith.  See Tr. at 78:5-11 (Brickell). The Plaintiffs asserted that the Defendants' bad faith will give them the possibility of punitive damages, which, they stated, are not available with a breach-of-contract claim alone.  See Tr. at 78:17-21 (Court, Brickell).  The Plaintiffs contended that, under Cont'l Potash, Inc. v. Freeport-McMoran, Inc., they need not demonstrate the breach of fiduciary duties to receive punitive damages for the Defendants' breach of the leases, because New Mexico law "imposes the duty of good faith and fair dealing upon the parties in performance and enforcement of the contract."  Tr. at 78:25-79:10 (Brickell).  The Plaintiffs asserted that the fifth cause of action protects the overriding royalty interests owners specifically, because the Defendants' bad faith precludes them from asserting that "there's no implied covenant protecting override owner[s]."  Tr. at 79:11-22 (Brickell).  The Plaintiffs asserted that the Defendants' legal contentions with the fifth cause of action are suited for a motion for summary judgment, but not a motion to dismiss,

because the Plaintiffs have adequately alleged that the Defendants' willful and malicious conduct constitutes bad-faith breach of contract.  See Tr. at 79:23-80:7 (Brickell).

Turning to the Plaintiffs' sixth cause of action for unjust enrichment, the Defendants contend that, under Elliott Indus., "'[t]he presence of a contract bars a claim for unjust enrichment.'"   Tr. at 81:2-9 (Campbell)(quoting Elliott Indus., 407 F.3d at 1117).   The Defendants asserted that the Plaintiffs' desire to retain an unjust enrichment claim for "some point down the road" is not permissible under Elliott Indus.   See Tr. at 84:16-85:4 (Berge). Regarding the Plaintiffs' request for an injunction, the Defendants asserted that the Plaintiffs have not pled the elements necessary to obtain an injunction.  See Tr. at 81:25-82:6 (Campbell). Last, the Defendants asserted that the Plaintiffs' request for declaratory relief fails because they have not specified the declaration that the seek the Court to issue and, further, because the Plaintiffs' request for declaratory relief is redundant to their allegations of a breach of contract, for the Court's resolution of the contractual claims will guarantee the Plaintiffs any relief to which they are entitled given the Defendants' actions.  See Tr. at 82:21-82:23 (Campbell).  The Defendants further contended that, because the Plaintiffs are seeking an equitable remedy, they must demonstrate that they have no adequate remedy at law, which they cannot, because the Plaintiffs are also asserting claims for breach of contract.  See Tr. at 85:5-10 (Berge).

The Plaintiffs asserted the Elliott Indus. does not bind their FAC and SAC, because, unlike the plaintiffs in Elliott Indus., they have not dropped their breach-of-contract claims.  See Tr. at 85:14-18 (Brickell).  The Plaintiffs conceded that quasi-contract remedies are not available

when an express contract regulates parties' conduct, but the Plaintiffs stated that they are bringing their claims for equitable relief in case their express breach-of-contract claims fail. <u>See</u> Tr. at 86:1-12 (Court, Brickell). The Court countered that if the Plaintiffs' breach-of-contract claims fail, then they have no basis to allege that the Defendants breached a separate duty, because, just as in <u>Elliott Indus.</u>, their claim for underpayment is grounded in the contractual duties arising from the leases. <u>See</u> Tr. at 86:13-18 (Court). The Plaintiffs corrected themselves and stated that they are bringing the equitable claims in case "the damages as may be proven under the breach of contract . . . fail to adequately compensate the parties." Tr. at 86:19-23 (Brickell). The Plaintiffs further stated that they do not believe that <u>Elliott Indus.</u> would preclude their allegations of unjust enrichment, particularly if the Court determines that no covenants may be implied into the overriding royalty owners' contracts. <u>See</u> Tr. at 87:12-88:4 (Brickell). The Plaintiffs conceded that their FAC and SAC could have been worded better, but asserted that they have still satisfied the notice and plausibility requirements necessary to survive a motion to dismiss. <u>See</u> Tr. at 88:5-10 (Brickell).

The Plaintiffs asserted that the Court's resolution of their breach-of-contract claims does not obviate their need for declaratory judgment, "because, unlike the cases cited by the defendants here, . . . this is an ongoing relationship." Tr. at 88:11-21 (Brickell). The Plaintiffs contended that the cases in which courts have determined that declaratory and injunctive relief is unavailable, because of the resolution of contractual disputes, do not contemplate that the

parties' contractual relationship may be ongoing beyond the courts' adjudication.  See Tr. at 88:18-89:4 (Brickell).

The Defendants asserted that, as long as the Plaintiffs are alleging a breach of a contract, under Elliott Indus. they cannot seek equitable relief.  See Tr. at 89:14-20 (Campbell).

The Court stated that it is inclined to "think Elliott precludes any sort of unjust enrichment based on the contract," as the Plaintiffs' only tort cause of action is the allegation of fraud, which is also based on the parties' contractual relationship in the leases.  Tr. at 90:21-91:2 (Court).  The Court stated that it is inclined to find that declaratory relief is available to declare the parties' ongoing rights.  See Tr. at 91:3-6 (Court).

Turning to the Plaintiffs' seventh cause of action, conversion, the Defendants asserted that the Court has two legal reasons to dismiss the claim.  See Tr. at 91:8-9 (Campbell).  The Defendants contended that, under Elliott Indus. and Isler v. Tex. Oil and Gas Corp., the Plaintiffs may not seek a tort remedy for the conversion because the Plaintiffs' conversion claim essentially alleges that the Defendants breached a contract.  See Tr. at 91:8-14 (Campbell).  The Defendants also asserted that the Plaintiffs are alleging that the Defendants converted money -- the proceeds from the sale of hydrocarbons -- which, the Defendants asserted is not an item which may be subject to a claim of conversion.  See Tr. at 91:15-92:6 (Campbell)(citing FAC ¶¶ 71-72, at 19).  The Defendants requested the Court to review the Plaintiffs' allegations in the FAC and in the SAC -- and not their arguments in the CP MTD Response and WPX MTD

Response -- that the Defendants have converted the Plaintiffs' share of hydrocarbons as opposed to money proceeds.  See Tr. at 92:9-15 (Berge).

The Plaintiffs conceded that they did not artfully plead their seventh cause of action.  See Tr. at 93:17-20 (Brickell).  The Plaintiffs asserted, however, they are alleging that the Defendants converted the Plaintiffs' share of hydrocarbons.  See Tr. at 93:21-94:1 (Brickell).  The Plaintiffs also asserted that, under Murdock v. Pure-Lively Energy 1981-A, Ltd., New Mexico law recognizes a cause of action for the conversion of money.  See Tr. at 94:2-16 (Brickell)(citing Murdock v. Pure-Lively Energy 1981-A, Ltd., 775 P.2d at 1296).  The Plaintiffs asserted, nonetheless, that their allegation is that the Defendants converted their share of hydrocarbons.  See Tr. at 94:17-25 (Brickell).  The Plaintiffs stated that they would like to replead their claim for conversion, as well as their claim for the breach of an implied duty to market, unjust enrichment, and injunctive relief.  See Tr. at 95:8-20 (Brickell).

Turning to the Defendants' request that the Court dismiss the Plaintiffs' class-action allegations, the Court stated that its inclination is that the Supreme Court's holdings in Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly do not apply to class-action allegations.  See Tr. at 96:24-95:6 (Court).  The Defendants asserted that the United States District Court for the Eastern District of New Jersey has applied Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly to class-action allegations.  See Tr. at 97:8-11 (Campbell)(citing Nicholas v. CMRE Fin. Serv.; Smith v. Lyons, Doughty & Valdhuius, P.C.).  The Defendants contended that the Plaintiffs have done nothing more than recite rule 23 of the Federal Rules of Civil Procedure in their class-action

allegations, and that, in the Defendants' opinion, the contracts at issue are "many and varied in substance and obligation," and, therefore, the Plaintiffs must allege facts with more specificity to demonstrate that a class action is proper.   Tr. at 97:12-98:5 (Campbell).   The Defendants conceded that they have not found a previous opinion from the Court regarding the applicability of Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly to class-action allegations, but asserted nonetheless "that the pleading requirements of those two cases should in fact, be applied to class-action cases, because, otherwise, we are totally in the dark as to the underpinning factual assertions."  Tr. at 98:18-25 (Campbell).

The Plaintiffs asserted that, contrary to the Defendants' contention that Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly should apply to class-action allegations, class-action allegations are not independent causes of action such that the Supreme Court's precedent regarding the sufficiency of a complaint under rule 8(a) should apply.   See Tr. at 99:13-19 (Brickell).   The Plaintiffs contended, moreover, that their class-action allegations in the FAC and in the SAC are sufficient to put the Defendants on notice of their allegations and survive a motion to dismiss. See Tr. at 99:20-100:5 (Brickell).  The Plaintiffs asserted that the Defendants' characterization of the contracts at issue as many and varied is a defense to class-action certification, and is not a theory upon which the Court may dismiss their class-action allegations.   See Tr. at 100:6-22 (Brickell).

The Court pointed the parties to its decision in Isengard v. N.M. Pub. Educ. Dep't., No. CIV 08-0300 JB/RLP, 2009 WL 5220371 (D.N.M. Dec. 9, 2009)(Browning, J.), and stated that

- 75 -

it is inclined to think that Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly do not apply to class-action allegations at this stage of the litigation.  See Tr. at 101:9-102:4 (Court).

The Court granted the parties permission to file supplemental briefing regarding the interplay of Elliot Indus. and Davis v. Devon Energy Corp., but expressed its concern that regardless whether the Tenth Circuit misinterpreted New Mexico law, Elliott Indus. binds the Court's holding.  See Tr. at 107:22-108:20 (Court).

### 10. **The Parties' Supplemental Briefs.**

The Plaintiffs filed identical briefs in both matters addressing their theory that Elliott Indus. does not "preclude the plaintiffs' claim for breach of the implied duty to market."  Letter from Turner W. Branch to the Court at 1, re: Anderson Living Trust, et. al. v. ConocoPhillips Company, LLC, U.S. Dist. Court Case NO. CV-12-0039-JB/KM (dated June 29, 2012), filed June 29, 2012 (No. CIV 12-0039 Doc. 36); Letter from Turner W. Branch to the Court at 1, re: Anderson Living Trust, et. al. v. ConocoPhillips Company, LLC, U.S. Dist. Court Case NO. CV-12-0040-JB/LFG (dated June 29, 2012), filed June 29, 2012 (No. CIV 12-0040 Doc. 51)(collectively, "Plaintiffs' First Supp.").   The Plaintiffs assert that the Tenth Circuit's statement that plaintiffs' "concept of the implied duty to market finds no support with New Mexico case law because the express terms of the royalty obligations direct the royalty to be paid on the value of gas 'at the well,'" was dicta and based upon two factually dissimilar cases. Plaintiffs' First Supp. at 2 (quoting Elliott Indus., 407 F.3d at 1114).  The Plaintiffs contend that the Tenth Circuit relied upon Creson v. Amoco Prod. Co. and Cont'l Potash, Inc. v. Freeport-

McMoran, Inc. in the dicta in Elliott Indus., which the Plaintiffs assert do not represent controlling New Mexico law regarding the existence of an implied duty to market in oil-and-gas leases, and are factually distinguishable from their allegations.  See Plaintiffs' First Supp. at 2. The Plaintiffs assert that, in Davis v. Devon Energy Corp., the Supreme Court of New Mexico explained that Cont'l Potash, Inc. v. Freeport-McMoran, Inc. does not determine the existence of an implied duty to market in oil-and-gas leases under New Mexico law, because that decision "'applies to the process of interpreting an agreement and its surrounding circumstances to effectuate the parties' intentions, not to the implication of a legal duty controlling the parties' conduct.'"  Plaintiffs' First Supp. at 3-5 (quoting Davis v. Devon Energy Corp., 2009-NMSC-048, ¶¶ 34-35, 147 N.M. 157, 218 P.3d 75).  The Plaintiffs also assert that the Court of Appeals of New Mexico applied the marketable condition rule in Creson v. Amoco Prod. Co. to determine the value of gas at the wellhead, and to hold that post-production costs incurred to make a gas more valuable may be shared by a lessee and lessor.  See Plaintiffs' First Supp. at 3-4.  The Plaintiffs assert that their allegations are factually distinguishable from those in Creson v. Amoco Prod. Co, because they do not stipulate that the hydrocarbons from the subject wells are marketable at the wellhead.  See Plaintiffs' First Supp. at 3-4.  The Plaintiffs assert that Elliott Indus. does not preclude their assertion of a breach of the implied duty to market, because, unlike Cont'l Potash, Inc. v. Freeport-McMoran, Inc., the leases do not "specifically allow for assessment of expenses to place the hydrocarbons in marketable condition," and unlike the gas in Creson v. Amoco Prod. Co., the hydrocarbons are not marketable at the well.  Plaintiffs' First

- 77 -

Supp. at 5.  The Plaintiffs assert, therefore, that the "Elliott decision does not represent current New Mexico law on Plaintiff's allegations."  Plaintiffs' First Supp. at 5.

WPX contends that the Tenth Circuit's analysis in Elliott Indus. binds the Court unless or until the Supreme Court of New Mexico issues an intervening decision on the issue.  See Letter from Bradford C. Berge to the Court at 1, re: Anderson Living Trust, et al. v. WPX Energy Prod. LLC, et al., D.N.M. Case No. CV-12-00040 JB/LFG (dated July 13, 2012), filed July 13, 2012 (No. CIV 12-0040 JB/LFG Doc. 56)("WPX Supp.")(citing Kokins v. Teleflex, Inc., 621 F.3d 1290, 1295 (10th Cir. 2010); Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)).  WPX asserts that the Tenth Circuit determined in Elliott Indus. that the implied duty to market, on which the Plaintiffs' base their allegation that New Mexico recognizes the marketable condition rule, "'finds no support in New Mexico case law.'"  WPX Supp. at 2 (quoting Elliott Indus., 407 F.3d at 1114).  WPX asserts that the Tenth Circuit's statements regarding the implied duty to market are not dicta, as the Plaintiffs contend, because the Tenth Circuit's pronouncement regarding New Mexico law and the implied duty to market was an alternative basis for their ruling, rather than dicta.  See WPX Supp. at 2 (citing United States v. Title Insur. & Trust Co., 265 U.S. 472, 486 (1924); Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir. 2008)).  WPX also contends that the Plaintiffs have failed to factually distinguish their allegations from those at issue in the authorities upon which the Tenth Circuit relied in in Elliott Indus., because, "[o]bviously, the Tenth Circuit was aware that Cont'l Potash, Inc. v. Freeport-

- 78 -

McMoran, Inc. . . . involved a mining contract, and that some of the gas at issue in Creson v. Amoco Prod. Co. . . . was marketable at the wellhead." WPX Supp. at 2.

Conoco-Phillips similarly contends that the Plaintiffs' First Supp. "ignores the breadth of the Tenth Circuit's holdings in Elliott." Letter from Michael Campbell to the Court at 2, re: Anderson Living Trust, et al. v. ConocoPhillips Company, D.N.M. Case No. 12-CV-00039 JB/KBM (dated July 13, 2012, at 2), filed July 13, 2012 (Case No. CIV 12-0039 Doc. 41)("CP Supp."). ConocoPhillips contends that the Tenth Circuit rejected the plaintiffs' assertion of an implied marketable condition rule apart from the plaintiffs' failure to allege a breach-of-contract claim. See CP Supp. at 2 (citing Elliott Indus. 407 F.3d at 1113). ConocoPhillips asserts that such statements from the Tenth Circuit are not dicta. See CP Supp. at 2. ConocoPhillips also argues that the Tenth Circuit's interpretation of New Mexico law was not predicated on either Creson v. Amoco Prod. Co. or Cont'l Potash v. Freeport-McMoran, Inc., but, instead, the Tenth Circuit rejected the marketable condition rule as an impermissible extension of the implied duty to market announced in Libby v. DeBaca and Darr v. Eldridge. See CP Supp. at 2-3. ConocoPhillips further contends that Davis v. Devon Energy Corp. is not an intervening decision from the Supreme Court of New Mexico that could overturn the Tenth Circuit's ruling in Elliott Indus., because the Supreme Court of New Mexico expressly did not resolve in Davis v. Devon Energy Corp. whether the marketable condition rule is implied in oil-and-gas leases. See CP Supp. at 3 (citing Davis v. Devon Energy Corp., 2009-NMSC-048, ¶¶ 14, 37, 147 N.M. 157, 218 P.3d 75).

On September 18, 2012, the Plaintiffs referred the Court to Abraham v. BP Am. Prod. Co., 685 F.3d 1196 (10th Cir. 2012), regarding its implication for the existence of an implied duty of good faith and fair dealing in leases.  See Plaintiffs' Notice of Supplemental Authority, filed September 18, 2012 (No. CIV 12-0039 Doc. 56); Plaintiffs' Notice of Supplemental Authority, filed September 18, 2012 (No. CIV 12-0040 Doc. 70)(collectively, "Plaintiffs' Second Supp.").

## LAW REGARDING RULE(12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

- 80 -

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## LAW REGARDING OIL AND GAS LEASES

Oil and gas leases are construed "like any other contracts." Elliott Indus., 407 F.3d at 1108. Additionally, New Mexico implies in law a duty -- "'to make diligent efforts to market the production in order that the lessor may realize on his royalty interest'" -- on oil-and-gas producers, "in equity, without looking to the language of the agreements or other evidence of the parties' intentions." Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 35, 147 N.M. 157, 218 P.3d 75 (quoting Darr v. Eldridge, 6 N.M. at 263, 346 P.2d at 1044). This obligation is called the "duty to market." Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 35, 147 N.M. 157, 218 P.3d 75.

In 2005, in Elliott Indus., the Tenth Circuit addressed various obligations that oil-and-gas lessors owe the royalty interest owners on their leases. The plaintiffs in Elliott Indus. were royalty owners who sued ConocoPhillips, the working interest owner to collect additional royalties. The production subject to the plaintiffs' claim in Elliott Indus. was conventional gas. As product, it contained NGLs that are removed from the gas through processing before the residue is generally acceptable for transportation on interstate pipeline transmission systems. See 407 F.3d at 1110-1111. The plaintiffs alleged that ConocoPhillips was underpaying their royalty interests by reducing their royalties with illegitimate post-production costs, including

- 82 -

"processing, marketing, transportation, and fractionation costs, from the value of the refined natural gas products."   407 F.3d at 1100.   The plaintiffs alleged that ConocoPhillips' conduct was a violation of the Proceeds Payment Act, a breach of the implied duty of good faith and fair dealing, a breach of an implied duty to market, conversion, constructive fraud, fraud, and unjust enrichment, among other alleged wrongs.   See 407 F.3d at 1101.   The plaintiffs expressly declined to assert any contract claims under the governing lease.   See 407 F.3d at 1107. ConocoPhillips contended that it was performing its contractual obligations within the terms of the plaintiffs' leases.   See 407 F.3d at 1101.

### 1.      The Implied Duty to Market and the Marketable Condition Rule.

The Tenth Circuit determined that the district court properly granted ConocoPhillips summary judgment on the plaintiffs' allegation that ConocoPhillips' royalty payment practices violated the implied duty to market.   The plaintiffs alleged that ConocoPhillips was obligated under the implied duty to market to pay royalties based upon the best price reasonably available for the gas-and-oil products, and not the actual price minus allegedly "excessive" cost deductions.   407 F.3d at 1113-14.   The Tenth Circuit noted that New Mexico recognizes an "'implied covenant on the part of the lessee . . . that after production of oil and gas in paying quantities is obtained, he will thereafter continue the work of development . . . with reasonable diligence . . . .   having in mind his own interest as well as that of the lessor, to market the product.'"   407 F.3d at 1113 (quoting Libby v. DeBaca, 51 N.M. at 95, 179 P.2d at 265). Because the Tenth Circuit construed Elliott Indus. before the Supreme Court of New Mexico's

- 83 -

pronouncement in <u>Davis v. Devon Energy Corp.</u> that the duty to market is implied "in equity, without looking to the language of the agreements or other evidence of the parties' intentions," 2009-NMSC-048, at ¶ 35, 147 N.M. 157, 218 P.3d 75, the Tenth Circuit interpreted New Mexico law in <u>Elliott Indus.</u> to imply the duty to market only in fact, based upon "whether any implied duty to market was intended by the parties or would contradict the express provisions of that agreement," 407 F.3d at 1113.  On that basis, the Tenth Circuit stated that it could not "speculate . . . how to construe the scope of any implied covenant to market that may exist," because the plaintiffs' divorced their implied duty to market claim from their contractual relationship with ConocoPhillips, and disclaimed any "reliance on the express provisions of the royalty agreements."  407 F.3d at 1113.

The Tenth Circuit also noted that it could not imply a duty to market in fact into the royalty provisions in the plaintiffs' leases, because the royalty provisions expressly covered how ConocoPhillips was to calculate the plaintiffs' royalty payments.  <u>See</u> 407 F.3d at 1113-14 ("[U]nder New Mexico law, covenants are not implied for subjects that are treated in express provisions. . . .  [T]he express terms of the royalty obligations direct the royalty to be paid on the value of gas 'at the well.'").  Moreover, the Tenth Circuit stated that the plaintiffs failed to show how ConocoPhillips' conduct violated any implied duty to market under New Mexico law.  The Tenth Circuit stated that, because ConocoPhillips was and is "actively producing gas, processing the gas, and selling the refined natural gas and NGLs," ConocoPhillips' conduct "complied with the implied duty to market as articulated by the New Mexico courts."  407 F.3d at 1113 (citing

Darr v. Eldridge, 346 P.2d at 1044).  The Tenth Circuit expressly held that the plaintiffs'

"conception of the implied duty to market" as requiring ConocoPhillips' to "bear the burden of

all costs incurred to put the gas in a marketable condition including the cost of removing the

NGLs from the gas. . . .  finds no support within New Mexico law."  407 F.3d at 1113-14.

From the time of the Tenth Circuit's decision in Elliott Indus., the Supreme Court of New

Mexico has, twice, expressly declined to decide whether a marketable condition rule is implied

as a matter of law in oil and gas leases.  In Davis v. Devon Energy Corp., the issue before the

Supreme Court of New Mexico was whether a state district court properly denied certification of

a class alleging that defendant gas producers underpaid the plaintiffs' royalties by improperly

deducting the cost of rendering the gas marketable.  See 2009-NMSC-048, at ¶ 1.  The state

district court concluded that the plaintiffs failed to establish the commonality requirement to

proceed as a class action, because determining whether the defendants' royalty payments

violated the terms of the plaintiffs' leases would require interpreting each plaintiff's individual

lease -- totaling as many as thirty-four lease agreements -- and, therefore, the plaintiffs failed to

demonstrate that common questions of law or fact predominated the class' allegations.  See

2009-NMSC-048, at ¶ 26.  The Supreme Court of New Mexico concluded, however, that the

state district court's construction of the marketable condition rule would not require the court to

determine whether that duty is implied in fact in each individual lease.  The Supreme Court of

New Mexico first explained that the implied duty to market is implied "in equity, without

looking to the language of the agreements or other evidence of the parties' intentions."  2009-

NMSC-048, at ¶ 35.  The state district court had ruled that, "under the implied duty to market, the marketable condition rule applies in New Mexico."  2009-NMSC-048, at ¶ 35 (secondary quotations omitted).  The Supreme Court of New Mexico concluded that, because the state district court concluded that the marketable condition rule is incorporated into the implied duty to market, the state district court would not be required to determine whether the marketable condition rule is implied, in fact, in each individual lease to adjudicate the class' allegations.  See 2009-NMSC-048, at ¶ 35.  The Supreme Court of New Mexico expressly disclaimed, however, that it was addressing the state district court's conclusion that the implied duty to market incorporates the marketable condition rule in New Mexico.  See 2009-NMSC-048, at ¶ 14 ("For the purposes of our review . . . we do not address the existence of the marketable condition rule in New Mexico or its applicability in any of these cases."); 2009-NMSC-048, at ¶ 35 ("[G]iven the district court's conclusion that the duty to market, which applies in equity irrespective of the parties' intentions, incorporates the duty to put CBM gas in a marketable condition (a conclusion we do not review in this opinion) . . . .").

In ConocoPhillips v. Lyons, the issue before the Supreme Court of New Mexico was whether ConocoPhillips properly calculated the State of New Mexico's royalty payments as required under the statutes creating New Mexico's leases.  See 2013-NMSC-009, ¶¶ 1-3, 299 P.3d 844.  New Mexico contended that ConocoPhillips was not allowed, under the terms of New Mexico's statutory lease forms, to deduct the post-production costs necessary to render gas marketable from New Mexico's royalty payments.  See 2013-NMSC-009, ¶¶ 2-6, 19-21, 299

- 86 -

P.3d 844.  The Supreme Court of New Mexico first explained that, when royalty provisions

specify that a lessee is to calculate its net proceeds "at the well," the lessee is, generally,

> entitled to deduct all costs that are incurred subsequent to production, including those necessary to transport the gas to a downstream market and those costs, such as dehydrating, treating, and processing the gas, that are necessary to make the gas saleable in that market or that increase the value of the gas.

2013-NMSC-009, ¶ 17, 299 P.3d 844 (citing Creson v. Amoco Prod. Co., 2000-NMCA-081, at

¶¶ 11-12, 129 N.M. 529, 10 P.3d 835).  New Mexico's statutorily created royalty interests,

however, did not specify that net proceeds should be calculated at the well, but rather stated that

net proceeds should be calculated "from the sale of such gas in the field."  2013-NMSC-009, ¶

19, 299 P.3d 844 (secondary quotations omitted).  The "key question" before the Supreme Court,

therefore, was "whether a lease which provides for royalty payable upon 'net proceeds . . . in the

field' or 'from the sale of gas from each gas well' compels a different royalty calculation than a

lease which provides for 'net proceeds . . . at the well.'"  2013-NMSC-009, ¶ 19, 299 P.3d 844.

The Supreme Court of New Mexico stated that, although lessees must bear the costs incurred in

producing oil and gas product, "absent an express contractual provision to the contrary . . . .

costs incurred subsequent to production are considered post-production costs and are generally

deducted from the sale of the product regardless of where the sale takes place."  2013-NMSC-

009, ¶ 24, 299 P.3d 844 (citing Bice v. Petro-Hung LLC, 2009-ND 124, at ¶ 19, 768 N.W. 2d

496, 502).  The Supreme Court of New Mexico therefore affirmed the state district court's ruling

that the net proceeds term unambiguously allowed ConocoPhillips to deduct "from their gross

sales price any post-production costs they reasonably and necessarily incur in selling the gas," regardless of where the sale gas occurred.  2013-NMSC-009, ¶¶ 21, 69, 299 P.3d 844.

New Mexico also alleged that ConocoPhillips' calculation of royalty payments breached the implied covenant to market.  New Mexico asserted that the implied covenant to market required ConocoPhillips to "place the gas in a marketable condition and requires that the expenses incurred in obtaining a marketable product . . . be borne by Lessees."  2012 WL 3711550, at *16.  The Supreme Court of New Mexico determined, however, that it need not reach the issue whether the marketable condition rule is incorporated into the implied covenant to market.  The Supreme Court of New Mexico explained that whether the marketable condition rule applies is New Mexico was not ripe for review, because legislative policy decisions inform the extent of post-production costs that ConocoPhillips may deduct from New Mexico's royalty payments, but the lower court had not yet reached a decision of the merits on that issue.  See 2012 WL 3711550, at *17.[7]

---

[7] Although the Court is bound by the Tenth Circuit's interpretation of New Mexico law, the Court is not convinced that the Elliott Indus.' plaintiffs' "conception of the implied duty to market finds no support within New Mexico case law."  407 F.3d at 1114.  From the time that the Tenth Circuit made this statement in Elliott Indus., at least three New Mexico district courts have found that, "under the implied duty to market, the marketable condition rule applies in New Mexico."  Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 14, 147 N.M. 157, 218 P.3d 75 (citing Davis v. Devon Energy Corp., 2008-NMCERT-003, 143 N.M. 682, 180 P.3d 1181; Ideal v. BP Am. Prod. Co., 2008-NMCERT-003, 143 N.M. 683, 180 P.3d 1182; Smith Family, L.L.C. v. ConocoPhillips Co., 2008-NMCERT-003, 143 N.M. 683, 180 P.3d 1182).  In Davis v. Devon Energy Corp., 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75 the Supreme Court of New Mexico did not address the existence of the marketable condition rule, because it found that the matter was "not ripe for review at this time," as the New Mexico state district courts had left open questions regarding the scope of the rule.  2009-NMSC-048, ¶ 15, 147 N.M. 157, 218 P.3d 75.

The Supreme Court of New Mexico made a similar statement in <u>ConocoPhillips Co. v. Lyons.</u> <u>See</u> 2013-NMSC-009, ¶ 64, 299 P.3d 844 ("As we indicated in <u>Davis</u>, whether the marketable condition rule applies in New Mexico is not yet ripe for review."). These pronouncements from the Supreme Court of New Mexico indicate, far from precluding the existence of the marketable condition rule as a matter of law within the state, that the Supreme Court of New Mexico considers the issue undetermined and, moreover, intends to address its existence when the record before the Supreme Court of New Mexico fully presents the issue.

  The Court believes that, if and when the Supreme Court of New Mexico determines that the existence of the marketable condition rule is ripe for review, it will find that the rule is included in oil-and-gas contracts as part of the implied duty to market. Colorado, Wyoming, Kansas, and Oklahoma have all adopted a version of the marketable condition rule. The Supreme Court of Colorado announced its adoption of the marketable condition rule in <u>Garman v. Conoco, Inc.</u>, P.2d 652 (Colo. 1994). The Supreme Court of Colorado held that, "absent an assignment provision to the contrary, overriding royalty interest owners are not obligated to bear any share of the post-production expenses . . . undertaken to transform raw gas produced at the surface into a marketable product." 886 P.2d at 661. The Supreme Court of Colorado noted that, although an oil-and-gas lease is "entered into for the mutual benefit of the parties, not all parties participate equally in lease development decisions." 886 P.2d at 657. Interest owners, whether of royalty or overriding royalty interests, must defer to the lessees "where and when to drill, the formations to be tested and ultimately whether to complete a well and establish production." 886 P.2d at 675. The Supreme Court of Colorado was also persuaded by its neighboring states' -- Wyoming, Kansas, and Oklahoma -- and the federal government's, requirement that lessees place gas in a marketable condition at no cost to the lessor. <u>See</u> 886 P.2d at 658 (citing 30 C.F.R. § 206.153(i); Wyo. Stat. § 30-5-304(a)(vi) (1994 Supp.); <u>Wood v. TXO Prod. Corp.</u>, 854 P.2d 880, 882 (Okla. 1992); <u>Gilmore v. Superior Oil Co.</u>, 388 P.2d 602, 606 (1964)). The Colorado Supreme Court explained that the marketable condition rule logically followed from a lessee's duty to effectuate the terms of a lease; the Supreme Court of Colorado reasoned that, just as the "purpose of an oil and gas lease could hardly be effected if the implied covenant to drill obligated the lessor to pay for his proportionate share of drilling costs," the purpose of a lease would be thwarted if lessors bore the cost of making a product marketable. 886 P.2d at 659. The Supreme Court of Colorado rejected an argument from oil-and-gas producers that industry practice dictates that lessees and lessors bear proportionately post-production costs necessary to render gas marketable. The Supreme Court of Colorado explained that, while other oil-and-gas producers may be aware of industry custom and factor that custom into oil-and-gas agreements, "[o]ften, however, executing an oil and gas lease, or assigning a federal lease won under the previously existing federal lottery system is the extent of a party's contact with the oil industry." 886 P.2d at 660. The Supreme Court of Colorado further emphasized that the marketable condition rule is consistent with the bargaining power of lessees

and lessors: "The payment of royalties is controlled by lessees, and lessors have no ready means of ascertaining current market value other than to take lessees' word for it."  886 P.2d at 660.

The Supreme Court of Kansas based its formulation of the marketable condition rule on Colorado's.  In Kansas, the rule currently requires a lessee of an oil-and-gas lease to "bear the entire expense of producing the gas at the wellhead pursuant to the terms of the oil and gas lease. Additionally, the lessee must bear 'the entire cost of putting the gas in condition to be sold pursuant to the court-made 'marketable condition rule.'"  Coulter v. Anadarko Petroleum Corp., 296 P.3d 289, 306 (Kan. 2013)(citing Sternberger v. Marathon Oil Co., 894 P.2d 788 (Kan. 1995)).  The Supreme Court of Kansas adopted a version of the marketable condition rule in Sternberger v. Marathon Oil Co. that allowed a lessee to share with a royalty owner the costs of transporting a marketable product to a point of sale and "to enhance the value of the gas stream, e.g., the processing costs to extract a saleable component such as helium."  292 P.3d at 306.  The Supreme Court of Kansas explained that, in Kansas, ambiguities in oil-and-gas leases must be construed against the lessee, but found that the oil-and-gas leases at issue were not ambiguous. See 894 P.2d at 794.  Rather, the Supreme Court of Kansas' adoption of the marketable condition rule was based upon the lessee's duty to "produce a marketable product," which requires "the lessee alone [to] bear[] the expense in making the product marketable."  894 P.2d at 799.

Kansas' interpretation of the marketable condition rule which allows lessees to share the cost of transportation to the market with lessors may be vulnerable to attack.  The Supreme Court of Kansas recognized, in Coulter v. Anadarko Petroleum Corp., that the Supreme Court of Colorado's decision in Rogers v. Waterman Farm Co., 29 P.3d 887, 896-902 (Colo. 2001), "clarified that . . . .  'marketability' includes both the physical condition of the gas and the location of the gas, i.e., the commercial marketplace," and, therefore, whether oil-and-gas lessees in Kansas may share with lessors the cost of transporting marketable products to a market "may be questionable."  Coulter v. Anadarko Petroleum Corp., 296 P.3d at 306 (quoting Rogers v. Westerman Farm Co., 29 P.3d at 902, 903).  In Rogers v. Westerman Farm Co., the Supreme Court of Colorado held that, under the marketable condition rule, "the expense of getting the product to a marketable condition and location are born by the lessee."  29 P.3d at 906.  The Supreme Court of Colorado explained that, whether gas is marketable is a question of fact, and requires evidence, first, that gas is "in the physical condition where it is acceptable to be bought and sold in a commercial marketplace," and, second, the gas must be in a location "that is, the commercial marketplace, to determine whether the gas is commercially saleable in the oil-and-gas marketplace."  29 P.3d at 905.  The Supreme Court of Colorado noted that "'a royalty clause should be construed in its entirety and against the party who offered it, and in light of the fact that the royalty clause is the means by which the lessor receives the primary consideration for a productive lease.'"  29 P.3d at 898 (quoting Owen L. Anderson, Royalty Valuation: Should Royalty Obligations be Determined Intrinsically, Theoretically, or Realistically, Part 2 (Should Courts Contemplates the Forest or Dissect Each Tree?), 37 Nat. Resources J. 611, 636 (1997)).

The Supreme Court of Colorado reasoned that gas is not marketable until it is ready to be bought in a marketplace by a willing purchaser, and, accordingly, a lessee has not met its implied duty to market until a gas is transported to a marketplace, if transportation is necessary to reach purchasers.  See 29 P.3d at 904-06.

Similarly, the Supreme Court of Oklahoma's adoption of the marketable condition rule is based upon the bargaining power of oil-and-gas lessees and lessors.  In Wood v. TXO Prod. Corp., the Supreme Court of Oklahoma explained that "[p]art of the mineral owner's decision whether to lease or to become a working interest owner is based upon the costs involved," and, when an interest owner agrees to a relinquish operating rights and lease a well in exchange for a royalty interest, as a lessor, the interest owner has no power to control post-production costs.  854 P.2d at 882-83.  The Supreme Court of Oklahoma reasoned that, if lessees, oil-and-gas producers, were allowed to share production and marketing costs with royalty owners, "royalty owners would be sharing the burdens of working interest ownership without the attendant rights," including the greater share of proceeds which oil-and-gas producing lessees enjoy.  854 P.2d at 883.  Accordingly, the Supreme Court of Oklahoma held that "in Oklahoma the lessee's duty to market involves obtaining a marketable product."  854 P.2d at 883.

Texas, on the other hand, has not adopted the marketable condition rule, but, rather, interprets oil-and-gas leases more strictly in accordance with their terms.  The first case in Texas to discuss a marketable condition rule was Danciger Oil & Refineries v. Hamill Drilling Co., in which the Supreme Court of Texas interpreted a royalty clause which stated that payments were to be made out of "all the oil, gas, casinghead gas, and other minerals produced, saved and marketed at the prevailing market price paid by major companies in the Gulf Coastal area from the properties."  171 S.W. 2d at 322.  The Supreme Court of Texas interpreted the lease as requiring the lessee to pay royalties for oil-and-gas "produced, saved and marketed," but not to "provide a market for all the products produced."  171 S.W. 2d at 323.  The Supreme Court of Texas concluded that the language did not indicate that the gas produced from the subject wells would be "so mixed with other products as not to be 'gas' of the kind contemplated" and also concluded that the lessee's operating expenses, which lease required the lessees to bear, did not include expenses "of processing the named product into some other product after it has been produced."  171 S.W. 2d at 323.  That there was no market for the gas in its unprocessed form in the vicinity of the wells did not sway the Supreme Court of Texas' ruling.  "The mere fact that there was then no market in that vicinity for the product then being produced from the lease, is not alone sufficient to justify us in overturning the plain, certain, and unambiguous terms of the contract."  171 S.W. 2d at 323.  The Supreme Court of Texas concluded that the lessor was "bound to accept payments out of the gas as it was then being produced from the wells, and is not entitled to have the gas refined into some other commodity."  171 S.W. 2d at 323.  The Supreme Court's decision in Danciger Oil & Refineries v. Hamill Drilling Co. has evolved into a rule in Texas courts: "Since the early history of oil and gas litigation, the courts have held that covenants are implied when an oil and gas lease fails to express the lessee's obligation to

- 91 -

develop and protect the lease."  Amoco Prod. Co. v. Alexander, 622 S.W. 2d 563, 567 (Tex. 1981).  Accordingly, although Texas recognizes an implied duty to reasonably market oil and gas as part of an implied covenant of management and administration, which may be included in an oil-and-gas lease, the implied duty to market does not override language which specifies a particular payment method.  For example, the Supreme Court of Texas has held that a gas lease which provides for payments to be made based upon the gas' "market price" is not breached when a lessee contracts to sell the gas at a price above the prevailing market cost, reaping profits beyond that which it could obtain in an open market, but calculates and pays royalties based upon the lower, prevailing, market price for the gas, because the language of the lease provides for royalty payments in accordance with "market price."  Yzaguirre v. KCS Resources, Inc., 53 S.W. 368, 370, 373-75 (Tex. 2001)("Depending on future market behavior, this may be financially beneficial to the lessor . . . or it may be less advantageous, as here.  In either event, the parties have received the benefit of their bargain.").

The Court believes that, when the Supreme Court of New Mexico determines the existence of the marketable condition rule is ripe for review, it will find the reasoning of Colorado, Kansas, Oklahoma, and Wyoming more persuasive than that of Texas.  Like Kansas and Colorado, which construe oil-and-gas leases against the lessees, the Supreme Court of New Mexico has established a "rule that an oil and gas lease is to be construed most strongly against the lessee."  Greer v. Salmon, 82 N.M. 245, 250, 479 P.2d 294, 299 (1970).  This canon of construction is consistent with the duties a lease imposes on a lessee, such as the duty of "achiev[ing] the primary purpose of the lease, to explore, develop and produce."  82 N.M. at 250, 479 P.2d at 299.  Colorado and Kansas have recognized that, once a lessor assigns its working and operating interests to a lessee, the lessee possesses the ability to evaluate and choose which post-production measures are necessary to render a gas marketable.  Based upon the lessee's ability to assess post-production measures, Kansas and Colorado have determined that the lessee, and not the lessor, should bear the cost of those measures, as lessors generally will have "'no ready means of ascertaining'" the cost-benefit of a post-production measure "'other than to take lessees' word for it.'"  Garman v. Conoco, 886 P.2d at 660 (quoting Piney Woods Cnty. Life Sch. v. Shell Oil Co., 726 F.2d 225, 240 (5th Cir. 1984)).

A critique of the marketable condition rule is that it necessarily turns on questions of fact, which the Supreme Court of Colorado recognized in Rogers v. Westerman Farm Co., because, whether a buyer is willing to purchase a product, and at what point, will vary from case to case.  See Rogers v. Westerman Farm Co., 29 P.3d at 903-06; Scott Lansdown, The Marketable Condition Rule 44 S. Tex. L. Rev. 667, 702-04 (Summer 2003)("The strongest argument against the marketable condition rule is that . . . if the rule is adopted, oil and gas lessees will be faced with an endless wave of expensive, burdensome and wasteful litigation . . . . [because of] [t]he failure of . . . any real criteria for marketability.").  The Court does not believe that the factual questions necessary to determining marketability are fatal to the marketable condition rule.  The cases discussed herein indicate that, in certain locations and with certain products, no willing

- 92 -

2.     **The Proceeds Payment Act.**

buyer may be found until an oil or gas product is either transformed into a different condition, or transported to a different location.  At a minimum, the burden which the marketable condition rule imposes is that a market-ready product is able to reach the hands of a willing buyer, which is a burden New Mexico has already determined lessees should bear.  Cf. Libby v. DeBaca, 51 N.M. at 99, 179 P.2d at 265 (holding that the implied covenant to market requires a lessee to construct a plant for converting gas into dry ice at  his own cost, because the gas could be marketed only in dry ice form).  The Court believes that the Supreme Court of New Mexico would find that, consistent with its holding that "pronouncement without disposition of the product is futile," the implied covenant to market includes a duty to render products marketable at the lessee's, and not lessor's, expense.  Darr v. Eldridge, 66 N.M. at 263, 346 P.2d at 1044. While the situation which allows a buyer to purchase an oil or gas product will vary from case to case, the requirement that a royalty interest owner does not pay for the meeting of product and buyer is not onerous, and will, logically, be satisfied whenever a lessee realizes the goal of a lease: receiving a profit on oil-and-gas products.  This finding leads to the second critique of the marketable condition rule: requiring a lessee to bear the burden of post-production costs is pointless, because the marketable condition rule will incentivize lessees to find purchasers that will purchase unrefined products.  Unrefined or unprocessed oil and gas will necessarily sell at a lower cost, because purchasers of the unprocessed products will factor into the price their costs to process the oil or gas.  This critique of the marketable condition rule concludes, therefore, that payments will be calculated on oil-and-gas profits less production costs, regardless whether the lessee bears those costs.  In theory, therefore, the marketable condition rule may not increase royalty owners' profits beyond their present state, as the cost of production will be taken from royalty payments in either transaction.   The only change is in the entity deducting post-production costs.  See Lansdown, supra, at 705-07.  The Court does not believe that the Supreme Court of New Mexico will find this critique persuasive.  The Court believes that the Supreme Court of New Mexico will conclude that, while it is true, in either situation, that post-production costs must be borne somewhere, the marketable condition rule, nonetheless, avoids an inefficient result.  If oil-and-gas lessees may pass the cost onto lessors, the lessees lose the motivation for purchasing the most cost-efficient post-production measures.  Oil-and-gas producers, as lessees, may attempt to pass those costs downstream to purchasers, but, in that instance, the purchaser will be assessing its own costs, and will, again, be incentivized to take on only cost-efficient post-production measures.  See Libby v. DeBaca, 51 N.M. at 99, 179 P.2d at 265.  In sum, the marketable condition rule incentivizes the entities with the most knowledge and ability to produce oil-and-gas in the most cost-effective manner.  Without the marketable condition rule, oil-and-gas producers, as lessees, may pass post-production costs onto lessor-royalty-owners, who lack the knowledge and ability to evaluate and choose the best option.  For these reasons, the Court believes that the New Mexico Supreme Court will find that, included within the implied duty to market in New Mexico, is the marketable condition rule.

Initially, the Proceeds Payment Act is indisputably only a derivative remedy that the New Mexico Legislature provided to oil and gas owners.  It will not lie absent demonstration of lessor/payors' breach of an underlying agreement with, or duty to, an interest owner.  See Elliott Indus., 407 F.3d at 1120 ("[I]n order to maintain a Payment Act claim, Elliott must allege a potentially successful claim for underpayment of royalties or theory of liability showing that it is 'legally entitled to such payments.'"  (quoting N.M.S.A. 1978, § 70-10-3).

The Proceeds Payment Act provides a specific time frame in which lessees on oil-and-gas wells must pay royalty interest owners for proceeds the lessees receive:

> The oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in New Mexico shall be paid to all persons legally entitled to such payments, commencing not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production unless other periods or arrangements are provided for in a valid contract with the person entitled to such proceeds.

N.M.S.A. 1978, § 70-10-3.  Payors who fail to make payments within § 70-10-3's required time frame incur eighteen-percent interest on the "unpaid balance due," unless one of the four exceptions in N.M.S.A. 1978, § 70-10-5 applies:

> A. the payor fails to make payment in good-faith reliance upon a title opinion by a licensed New Mexico attorney making objection to the lack of good and marketable title of record in the party claiming entitlement to payment and furnishes a copy thereof to such party for curative action required thereby;

> B. the payor receives information that in his good-faith judgment brings into question the entitlement of the person claiming the right to the payment to receive the payment or that has rendered the marketable title of record unmarketable or that may expose the payor to the risk of multiple liability or liability to third parties if the payment is made;

- 94 -

C. the total amount of oil and gas proceeds in the possession of the payor owed to the owner of the oil and gas proceeds making claim to payment is less than one hundred dollars ($100) at the end of any month; or

D. the party entitled to payment has failed or refused to execute a reasonable division or transfer order acknowledging the proper interest to which he claims to be entitled and setting forth a mailing address to which payment may be directed.

N.M.S.A. 1978, § 70-10-5.   Additionally, a payor does not incur eighteen-percent interest on unpaid balances if the payor, "the party who undertakes to distribute oil and gas proceeds to the parties entitled thereto," N.M.S.A. 1978, § 70-10-2, has not received from the operator or lessee arranging for the sale of oil and gas "the name, the address, and the percentage of interest of each person to whom payment is to be made, as well as proof of marketable title" to the oil and gas to be sold, N.M.S.A. 1978, § 70-10-3.1.   See N.M.S.A. 1978, § 70-10-5 (providing that a payor does not incur the eighteen-percent penalty on unpaid balances if payments are made in accordance with N.M.S.A. 1978, § 70-10-3's time period and the payor "has been furnished with the information required by Section 70-10-3.1, NMSA 1978 . . . .").

## NEW MEXICO LAW REGARDING BREACH-OF-CONTRACT CLAIMS

A contract is a legally enforceable promise that must consist of an offer, an acceptance, consideration, and mutual assent.   See N.M.R.A., Civ. UJI 13-801.   A person may breach a contract by failing to perform a contractual obligation when the performance is required, unless that performance is otherwise excused.    See N.M.R.A., Civ. UJI 13-822.    Incomplete performance is a breach of contract.   See Cochrell v. Hiatt, 97 N.M. 256, 258-59, 638 P.2d 1101, 1103-04 (Ct. App. 1981)(holding that, where the contract called for the roof to be restored to a

"healthy" state and guaranteed the work for twenty-five years, because the roof leaked within the twenty-five year period, the defendant's performance was incomplete, and the defendant was in breach of the contract).  Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages."  Abreu v. N.M. Children, Youth and Families Dep't, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)(citing Camino Real Mobile Home Park P'ship v. Wolfe, 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995)).

> [A] complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct. App. 1978).

Applying these principles in Armijo v. N.M. Dep't of Transp., the Court found that a plaintiffs' allegations failed to state a claim for breach of contract.  See No. CIV. 08-0336 JB/ACT, 2009 WL 1329192 (D.N.M. Apr. 6, 2009)(Browning, J.).  In support of the breach-of-contract claim, the plaintiff asserted that "the Department would follow state employment policies and procedure, and that the Department terminated him in breach of those policies without just cause."  Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *7.  The Court noted that the plaintiff did not "indicate what contractual provisions or employment policies the Department breached," and did not say "to what his employment contract entitles him or of what the Department deprived him."  Armijo v. N.M. Dep't of Transp., 2009 WL 1329192, at *7.  The Court found that there was "not enough to determine whether, if taken as true, the Complaint's

allegations would support claims for breach of contract." <u>Armijo v. N.M. Dep't of Transp.</u>, 2009 WL 1329192, at *8.  On the other hand, the Court has previously determined that a pro se plaintiff sufficiently alleged that his counsel breached a contract for legal representation by alleging that his former counsel promised to represent the plaintiff at forfeiture proceedings, that the plaintiff paid the counsel, and that the counsel failed to represent the plaintiff.  <u>See</u> <u>Archuleta v. City of Roswell</u>, No. CIV 10-1224 JB/RHS, 2012 WL 4950324, at **16-17 (D.N.M. Sept. 30, 2012)(Browning, J.).

Additionally, in spite of the general bar on punitive damages for breach-of-contract cases, the Supreme Court of New Mexico has recognized that punitive damages may be recoverable under some circumstances for a breach of contract.  As the Supreme Court of New Mexico stated in <u>Romero v. Mervyn's</u>, 109 N.M. 249, 784 P.2d 991 (1989): "Our previous cases clearly establish that, in contract cases not involving insurance, punitive damages may be recovered for breach of contract when the defendant's conduct was malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  109 N.M. at 255, 784 P.2d at 998.  Punitive damages are not available when a breaching party's conduct was "solely gross negligence. . . .  In addition to, or in lieu of, such negligence there must be evidence of an 'evil motive' or a 'culpable mental state.'"  <u>Paiz v. State Farm Fire & Cas. Co.</u>, 118 N.M. 208, 211, 880 P.2d 300, 308 (1994).  The Supreme Court of New Mexico has defined "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to

avoid the harm."  Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308

(secondary quotations and citation omitted).  A defendant does not act with reckless disregard to

a plaintiff's rights merely by failing "to exercise even slight care," absent the requisite "culpable

or evil state of mind."  Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308

(secondary quotations and citation omitted).  The New Mexico Civil Jury Instructions define the

elements necessary for an award of punitive damages for a breach of contract as follows:

> If you find that _____ (*name of party making claim for punitive damages*)
> should recover compensation for damages, and if you further find that the conduct
> of _____ (*name of party whose conduct gives rise to a claim for punitive
> damages*) was [malicious], [reckless], [wanton], [oppressive], or [fraudulent],
> then        you        may        award        punitive        damages.

N.M.R.A., Civ. UJI 13-861.

### RELEVANT NEW MEXICO LAW REGARDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

"Whether express or not, every contract imposes upon the parties a duty of good faith and

fair dealing in its performance and enforcement."  Watson Truck & Supply Co., Inc. v. Males,

111 N.M. 57, 60, 801 P.2d 639, 642 (1990)(citations omitted).  "Broadly stated, the covenant

requires that neither party do anything which will deprive the other of the benefits of the

agreement."  Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 (internal

quotation marks omitted).  "The breach of this covenant requires a showing of bad faith or that

one party wrongfully and intentionally used the contract to the detriment of the other party."

Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 114 N.M. 449, 188 P.2d 1200

(secondary quotations omitted).  The Supreme Court of New Mexico has expressed reluctance,

- 98 -

however, to use the covenant of good faith and fair dealing "under circumstances where . . . it may be argued that from the covenant there is to be implied in fact a term or condition necessary to effect the purpose of a contract." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642.

> "Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties. Under the implied covenant of good faith and fair dealing, courts can award damages against a party to a contract whose actions undercut another party's rights or benefits under the contract. Our Supreme Court has nevertheless refused to apply this implied covenant to override an express at-will termination provision in an integrated, written contract."

Elliott Indus., 407 F.3d at 1114-15 (quoting Kropinak v. ARA Health Servs., Inc., 131 N.M. 128, 33 P.3d 679, 681 (Ct. App. 2001))(secondary citations omitted).

New Mexico has recognized that a cause of action for breach of the covenant of good faith and fair dealing sounds in contract. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 439, 872 P.2d 852, 857 (1994). The Supreme Court of New Mexico also explained that tort recovery for breach of the covenant of good faith and fair dealing would be permissible only where a special relationship existed, such as between an insurer and its insured. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857. The "relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position." Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857 (citations omitted)(internal quotation marks omitted). Similarly, the Court of Appeals of New Mexico held that "[t]he claim for breach of good faith and fair dealing sounds in

contract, at least when no 'special relationship' such as that between an insured and insurer exists." Heimann v. Kinder-Morgan CO2 Co., 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006).

The Supreme Court of New Mexico has indicated that "the duty to not act in bad faith or deal unfairly" imposed by an implied covenant of good faith and fear dealing within a contract "becomes part of the contract and the remedy for its breach is on the contract itself." Bourgeous v. Horizon Healthcare Corp., 117 N .M. at 439, 872 P.2d at 857 (discussing an Arizona case and distinguishing this measure of damages from tort damages that are available for breach of this covenant in the insurance context). In the insurance context, however, a plaintiff can recover tort damages for breach of this implied covenant. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.

The Supreme Court of New Mexico has noted that it does "not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship." Melnick v. State Farm Mut. Auto. Ins. Co., 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988). This limitation is because "there is no contract of employment upon which the law can impose the stated duty to exercise good faith and fair dealing." Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987)(emphasis in original).

**RELEVANT NEW MEXICO LAW REGARDING THE INTERRELATION OF TORT, QUASI-CONTRACT, AND CONTRACT CLAIMS**

In Elliott Indus., the Tenth Circuit held that, under New Mexico law, "the existence of any tort liability cannot conflict with contractual duties between the parties." 407 F.3d at 1116

(citing Isler v. Tex. Oil and Gas Corp., and Rio General Jewelers Supply, Inc. v. Data Gen. Corp., 101 N.M. 798, 689 P.2d 1269 (1984)).  See Hess Oil Virgin Islands v. UOP, Inc., 861 F.2d 1197, 1200 (10th Cir. 1988)(applying Illinois and Virgin Islands law)(explaining that Isler v. Tex. Oil and Gas Corp. holds that "no tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract").  In Isler v. Tex. Oil and Gas Corp., the Tenth Circuit reversed a judgment in favor of plaintiffs alleging that a defendant failed to make rental payments despite a provision in the plaintiffs' leases that the defendant had no responsibility to the plaintiffs if it failed to make rental payments.  See 749 F.2d at 22.  A jury returned a verdict that the defendant did not breach its duties under the leases, but that it was "nonetheless liable in tort for damages caused by its negligence."  749 F.2d at 22.  The Tenth Circuit noted that the facts alleged in the plaintiffs' tort claim were "precisely the same" as those in the plaintiffs' breach-of-contract claim.  749 F.2d at 24.  The Tenth Circuit held that, because the parties had chosen to define their rights and duties regarding rental payments in contract, the parties' leases preclude "any extracontractual duty regarding such payments."  749 F.2d at 24. The Tenth Circuit has explained that this contractual preclusion of tort claims occurs "because parties should 'be bound by the terms of written agreements to which they freely commit themselves.'"  Elliott Indus., 407 F.3d at 1116 (quoting Rio Grande Jewelers Supply, Inc. v. Data General Corp., 101 N.M. at 800, 689 P.2d at 1271).

Additionally, the Tenth Circuit has explained that the "hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the

relations if the parties with respect to the disputed issue." Elliott Indus., 407 F.3d at 1117.  In

Elliott Indus., for example, the Tenth Circuit held that the plaintiffs' leases with ConocoPhillips

that defined ConocoPhillips' royalty obligations preluded the plaintiffs' claims that

ConocoPhillips' royalty payment practices unjustly enriched it at the plaintiffs' expense.  The

plaintiffs contended that the leases did not preclude their claim for unjust enrichment, because,

the plaintiffs alleged, the leases did not contain an express contractual provision covering

ConocoPhillips' deduction of a thirty-nine percent processing fee from the plaintiffs' royalty

payments.  The Tenth Circuit reasoned, however, that although "the contracts may not delineate

any specific deductions," the leases "control how royalties are to be paid."  407 F.3d at 1117.

The Tenth Circuit held, therefore, that the district court properly granted ConocoPhillips

summary judgment on the plaintiffs' unjust enrichment claim, because "the claim for

underpayment of royalties is grounded in the parties' contractual relationships."  407 F.3d at

1117.[8]

---

[8] The Court notes that the Court of Appeals of New Mexico has held that a "contractual relationship . . . does not foreclose a claim for unjust enrichment."  Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶¶ 92-94, 276 P.2d 252, cert granted, 2012-NMCERT-003, 293 P.3d 184.  As this is a case from the Court of Appeals of New Mexico, and, at least on its face, contradicts the Tenth Circuit's express interpretation of New Mexico law, the Court is not bound to apply this holding, and, rather is bound by the Tenth Circuit's ruling in Elliott Indus. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Additionally, the Court believes that the facts in Starko, Inc. v. Presbyterian Health Plan, Inc., are distinguishable from those before the Tenth Circuit in Elliott Indus.  In Starko, Inc. v. Presbyterian Health Plan Inc., pharmacists alleged that managed care organizations, with which the pharmacists contracted, were underpaying the pharmacists.  See 2012-NMCA-053, ¶¶ 1-17, 276 P.3d 252.  A New Mexico statute, N.M.S.A. 1978, § 27-2-16(B) guaranteed that pharmacists would be paid certain rates; the pharmacists alleged that the managed care organizations were receiving those rates from the

## LAW REGARDING THE DECLARATORY JUDGMENT ACT

Section 2201 of Title 28 of the United States Code provides that:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.   Any such declaration shall have the force and effect of a final judgment    or    decree    and    shall    be    reviewable    as    such.

28 U.S.C. § 2201(a).  The Supreme Court, in Maryland Cas. Co. v. Pac. Coal & Oil Co., 312

U.S. 270 (1941), announced the test for determining whether, as contemplated by the

Declaratory Judgment Act, an actual controversy exists: "Basically, the question in each case is

whether . . . there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  312 U.S. at

---

Human Services Department, but not passing along to the pharmacists the full amount which the statute guaranteed to them.  The pharmacists brought claims for breach of contract and unjust enrichment.  See 2012-NMCA-053, ¶¶ 1-17, 90-94, 276 P.3d 252.  The pharmacists' contracts provided for them to receive certain payments from the managed care organizations in accordance with Section 27-2-16(B).  Accordingly, a statute, and not a contract, created the pharmacists' right to the payments, although the managed care organizations may have breached both their contractual duties -- to pay the pharmacists according to the statute -- and violated New Mexico law.  See 2012-NMCA-053, ¶¶ 1-17, 90-94, 276 P.3d 252.  In Elliott Indus., on the other hand, the plaintiffs' right to royalty payments arose because of their contracts with the oil-and-gas producers, and the oil-and-gas producers, rather than a third-party, were responsible for providing the funds for the plaintiffs' royalties.  See 407 F.3d at 1117.  Therefore, while the Court is inclined to believe that the Court of Appeals of New Mexico correctly states the law of New Mexico, and that the Supreme Court of New Mexico would agree if the question is presented to it, the Court is bound by the Tenth Circuit's law in Elliott Indus.

- 103 -

273.  Accord United States v. Fisher-Otis, Inc., 496 F.2d 1146, 1151 (10th Cir. 1974).  "'A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply proclaim liability from a past act.'"  Copar Pumice Co., Inc. v. Morris, No. CIV 07-0079 JB/ACT, 2009 WL 5201799, at *17 (D.N.M. Oct. 23, 2009)(Browning, J.)(quoting Lawrence v. Kuenhold, 271 F. App'x 763, 766 (10th Cir. 2008), aff'd, 639 F.3d 1025 (10th Cir. 2011)).  See Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1266 (10th Cir.2004)(McConnell, J., concurring)("[A] declaratory judgment action involving past conduct that will not recur is not justiciable.").

The Tenth Circuit has stated that a district court should consider the following factors when deciding whether to entertain a request for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).  Additionally, "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57.  Thus, "declaratory relief is alternative or cumulative and not exclusive or extraordinary."  Fed. R. Civ. P. 57 advisory committee's note (1937 adoption).

## ANALYSIS

The Court will grant in part and deny in part the CP MTD and WPX MTD. The Plaintiffs have sufficiently alleged that they are in a contractual relationship with the Defendants and that the Defendants' conduct breaches their royalty payment obligations under the parties leases. The Court will, therefore, deny the Defendants' request to dismiss the Plaintiffs' first cause of action. Additionally, the Plaintiffs have sufficiently alleged that the Defendants' breach was done in bad faith, a claim for which they may recover punitive damages. The Court will not, therefore, dismiss the Plaintiffs' fifth cause of action, because the Plaintiffs may bring a claim alleging bad-faith breach of contract as part of the parties' contractual relationship. The Court will dismiss the Plaintiffs' second cause of action in part. The Court determines that the Plaintiffs have sufficiently alleged that the Defendants' royalty payment and reporting practices breach the Defendants' duty, in contract, to effectuate the terms of the leases in good faith and fair dealing. The Court will not dismiss the Plaintiffs' second cause of action alleging a breach of the duty of good faith and fair dealing, in contract. On the other hand, the Plaintiffs may not bring a stand-alone claim in tort alleging a breach of a duty that the leases cover; therefore, to the extent that the Defendants' payment and reporting practices alleged in the second cause of action do not violate a duty of good faith and fair dealing in effectuating the terms of the leases, the Plaintiffs' second cause of action fails to state a claim for relief. The Plaintiffs have failed to demonstrate that the Defendants owe the Plaintiffs a fiduciary duty independent of the rights and obligations outlined in the leases.

The Court will dismiss the Plaintiffs' third cause of action for the breach of the duty to market hydrocarbons. The Plaintiffs allege that the Defendants breached the duty to market hydrocarbons by passing the cost of rendering the hydrocarbons marketable on to the Plaintiffs -- a violation of the marketable condition rule -- and by calculating the Plaintiffs' royalty payments based on the Defendants' sale of hydrocarbons to affiliated intermediaries. The Plaintiffs specifically allege that this conduct violates the terms of the leases and New Mexico law. New Mexico law, as the Tenth Circuit last construed it, does not recognize the marketable condition rule as part of the implied duty to market. Additionally, the Tenth Circuit's interpretation of the implied duty to market under New Mexico law does not make the Defendants' alleged sale of hydrocarbons to affiliated intermediaries or deduction of post-production costs from the Plaintiffs' royalty payments unlawful. The Court, therefore, will dismiss the Plaintiffs' third cause of action.

The Plaintiffs may proceed on their fourth cause of action, alleging a violation of the Proceeds Payment Act. The statute's plain language covers the Plaintiffs' claims for royalty underpayment. Additionally, the plain language does not require the Plaintiffs to provide the Defendants with a division order before their rights under the Proceeds Payment Act are initiated. On the other hand, to the extent the Plaintiffs are alleging that the Defendants' payment practices violates Colo. Rev. Stat. § 34-60-118.5, that statute is not within the Court's jurisdiction to enforce. The Court will not, therefore, dismiss the Plaintiffs' fourth cause of

action under the Proceeds Payment Act, but will dismiss the Plaintiffs' allegations under Colo.
Rev. Stat. § 34-60-118.5.

The Plaintiffs may not proceed in tort or equity because of the Defendants' breach of duties that the parties' leases impose on them. The leases, as the Plaintiffs allege, govern the Defendants' royalty payment obligations. The Plaintiffs may not, therefore, allege that the same actions that breach the terms of the leases constitute unjust enrichment and conversion. The Court, therefore, will dismiss the Plaintiffs' sixth cause of action for unjust enrichment and their seventh cause of action for conversion. Neither may the Court award the Plaintiffs an injunction against the Defendants, because the Plaintiffs allege only that the Defendants' conduct will cause them monetary harm, and monetary harm is not irreparable. On the other hand, the Court may award the Plaintiffs a declaratory judgment declaring the parties' obligations under the leases, because the Court may award a declaratory judgment notwithstanding that a contract remedy is another available remedy.

Finally, the Court will not apply the Supreme Court's holdings in Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly to dismiss the Plaintiffs' class-action allegations. First, the Plaintiffs' class-action allegations do not purport to state a claim for relief, but, rather, put the parties and the Court on notice of the Plaintiffs' chosen procedural method for litigating this case. The Defendants have not provided the Court with, and the Court has not found, binding precedent that requires the Court to apply Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly to the Plaintiffs' class-action allegations. Second, even if the Court were to apply those holdings to

- 107 -

the Plaintiffs' class-action allegations, the Plaintiffs' assertion that they may bring this case as a class action would, at this stage, succeed.

I.    **THE PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THE DEFENDANTS ARE IN BREACH OF THE PARTIES' LEASES.**

The Plaintiffs assert that the Defendants have breached the terms of their leases by failing to credit their royalty payments with the proceeds which the Defendants receive from the sale of drip condensate derived from the subject wells.  See FAC ¶¶ 25, 27, at 9; SAC ¶¶ 27, 29, at 9-10. The Defendants contend in their motions to dismiss that the Plaintiffs have failed to demonstrate that they are parties to the leases listed in the FAC and SAC, and have failed to allege the specific contractual term breached.  See CP MTD at 3-5; WPX MTD at 3-5.  The Plaintiffs contend that these allegations are baseless, because the Defendants maintain files on the Plaintiffs' leases and are sending royalty payments to the Plaintiffs every month.  See CP MTD Response at 5; WPX MTD Response at 6.  At the hearing, the Defendants conceded that they possess the leases at issue and that the Plaintiffs' assertion that the Defendants are in breach of the royalty clauses of the leases is likely sufficiently specific to survive a motion to dismiss.  See Tr. at 23:14-20 (Campbell).  The Plaintiffs note that they are alleging that Defendants are in breach of the royalty clause in each lease, which includes the entire paragraph in which the royalty clauses are contained.  See Tr. at 25:2-14 (Brickell).

Under New Mexico law,

> a complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the

performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.

McCasland v. Prather, 92 N.M. at 194, 585 P.2d at 338.  The Plaintiffs allege that they are the royalty interest owners on leases to which the Defendants hold working interests for mining oil and gas.  See FAC ¶¶ 22-23, at 7-8; id. ¶ 27, at 9; SAC ¶¶ 23-25, at 7-8; id. ¶ 29, at 9-10.  The Plaintiffs allege that, under the leases' terms, the Defendants are required to pay them royalties based on revenue the Defendants derive from the sale of drip condensate and that the Defendants have failed to provide the Plaintiffs with a percentage of that revenue, causing the Plaintiffs to incur money damages.  See FAC ¶¶ 27-18, at 9-10; SAC ¶¶ 29-30, at 9-10.  The Defendants do not contend that the Plaintiffs have failed to comply with their obligations under the leases or that conditions precedent to the contract have not been met.  When ruling on a motion to dismiss, the Court will accept as true all well-pleaded factual allegations in the FAC and SAC.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  Taking the Plaintiffs' allegations as true, they have alleged that the Defendants are in breach of the leases' royalty clauses, and the Defendants have conceded that they are aware of the Plaintiffs' leases, and indeed, make payments to the Plaintiffs based upon the Plaintiffs' ownership of royalty interests in the leases.  See Tr. at 11:3-8 (Court, Campbell); id. at 23:14-20 (Campbell).  The Court, therefore, will deny the Defendants' request to dismiss the Plaintiffs' first cause of action.

- 109 -

## II. THE PLAINTIFFS MAY PROCEED ON THEIR CLAIMS THAT THE DEFENDANTS VIOLATED A DUTY OF GOOD FAITH AND FAIR DEALING IN CONTRACT, BUT THE LEASES PRECLUDE THE PLAINTIFFS' CLAIMS SOUNDING IN TORT.

The Plaintiffs bring two causes of action which appear to sound in tort as well as contract. For their second cause of action, the Plaintiffs contend that the Defendants' calculation of the royalty payments based on sales to affiliated intermediaries, and the Defendants' failure to disclose the full volume of hydrocarbons derived from the subject wells and all of the deductions from the royalty payments, constitutes fraud. See FAC ¶¶ 29-40, at 10-13; SAC ¶¶ 31-42, at 10-13. The Plaintiffs also allege, however, that the same conduct is a breach of the leases' terms and violates the Defendants' duty of good faith and fair dealing. See FAC ¶ 30, at 10; id. ¶¶ 35-36, 38 at 11-12; SAC ¶ 32, at 11; id. ¶¶ 37-38, 40, at 12-13. In their seventh cause of action, the Plaintiffs assert that the Defendants' "retention of the monies and profits resulting from the sale of Plaintiffs' hydrocarbons" is conversion. FAC ¶ 70, at 19; SAC ¶ 72, at 19.

The Plaintiffs may not bring claims in tort that conflict with the parties' contractual duties as the parties' leases define those obligations. The Court concludes, therefore, that the parties' contractual duties, as the leases define those obligations, preclude the Plaintiffs' causes of action that sound in tort and arise from the same set of facts and allege the same wrongful conduct as the Plaintiffs' allegations of a breach of contract. On the other hand, the Plaintiffs' second cause of action alleges that the Defendants' conduct violates the Defendants' duty of good faith and fair dealing to effectuate the leases' terms. The Court, therefore, will dismiss the Plaintiffs' seventh and second causes of action as stand-alone theories of recovery in tort. The Court will

not, however, dismiss the Plaintiffs' second cause of action to the extent the Plaintiffs allege that the Defendants' conduct breached their duty of good faith and fair dealing in effectuating the leases' terms.

### A.   THE PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THE DEFENDANTS VIOLATED THEIR DUTY TO EFFECTUATE THE TERMS OF THE LEASES IN GOOD FAITH AND WITH FAIR DEALING.

The Plaintiffs allege in their second cause of action that the Defendants have committed fraud, and violated their duty of good faith and fair dealing, by failing to disclose the gross volume of hydrocarbons produced from the subject wells, the gross revenue or value from that gross production, and all the reductions, deductions, and costs calculated into the Plaintiffs' royalty payments, and by basing the Plaintiffs' royalty payments upon non-arm's-length sales to affiliated intermediaries.  See FAC ¶¶ 29-40, at 10-13; SAC ¶¶ 31-42, at 10-13.  The Defendants contend that the Plaintiffs' second cause of action sounds in tort and that Elliott Indus. precludes the Plaintiffs from alleging a claim for fraud, because the Plaintiffs have not explained how the allegation of fraud is not in conflict with the parties' contractual duties.  See CP MTD at 6-7; WPX MTD at 6.  The Defendants contend that they cannot be liable in tort to the Plaintiffs absent fiduciary duties in favor of the Plaintiffs and that New Mexico law does not impose fiduciary duties on lessees to mineral leases.  The Defendants contend, moreover, that New Mexico law does not impose a duty to disclose on working interest owners of mineral leases. See CP MTD at 9; WPX MTD at 8.

Under New Mexico law, "[w]hether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. . . . Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 (internal quotation marks omitted). The duty is not without limits, and New Mexico courts are reluctant to use the duty of good faith and fair dealing to imply "in fact a term or condition necessary to effect the purpose of a contract." Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642. A cause of action for good faith and fair dealing sounds in contract, and not in tort, save for the existence of a special relationship between parties. See Bourgeous v. Horizon Healthcare Corp., 117 N.M. at 439, 872 P.2d at 857.

Much of the Plaintiffs' discussion of their second cause of action indicates that they believe the Defendants' conduct was and is tortious. See, e.g., Tr. at 34:21-35:4 (Brickell)(stating that the second cause of action sufficiently alleges a theory of fraud and citing to the New Mexico Uniform Jury Instructions for fraud). The Plaintiffs carefully, although perhaps not artfully, allege in their FAC and in the SAC, and assert at the hearing, that their second cause of action is tied to their contractual claims, and to the Defendants' duty of good faith and fair dealing. See Tr. at 33:11-14 (Brickell)("[I]f we can prove . . . fraudulent conduct in the context of this contractual relationship, we can recover punitive damages in addition to the actual damages."). Indeed, the second cause of action alerts the Court that the Plaintiffs' theory for relief is, in part, that the Defendants' conduct breached their duty of good faith and fair

- 112 -

dealing.  The Plaintiffs are correct that New Mexico law imposes a duty of good faith and fair

dealing into every contract.  See Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d

at 642.  Moreover, the Tenth Circuit has recognized that Elliott Indus. does not preclude a

plaintiff from articulating that a lessor of an oil-and-gas lease breached the implied duty of good

faith and fair dealing when that duty is necessary to effectuate an express contractual provision.

See Abraham v. BP Am. Prod. Co., 685 F.3d at 1205 ("Although BP argues that the claim is

foreclosed by Elliott, . . . the plaintiff in that case did not articulate the necessity of such a duty to

effectuate the express provision.").  The Defendants may succeed on their motions to dismiss the

Plaintiffs' second cause of action "only if a reasonable person could not draw . . . an inference

[of plausibility] from the alleged facts . . . ."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551

U.S. at 322.  The Defendants do not escape the Plaintiffs' second cause of action entirely by

arguing that the parties' contractual relationship precludes these allegations, because the Court

concludes that the Plaintiffs have plausibly alleged in the second cause of action that the

Defendants breached their duty of good faith and fair dealing.

The Plaintiffs contend that Elliott Indus. does not apply to their second cause of action,

because, unlike the plaintiffs in Elliott Indus., the Plaintiffs have not disclaimed the parties'

leases.  See CP MTD Response at 11; WXP MTD Response at 11.  The Defendants are correct

that, in Elliott Indus., the Tenth Circuit affirmed the district court's dismissal of the plaintiffs'

fraud claim.  The district court dismissed the plaintiffs fraud claim, because the parties' contracts

did not impose a duty to disclose, the plaintiffs failed to demonstrate detrimental reliance, and,

additionally, the district court concluded that the defendants' failure to pay royalties was a "breach of no duty other than one created by contract." 407 F.3d at 1115-16. Notably, the plaintiffs' characterized their fraud claim as one in tort, and not a breach of the duty of good faith and fair dealing regarding the plaintiffs' disclaimed leases. See 407 F.3d at 1115 ("Elliott argues that the district court misapplied New Mexico law when it suggested tort claims are barred simply because the parties have a contractual relationship."). The Tenth Circuit explained that, under New Mexico law, "the existence of any tort liability cannot conflict with any contractual duties between the parties," but did not expressly hold that the plaintiffs' leases precluded their tort allegations, because, as the Plaintiffs repeatedly remind the Court, the plaintiffs in Elliott Indus. disclaimed that the defendants were in breach of the leases, and did not put their leases into the record before the Tenth Circuit. See 407 F.3d at 1116. The Tenth Circuit stated that, because "Elliot . . . failed to provide . . . any analysis of its tort claims in the context of the express contracts obligating" the defendants to pay royalties, it could "only speculate as to the interrelationships" of the parties' "contractual duties and the purported duties alleged to have been breached in Elliott's tort claims." 407 F.3d at 1116. The Tenth Circuit held, therefore, that the plaintiffs could not raise a genuine issue of material fact whether the plaintiffs' allegation of fraud did not conflict with the defendants' contractual duties to which the parties agreed in the leases, and, on that basis, affirmed the district court's grant of summary judgment to the defendants. See 407 F.3d at 1116. The Tenth Circuit did not hold, therefore, in Elliott Indus. that a contractual relationship necessarily precludes a plaintiff from alleging fraudulent conduct

breaches a duty of good faith and fair dealing; rather, the Tenth Circuit explained that any allegation of tort liability can only lie when it does "not conflict with any contractual duties between the parties." 407 F.3d at 1116.

A more recent decision from the Tenth Circuit is instructive regarding the Plaintiffs' ability to proceed on their second cause of action. In Abraham v. BP Am. Prod. Co., a class of landowners brought an action against a natural hydrocarbons production company, alleging, among other claims, that the company's failure to disclose the components of its netback method deprived the landowners of the benefits of their contracts, in violation of the company's duty of good faith and fair dealing. [9] See 685 F.3d at 1204. The company argued, as the Defendants do here, that, under Elliott Indus., the parties' contracts precluded the landowners from alleging that

---

[9] The Tenth Circuit has explained the meaning of a "netback method," and its implication for royalty payments on oil-and-gas leases:

> As we noted in Elliott Industries L.P. v. BP America Production Co., 407 F.3d 1091 (10th Cir. 2005), gas produced from the San Juan Basin contains methane (natural gas) and entrained natural gas liquids (NGLs). In order to market the gas into the interstate pipeline, the NGLs must be removed from the gas stream; producers transport unprocessed gas from the wellhead to a processing facility, where the gas is processed into component parts. In order to determine the market value of the unprocessed gas at the well, producers sell refined natural gas and NGLs at the tailgate of the processing plant (i.e., after processing) to establish a base sales amount, and deduct from that amount costs for transportation, processing, etc. This is called a "netback" or "workback" method, and it is widely accepted as the best means for estimating the market value of gas at the well where no such market exists. If a market exists, however -- if entities buy and sell unrefined gas at the wells -- evidence of comparable wellhead sales is the best possible evidence for analyzing market value at the well.

Abraham v. BP Am. Prod. Co., 685 F.3d at 1199-1200.

the company's conduct breached its duty of good faith and fair dealing.  The Tenth Circuit explained, however, that Elliott Indus. did not foreclose the landowners' claim for a breach of the duty of good faith and fair dealing, because, unlike the plaintiffs in Elliott Indus., the landowners articulated the "necessity of such a duty to effectuate the express provision" of the parties' contracts.  685 F.3d at 1205.

Similarly, Elliott Indus. does not preclude the Plaintiffs' second cause of action.  Here, the Plaintiffs have alleged that the Defendants' failure to disclose the full amount of deductions from their royalty payments and the gross volume of hydrocarbons produced from the subject wells breaches the Defendants' duty to act in good faith and fair dealing.  See FAC ¶¶ 37-38, at 12 (asserting that the ConocoPhillips' "failure to disclose this information was done willfully and in knowing violation of the . . . covenant of good faith and fair dealing . . . ."); SAC ¶¶ 39-40, at 12-13 (same, with respect to WPX).  Elliott Indus. does not foreclose the Plaintiffs from making this allegation of a failure to disclose, as a breach of the Defendants' duty of good faith and fair dealing in effectuating the terms of the leases.  Further, Elliott Indus. does not preclude the Plaintiffs' allegation that the Defendants' sale of hydrocarbons to affiliated intermediaries is in "complete contravention of the duties and covenants imposed upon [the Defendants] by law, including good faith and fair dealing, [and] by the Lease(s)."  FAC ¶ 35, at 11; SAC ¶ 37, at 12. Just as the landowners in Abraham v. BP Am. Prod. Co. asserted that the company's conduct breached their duty of good faith and fair dealing necessary to effectuate a term of the contract, and, therefore, did not fall with Elliott Indus.'s preclusion of tort claims arising from a parties'

contractual relationship, the Plaintiffs here allege that the Defendants' sale to affiliated intermediaries violates their duty of good faith and fair dealing under the leases. The Plaintiffs are not, therefore, alleging entirely and only a stand-alone claim for fraud in the second cause of action. Rather, the Plaintiffs allege that the Defendants' practices in disclosure and sales to affiliated intermediaries breaches their duty of good faith and fair dealing, imposed by law into "every contract," Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642, and the parties leases do not preclude this aspect of the Plaintiffs' second cause of action.

Finally, the Plaintiffs have made sufficient allegations to survive a motion to dismiss that the Defendants' conduct plausibly breached their duty of good faith and fair dealing. Accepting as true all of the Plaintiffs' allegations in the second cause of action, and construing those allegations in the light most favorable to the Plaintiffs, the Plaintiffs have plausibly alleged that the Defendants' conduct would deprive the Plaintiffs of the benefits of their leases, and that the Defendants' conduct described in the second cause of action was done in bad faith. See Smith v. United States, 561 F.3d at 1098 ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."); Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 642 ("Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."); Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 7, 114 N.M. 449, 188 P.2d 1200 ("The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the

detriment of the other party." (secondary quotations omitted)).  The Plaintiffs allege that the Defendants orchestrated the sale of hydrocarbons to affiliated intermediaries for the purpose of receiving "substantial profits from the resale of . . . hydrocarbons, to Plaintiffs' detriment," and that the sales to affiliated intermediaries "resulted in profit to [the Defendants] at Plaintiffs' expense."  FAC ¶¶ 31-32, 34, at 10-11; SAC ¶¶ 33-34, at 11.  These allegations demonstrate the Defendants' arranged the sales to affiliated intermediaries for the purpose of depriving the Plaintiffs of their profits as the leases define profits, and thereby allege that the Defendants acted in bad faith.  If the Defendants are, indeed, undervaluing the proceeds upon which the Plaintiffs' royalty payments are calculated, by basing those payments upon sales of a mixture of hydrocarbons to affiliated intermediaries, the Plaintiffs' benefits from their royalty payments are diminished.   The Plaintiffs allege that the Defendants' sale of hydrocarbons to affiliated intermediaries results in the affiliated intermediaries receiving "a higher value for the hydrocarbons than is reported to Plaintiffs . . . to Plaintiffs' detriment," and "is the result of self-dealing, or is made with third parties in a manner which has resulted in Plaintiffs being charged higher costs than the actual cost of such services, as originally owned and operated." FAC ¶¶ 32-34, at 11; SAC ¶¶ 33-36, at 11.  The Court is wary that the Plaintiffs may be asking the Court to imply a term or condition into the leases, but, at the motion to dismiss stage, the Defendants may have breached their duty of good faith and fair dealing without requiring a term or condition to be imposed into the leases, which, at this point, are not in the Court's records.  See Watson Truck & Supply Co. v. Males, 111 N.M. at 60, 801 P.2d at 641 (explaining that New Mexico courts are

- 118 -

not inclined to imply a term in fact or a condition necessary "to effect the purpose of a contract" under a covenant of good faith and fair dealing). The Plaintiffs also allege that the Defendants' "willfully and in knowing violation of . . . the covenant of good faith and fair dealing" failed to report the full volume of hydrocarbons derived from the subject wells, and did not report all deductions taken from the royalty payments, thereby alleging that the Defendants' breach of the duty of good faith and fair dealing in their reporting practices was done in bad faith. Taking the Plaintiffs' allegations as true, the Defendants' inaccurate reporting of the deductions included in the Plaintiffs' royalty payments could deprive them of the benefit of their royalty interests. The Plaintiffs allege that the Defendants' failure to disclose the full volume of hydrocarbons produced from the subject wells, and all deductions included therein, damaged the Plaintiffs. The Court does not have the specific terms of the leases before it for review, but it is plausible that the Defendants' failure to disclose their method of calculating royalties, and the full amount of hydrocarbons produced from the subject wells, impeded the effectively of the Plaintiffs' right to receive royalties, as the Defendants' inaccurate disclosure would allow them to hide a breach of the leases indefinitely. See Abraham v. BP Am. Prod. Co., 685 F.3d at 1205 (explaining that a party's failure to disclose its netback method to landowners may be actionable as a breach of the duty of good faith and fair dealing, when the duty of good faith and fair dealing is necessary to effectuate an express contractual provision). Accordingly, the Court will not dismiss the Plaintiffs' second cause of action, for fraud, in so far as the Plaintiffs allege that the Defendants'

conduct described in the second cause of action breached the Defendants' duty of good faith and fair dealing in the performance of the leases.

**B.    THE PARTIES' CONTRACTUAL RELATIONSHIP PRECLUDES THE PLAINTIFFS' CLAIMS IN TORT.**

The Defendants request that the Court dismiss the Plaintiffs' second and seventh causes of action, asserting that the Plaintiffs' claims of fraud and conversion sounds exclusively in tort, and the parties' leases preclude the Plaintiffs from alleging a claim for tort based upon conduct defined in the parties' leases.  See Tr. at 28:3-7 (Campbell).  The Defendants also assert that the Plaintiffs' allegations in tort are insufficient to state a claim for relief, because the Plaintiffs have not pled that the Defendants owe the Plaintiff fiduciary duties, the breach of which would make the Defendants liable in tort.  See CP MTD at 9; WPX MTD at 8.  The Defendants contend that, under New Mexico law, the parties' leases do not impose fiduciary duties on the Defendants. See Tr. at 74:20-24 (Campbell)(citing Heimann v. Kinder-Morgan CO2 Co.)

In Isler v. Tex. Oil and Gas Corp., the Tenth Circuit held that a contract that specifically defines the parties' rights and duties precludes any extracontractual tort duty regarding the contract's subject matter.  See 749 F.2d at 23- 24 ("[T]he contract specifically defined the rights and duties of the parties regarding rental payments and notice, thereby precluding any extracontractual tort duty regarding such payments.").  Additionally, "[u]nlike fiduciary duties, covenants of good faith do not require an exclusive operator to subordinate its interest to that of the royalty holders."  Cont'l Potash v. Freeport-McMoran, 858 P.2d at 77.  Under New Mexico law, an oil-and-gas lease that grants a lessee exclusive operating rights does not automatically

- 120 -

create fiduciary responsibilities on the part of the lessee.  See Cont'l Potash v. Freeport-McMoran, 858 P.2d at 77 ("Even though the defendants owed contractual duties to the plaintiffs and also owed them a duty of good faith and fair dealing, a fiduciary relationship did not automatically arise from these circumstances . . . .").

> Moreover, although the lessee's duty of good faith requires that it take the lessor's interest into account in exercising its powers under the unitization clause, the lessee need not subordinate its interest entirely to those of the lessor.  See Elliott v. Davis, 553 S.W.2d 223, 226-27 (Tex. Civ. App. 1977).  Thus, although the lessee's good faith duty has at times been referred to as fiduciary, such standard is altogether too strict.  See Amoco Prod. Co. v. Jacobs, 746 F.2d 1394, 1398-99 (10th Cir. 1984); Vela v. Pennzoil Producing Co., 723 S.W.2d 199, 206 (Tex. App. 1986).

Amoco Prod. Co. v. Heimann, 904 F.2d 1405, 1412 (10th Cir. 1990).  These principles guide the Court's analysis of the Plaintiffs' tort allegations.

The Court determines that the Plaintiffs may allege that the Defendants' conduct described in their second cause of action breached the Defendants' duty of good faith and fair dealing.  If further litigation reveals that the Defendants' conduct described in the second cause of action does not breach a duty of good faith and fair dealing or a duty the leases impose, then the Plaintiffs may not resort to tort law to hold the Defendants liable for what would, in such instance, necessarily be an extracontractual duty.  See Isler v. Tex Oil & Gas Corp., 749 F.2d at 24.  Additionally, the Plaintiffs' seventh cause of action unambiguously alleges that the Defendants' have tortuously converted proceeds from the Plaintiffs' interests in hydrocarbons, but the Plaintiffs' seventh cause of action alleges the same set of facts as the Plaintiffs' first and second causes of action, sounding in contract.  The parties' leases, therefore, preclude the

- 121 -

Plaintiffs from alleging that the Defendants' underpayment of royalties constitutes tortious conversion, as the parties have agreed to certain contractual duties regarding the payment of the Plaintiffs' royalties, and the Defendants' underpayment either breaches the parties' leases, or, in the alternative, is not actionable because the Plaintiffs' theory attempts to impose an extracontractual duty in tort on the Defendants.

Although the Court concludes that the Plaintiffs' second cause of action states a claim for a breach of the duty of good faith and fair dealing, if discovery reveals that the Defendants' conduct does not breach the leases or preclude the Plaintiffs from receiving their benefits promised in the leases, the Plaintiffs may not seek to hold the Defendants liable in tort for the same conduct.  In Isler v. Tex. Oil & Gas Corp., the Tenth Circuit held that the plaintiffs may not proceed on a tort theory of liability against a defendant for conduct that the parties had agreed, in contract, would not be a breach of the defendant's duties.  See 749 F.2d at 24.  Just as in Isler v. Tex. Oil & Gas Corp., the Plaintiffs' allegations of fraud as a theory in tort is based on "precisely the same facts as those" alleged in support of their claim for breach of the duty of good faith and fair dealing in contract.  749 F.2d at 24.  The Court will not impose "any extracontractual tort duty regarding" the Plaintiffs' royalty payments.  749 F.2d at 24.  Furthermore, the Plaintiffs cannot use the duty of good faith and fair dealing to overcome the leases' express provisions, or to imply an additional term or condition onto the Defendants' performance.  See Sanders v. FedEx Ground Package Sys., 2008-NMSC-040, ¶ 8, 114 N.M. 449, 188 P.2d 1200 ("Importantly, the implied covenant of good faith and fair dealing cannot be used to overcome or

negate an express term contained within a contract."); Watson Truck & Supply Co. v. Males, 111
N.M. at 60, 801 P.2d at 642 (explaining that New Mexico courts are reluctant to use the duty of
good faith and fair dealing to imply "in fact a term or condition necessary to effect the purpose of
a contract.").   Nor do the parties' leases create fiduciary duties on the Defendants' part.  See
Cont'l Potash v. Freeport-McMoran, 858 P.2d at 77 (holding that a lessee's contractual duties to
royalty owners did not automatically create fiduciary duties for the lessee in favor of the royalty
owners).  The Plaintiffs contend that, once the Defendants choose to issue monthly statements
allegedly disclosing their methods of royalty calculation, "they had a duty to speak accurately."
Tr. at 34:4-10 (Brickell).  This argument fails for two reasons.  First, the Plaintiffs have already
alleged that the Defendants are liable in contract, under their duty of good faith and fair dealing,
for inaccurate reporting of the Plaintiffs' royalty calculations.    Therefore, whether the
Defendants' reporting was inaccurate and also a breach of a duty owed to the Plaintiffs is
covered by the Plaintiffs' contractual claims, and the Plaintiffs cannot seek a second bite at the
apple by attempting to hold the Defendants liable in tort for a duty that their leases and the duty
of good faith and fair dealing do not require.  Second, the Plaintiffs rely on R.A. Peck, Inc. v.
Liberty Fed. Sav. Bank in support of their allegation that the Defendants created a duty to speak
accurately by disclosing monthly statements.    See Tr. at 34:4-10 (Brickell).   This case is
unhelpful to the Plaintiffs' claim of tort.  In R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, the Court
of Appeals of New Mexico did not impose a duty to disclose accurately on the defendant because
the defendant made a statement alone, as the Plaintiffs contend; rather, the Court of Appeals of

- 123 -

New Mexico determined that the plaintiff had expressly reposed "a trust and confidence in" the defendant bank, and, therefore, when the bank made a disclosure, the bank had a duty to "say enough to prevent [its] words from misleading the other party."  108 N.M. at 89-90, 766 P.2d at 928.  The Plaintiffs, therefore, have not pled sufficient facts for the Court to plausibly conclude that the Defendants owe the Plaintiffs fiduciary duties, separate and apart from those contractual duties arising from the leases.  The Court will not allow the Plaintiffs to overcome the contractual provisions to which the parties have bound themselves by alleging, in tort, that the Defendants' conduct was fraudulent.

Similarly, the Plaintiffs' seventh cause of action alleges "precisely the same facts as those" set forth in the Plaintiffs' allegations of breach of contract.  749 F.2d at 24.  Compare FAC ¶ 70, at 19 (alleging that ConocoPhillips' "retention of the monies and profits resulting from the sale of Plaintiffs' hydrocarbons . . . is exercising unlawful dominion and control over said proceeds otherwise payable to Plaintiffs"); SAC ¶ 72, at 19 (same, with respect to WPX); with FAC ¶ 27, at 9 (alleging that ConocoPhillips has "failed to credit revenues to Plaintiffs representing the value of the said produced drip condensate . . . .  [as] required by the terms of and provisions of Plaintiffs' Leases"); SAC ¶ 28, at 9 (same, with respect to WPX) and FAC ¶ 32, at 11 (alleging that ConocoPhillips' calculation of the Plaintiffs' royalty payments from sales to affiliated intermediaries has resulted in the Plaintiffs receiving "substantially less money than they are entitled to receive"); SAC ¶ 34, at 11 (same, with respect to WPX).  The Defendants therefore have either breached their obligation under the terms of the leases to make royalty

payments to the Plaintiffs, or breached a duty in good faith and fair dealing to effectuate the terms of the terms of the parties' leases, or the Defendants' conduct is lawful.  The Court will not hold the Defendants liable in tort for the breach of a duty that the parties have agreed, in contract, will not cause the Defendants to incur liability.  The parties' leases preclude the Plaintiffs from bringing claims in tort for the violation of duties covered by the parties' leases "because parties should 'be bound by the terms of written agreements to which they freely commit themselves.'" Elliott Indus., 407 F.3d at 1116 (quoting Rio Grande Jewelers Supply, Inc. v. Data General Corp., 689 P.2d at 1271).  The Court, therefore, will dismiss the Plaintiffs' second cause of action in so far as it sounds in tort and will dismiss the Plaintiffs' seventh cause of action entirely.

## III.   THE PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THAT THE DEFENDANTS BREACHED THE LEASES, AND THEIR DUTY OF GOOD FAITH AND FAIR DEALING, IN BAD FAITH.

The Plaintiffs allege in their fifth cause of action that the Defendants have "continuously, maliciously and wrongfully withheld the benefits owed to" them under the terms of the leases. FAC ¶ 61, at 17; SAC ¶ 63, at 17.  The Plaintiffs assert that they are entitled to punitive damages for the Defendants' bad faith breach of the leases.  See FAC ¶¶ 63-64, at 27; SAC ¶¶ 64-65, at 17.  The Defendants contend that the parties' contractual relationship precludes the Plaintiffs from alleging a claim for bad faith, because, the Defendants assert, the Plaintiffs' fifth cause of action sounds in tort and not in contract.  See CP MTD at 21-22; WPX MTD at 26-27.  The Defendants contend that they do not owe fiduciary duties to the Plaintiffs, and, therefore, the

Plaintiffs may not bring a claim in tort arising from the Defendants' alleged breach of the leases. See CP MTD at 22-23; WPX MTD at 26. The Plaintiffs assert that they may bring a claim alleging that the Defendants breached the leases in bad faith, notwithstanding the contractual relationship between the parties. See Tr. at 79:23-80:7 (Brickell). They also assert that their claim for bad faith breach of contract allows them to seek punitive damages, which are not available for the Defendants' alleged breach of contract alone. See Tr. at 78:17-21 (Court, Brickell).

The Plaintiffs' fifth cause of action sounds in contract and not in tort. Although the Defendants adamantly maintain that the Plaintiffs are attempting to bring a claim in tort for the Defendants' alleged breach of the parties' leases, the Plaintiffs have stated that they are not attempting to secure a double recovery from the Defendants' conduct, and they need not allege a fiduciary relationship to allege that the Defendants breached the leases in bad faith. See Tr. at 78:22-25 (Court, Brickell)(the Plaintiffs informing the Court that their claim for bad faith breach of contract does not require the existence of a fiduciary relationship). The allegations in the Plaintiffs' FAC and SAC further demonstrate that they are not seeking to allege a claim in tort; the Plaintiffs allege that the Defendants have themselves,

> and/or by and through [their] affiliates, . . . continuously, maliciously and wrongfully withheld the benefits owed to Plaintiffs and the Class under the terms of the Leases . . . . Said duties include proper payment of royalties and proper reporting of production and sales values and acting in good faith and fair dealing. [The Defendants'] breach of these contractual duties was continuous, intentional, and unjustified and further constitutes fraudulent concealment.

- 126 -

FAC ¶ 61, at 17; SAC ¶ 63, at 17.  Construing all reasonable inferences in the Plaintiffs' favor, as the Court must on a motion to dismiss, the Plaintiffs' fifth cause of action is not divorced from the Plaintiffs' breach of contract; rather, the Plaintiffs allege, in their first cause of action, that the Defendants have breached the leases, and, in their fifth cause of action, that this breach was done in bad faith.  The Defendants' contention that the Plaintiffs' allegation cannot lie without the presence of a fiduciary duty may be based upon the Defendants' position that the Plaintiffs have not sufficiently alleged a breach of contract claim.   As the Court has determined that the Plaintiffs have sufficiently alleged a claim for breach of contract, the Plaintiffs need not demonstrate a fiduciary relationship to further allege that the Defendants breached the leases in bad faith.

Additionally, the Plaintiffs' fifth cause of action states a claim for bad-faith breach of contract sufficient to survive a motion to dismiss.  New Mexico recognizes that, although punitive damages are not normally available for a breach of contract, a plaintiff may recover punitive damages when a defendant's breach was "malicious, fraudulent, oppressive, or committed recklessly with a wanton disregard for the plaintiff's rights."  Romero v. Mervyn's, 109 N.M. at 255, 784 P.2d at 998.  In the fifth cause of action, the Plaintiffs allege that the Defendants' breach of the leases and a covenant of good faith and fair dealing was done "maliciously and wrongfully."  FAC ¶ 61, at 17; SAC ¶ 63, at 17.  Because the Court determines that the Plaintiffs have sufficiently stated a claim for breach of contract, and for breach of the duty of good faith and fair dealing, the Plaintiffs' allegation that this conduct was done

maliciously and wrongfully is sufficient, at the motion to dismiss stage, to plausibly allege that the Defendants knew that their conduct would deprive the Plaintiffs of a portion of their royalty payments and did not take measures to ensure that the Plaintiffs received their full royalty payments as required under the leases.  See Paiz v. State Farm Fire & Cas. Co., 118 N.M. at 211, 880 P.2d at 308 (defining "reckless disregard" sufficient for an award of punitive damages as "when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm" (secondary quotations and citation omitted)). The Court, therefore, will not dismiss the fifth cause of action.

## IV.   NEW MEXICO LAW DOES NOT RECOGNIZE THE PLAINTIFFS' CLAIM FOR A BREACH OF THE IMPLIED DUTY TO MARKET HYDROCARBONS.

The Plaintiffs assert that the Defendants' practice of deducting the cost of rendering the hydrocarbons marketable from the Plaintiffs' royalty payments and using non-arm's length transactions to calculate the Plaintiffs' royalty payments violates: (i) the terms of the leases; and (ii) the Defendants' duties under New Mexico law.  See FAC ¶¶ 41-53, at 13-16; SAC ¶¶ 43-55, at 13-16.  The Defendants present two defenses to these allegations: (i) that the Plaintiffs have not sufficiently alleged that the Defendants breached covenants implied in fact into the leases, see CP MTD at 17-18; WPX MTD at 12-13; and (ii) that the Plaintiffs are alleging a breach of the marketable condition rule, which the Tenth Circuit has held is not implied at law into the leases, see CP Reply at 11; WPX Reply at 10-11.  The Plaintiffs assert that whether the Supreme Court of New Mexico will adopt the marketable condition rule is still an open question and lower New Mexico courts have applied the marketable condition at law, as part of the lessee's implied

duty to market.  See Tr. at 54:15-55:13 (Brickell).  The Court concludes, first, that the Plaintiffs'

allegation of a breach of the duty to market hydrocarbons are not premised upon an implied-in-

fact duty into the leases.  The Court concludes, second, that the Tenth Circuit's decision in Elliott

Indus. bars the Plaintiffs' allegation of a breach of the marketable condition rule and breach of

the implied duty to market hydrocarbons.

        Initially, construing all reasonable inferences in the Plaintiffs' favor, the Court cannot

conclude that the Plaintiffs are alleging in their third cause of action the breach of a duty implied

in fact.  Under New Mexico law, the analysis whether a defendant has breached an implied-in-

fact covenant in a contract requires two steps.  First, a court must analyze "the express terms of

an agreement to determine if they conflict with the provisions of a purported implied covenant."

Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 30, 147 N.M. 157, 218 P.3d 75 (citing Cont'l

Potash v. Freeport-McMoran, Inc., 115 N.M. at 704, 858 P.2d at 80).  Second, the court must

examine "the agreement as a whole, as well as extrinsic evidence, to determine if implying those

provisions would be consistent with the parties' intentions."  Davis v. Devon Energy Corp.,

2009-NMSC-048, at ¶ 30, 147 N.M. 157, 218 P.3d 75.  Only

> [w]hen it is clear . . . from the relevant parts of the contract taken together and
> considered with the facts and circumstances surrounding the execution of the
> agreement, that the obligation in question was within the contemplation of the
> parties or was necessary to effect their intention, then such obligation may be
> implied and enforced.

Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 30, 147 N.M. 157, 218 P.3d 75.  Here, the

Plaintiffs assert that the Defendants' conduct described in the third cause of action breached "the

terms of the lease(s) and New Mexico law."  FAC ¶ 51, at 15; SAC ¶ 53, at 15.  The Plaintiffs do

not allege, as in their second cause of action, that the Defendants have breached a duty of good

faith and fair dealing, or, as the Supreme Court of New Mexico requires to assert an implied

covenant in fact, that the duties allegedly breached were "so clearly within the contemplation of

the parties that they deemed it unnecessary to express it, and therefore omitted to do so . . . ."

Cont'l Potash v. Freeport-McMoran, Inc., 115 N.M. at 704, 858 P.2d at 80.   Rather, the

Plaintiffs' First Supp. disclaims that they are alleging a breach of an implied-in-fact provision in

their third cause of action.   The Plaintiffs maintain that Cont'l Potash v. Freeport-McMoran,

Inc.'s analysis whether an implied-in-fact covenant exists is "inapplicable" to the Plaintiffs' third

cause of action.  Plaintiffs' First Supp. at 5.  The Plaintiffs contend that their third cause of action

states a claim for the breach of "the marketable condition rule/implied duty to market as alleged .

. . by the plaintiffs in Davis[.]"  Plaintiffs' First Supp. at 5.  In Davis v. Devon Energy Corp., the

plaintiffs alleged the defendants "breached the royalty agreements by deducting from their

royalty payments the costs of making CMB gas 'marketable.'"  2009-NMSC-048, ¶ 6, 147 N.M.

157, 218 P.3d 75.  The plaintiffs alleged the existence of this duty as part of the implied duty to

market, which the Supreme Court of New Mexico explained is implied "in equity irrespective of

the parties' intentions."  2009-NMSC-048, ¶¶ 6, 35, 147 N.M. 157, 218 P.3d 75.  By asserting

that Cont'l Potash v. Freeport McMoran, Inc.'s parameters for implying a covenant in fact are

inapplicable to the Plaintiffs' third cause of action, and asserting that the basis for asserting a

breach of the marketable condition rule is identical to that of the plaintiffs in Davis v. Devon

Energy Corp., the Plaintiffs make clear that their third cause of action does not state that the Court must imply a covenant in-fact to effectuate the parties' intentions in the leases. Rather, they seek to hold the Defendants accountable for a covenant implied at law -- a breach of the duty to market -- just as the New Mexico State District Court recognized in Davis v. Devon Energy Corp. Accordingly, the Plaintiffs here are not asserting that the Defendants' conduct described in the third cause of action breaches an implied-in-fact covenant, which Cont'l Potash v. Freeport-McMoran, Inc.'s analysis would govern.

Second, the Tenth Circuit's decision in Elliot Indus. precludes the Plaintiffs' allegation that the Defendants have breached the marketable condition rule. In Elliott Indus., the Tenth Circuit expressly stated that a "conception of the implied duty to market" as requiring oil and gas lessees to "bear the burden of all costs incurred to put the gas in a marketable condition including the cost of removing the NGLs from the gas. . . .  finds no support within New Mexico law." 407 F.3d at 1113-14. The Plaintiffs contend that Elliott Indus. does not govern their allegations in their third cause of action, because, unlike the plaintiffs in Elliott Indus., the Plaintiffs have not divorced their claim for a breach of the marketable condition rule from the leases, they have not stipulated that the hydrocarbons produced from the subject wells are marketable "at the well," and, moreover, the Tenth Circuit's pronouncement that New Mexico law does not support the marketable condition rule is dicta. See Plaintiffs' First Supp. at 1-2. Each of these theories fails.

- 131 -

First, that the Plaintiffs have put their leases at issue in this case does not provide them a safety-hatch from the Tenth Circuit's explanations of New Mexico law in Elliott Indus.  The Tenth Circuit stated in Elliott Indus., that a construction of the implied duty to market that would require lessees to bear all post-production costs "finds no support within New Mexico case law." 407 F.3d at 1113-14.  Although the Plaintiffs are correct that their FAC and SAC are factually dissimilar from the plaintiffs' allegations in Elliott Indus., because the Plaintiffs have not divorced their claim for a breach of the implied duty to market from the parties' contractual relationships, the Tenth Circuit explained that a construction of the implied duty to market as including the marketable condition rule "would still fail" had the parties' contract been at issue. 407 F.3d at 1113.  The Plaintiffs assert that this statement is dicta, because the Tenth Circuit had already held that it could not consider whether the marketable condition rule is implied-in-fact in the parties' contracts in Elliott Indus. when it pronounced that New Mexico law does not support the marketable condition rule as part of the implied duty to market.  See Plaintiffs' First Supp. at 2.  This argument is unavailing.  The Court has previously explained that the Tenth Circuit does not write off as dicta "'alternative rationales . . . providing as they do further grounds for' a court's 'disposition . . . .'"  Thompson v. Intel Corp., No. CIV 12-062 JB/LFG, 2012 WL 3870748, at *8 n.3 (D.N.M. Aug. 27, 2012)(Browning, J.)(quoting Surefoot LC v. Sure Foot Corp., 531 F.3d at 1243).  The Tenth Circuit explained that the implied duty to market does not include a marketable condition rule under New Mexico law, because, as the Tenth Circuit construed New Mexico law, a lessee that was and is "actively producing gas, processing the gas,

- 132 -

and selling the refined natural gas and NGLs" is in compliance with "the implied duty to market as articulated by the New Mexico courts."  Elliott Indus., 407 F.3d at 1113 (citing Darr v. Eldridge, 346 P.2d at 1044).  In Darr v. Eldridge, the Supreme Court of New Mexico determined that the lessee of a mineral water well breached the implied duty to market by failing to drill the wells for water, let alone make any effort to sell mineral water derived from the lessors wells, where the parties' leases provided that, after sixth months, the lessor would receive only royalty payments from the mineral water in remuneration and the lessor covenanted not to engage in the same business of selling mineral water.  See 346 P.2d at 1043-44.  The Supreme Court of New Mexico found that this conduct breached the lessee's "implied covenant to use reasonable diligence in marketing the mineral water."  346 P.2d at 1043.  Here, on the other hand, the Plaintiffs not only do not allege that the Defendants have failed to produce, process, and refine the hydrocarbons from the subject wells, but the Plaintiffs also assert that they receive regular royalty payments from the Defendants, albeit allegedly below what their leases provide.  See FAC ¶ 53, at 15-16; SAC ¶ 53, at 15-16.  The Plaintiffs' allegations, therefore, do not state a claim for a breach of the implied duty to market hydrocarbons as the Tenth Circuit has stated the rule.  The Plaintiffs can no more succeed on a theory of a breach of the marketable condition rule as part of the implied duty to market than the plaintiffs attempted and failed to do in Elliott Indus.

Additionally, the Defendants correctly point out that the Tenth Circuit's statements in Elliott Indus. bind the Court, unless and until the Supreme Court of New Mexico adopts a

different stance.  See WPX Supp. at 1.  As the Tenth Circuit has explained, "when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue."  Wankier v. Crown Equip. Corp., 353 F.3d at 866 (applying the Erie R.R. v. Tompkins, 304 U.S. 64 (1938)(analysis to Utah state law).  Rather than disagreeing with Elliott Indus., the Supreme Court of New Mexico has twice had the opportunity to address the existence of the marketable condition rule under New Mexico law, and has twice explicitly chosen not to address the issue.  In Davis v. Devon Energy Corp. the Supreme Court of New Mexico stated that, although it recognizes the implied duty to market, it does not adopt the district court's conclusion that the marketable condition rule is included in the implied duty to market, and expressly stated that its discussion does not address the existence of the marketable condition rule in New Mexico law.  See 2009-NMSC-048, ¶¶ 13-14, 35, 147 N.M. 157, 218 P.3d 75 ("WE DO NOT ADDRESS THE MARKETABLE CONDITION RULE").  In a subsequent decision, ConocoPhillips Co. v. Lyons, the Supreme Court of New Mexico again declined to determine whether the marketable condition rule is implied as a matter of law into oil-and-gas leases.  See ConocoPhillips Co.  v. Lyons, 2013-NMSC-009, ¶ 64, 299 P.3d 844 ("As we indicated in Davis, whether the marketable condition rules applies in New Mexico is not yet ripe for review.").  Although in Davis v. Devon Energy Corp. the Supreme Court of New Mexico did not disturb the district court's finding that the implied duty to market includes the marketable condition rule, because the Supreme Court expressly disclaimed that it

- 134 -

was ruling on that finding, the Tenth Circuit's pronouncement in Elliott Indus. remains binding on the Court.

Finally, the Plaintiffs' attempt to factually distinguish their case from the cases upon which the Tenth Circuit relied in Elliott Indus. is not helpful to their claims.  In Elliott Indus., the Tenth Circuit discussed Creson v. Amoco Prod. Co., which the Plaintiffs contend is factually dissimilar to their case.  See Elliott Indus., 407 F.3d at 1110; Plaintiffs' First Supp. at 3-4.  The Plaintiffs contend that Elliott Indus. does not control their allegation that the Defendants breached the marketable condition rule, because, unlike the plaintiffs in Creson v. Amoco Prod. Co., they do not stipulate that their hydrocarbons are marketable at the wellhead.  See Tr. at 55:14-22 (Brickell)("The Creson court therefore . . . focused on the fact that the 'at the well' language means that post-production costs are deducted from the value of processed carbon dioxide gas in arriving at the proper royalty valuation."); Plaintiffs' First Supp. at 3-4.  The Supreme Court of New Mexico's decision in ConocoPhillips Co.  v. Lyons clarifies that this factual distinction does not change the Supreme Court's analysis whether the Defendants' conduct breaches the implied duty to market.  In construing the meaning of a lessor's statutorily imposed royalty obligations which provided for the lessor to calculate its net proceeds "from the sale of such gas in the field" and not "at the well," the Supreme Court of New Mexico held that the term "from the sale of such gas in the field," allowed the lessor to deduct "costs incurred subsequent to production . . . regardless of where the sale takes place."  2013-NMSC-009, ¶ 24, 299 P.3d 844.  Although this holding is in the context of statutory and contract interpretation,

and is not a pronouncement of law regarding all oil-and-gas leases, the Supreme Court of New Mexico's discussion undermines the Plaintiffs' contention that the absence of the term "at the well" from their leases removes their allegation that deducting post-production costs from royalty payments on hydrocarbons that are not marketable "at the well" from <u>Elliott Indus.</u>' preclusion.  The Court, therefore, cannot adopt the district court's conclusion that the marketable condition rule is implied as a matter of law into oil-and-gas leases, in the face of the Tenth Circuit's holding that the marketable condition rule, as the plaintiffs articulated in <u>Elliott Indus.</u> and the Plaintiffs here also articulate, has no basis in current New Mexico law.  The Court will dismiss the Plaintiffs' third cause of action.

## V.    THE PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER THE <u>PROCEEDS PAYMENT ACT</u>.

The Plaintiffs contend, in their fourth cause of action, that the Defendants have failed to make timely royalty payments as required by the Proceeds Payment Act and Colo. Rev. Stat. § 34-60-118.5.  <u>See</u> FAC ¶¶ 55-57, at 16; SAC ¶¶ 57-59, at 16-17.  The Defendants assert, initially, that the Plaintiffs may bring an action under the Proceeds Payment Act only as derivative of a contractual relationship between the parties, and, the Defendants assert, because the Plaintiffs have failed to establish the existence of an enforceable contract between the parties, the Plaintiffs' fourth cause of action fails to state a claim for relief.  <u>See</u> CP MTD at 20; WPX MTD at 22-23.  ConocoPhillips also asserts that the Proceeds Payment Act does not apply to claims of royalty underpayment.  <u>See</u> CP MTD at 20-21.  WPX further asserts that a royalty owner receives relief under the Proceeds Payment Act only after providing the interest owner

with a division order, as described in N.M.S.A. 1978, § 70-10.3.1.  See WPX MTD at 22-24.
The Defendants' first defense to the Plaintiffs' fourth cause of action fails, because the Court has
determined that the Plaintiffs sufficiently allege the existence of a contractual relationship
between the parties, upon which the Plaintiffs may bring their claim for a violation of the
Proceeds Payment Act.  See Elliott Indus., 407 F.3d at 1120 ("[I]n order to maintain a Payment
Act claim, Elliott must allege a potentially successful claim for underpayment of royalties or
theory of liability showing that it is 'legally entitled to such payments.'"  (quoting N.M.S.A.
1978, § 70-10-3).  The Court additionally concludes that the Plaintiffs may proceed under the
Proceeds Payment Act for a claim alleging that the Defendants failed to make full, timely
payments to the Plaintiffs in accordance with the Act's requirements.  On the other hand, the
Court does not have jurisdiction over any allegation that the Defendants have made untimely
payments under Colo. Rev. Stat. § 34-60-118.5.

When construing a New Mexico statute, the court's "guiding principle is to determine
and give effect to legislative intent."  N.M. Indus. Energy Consumers v. N.M. Pub. Regulation
Comm'n, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 104.  The Court uses the canons of
statutory construction, first looking to the plain language and "giving the words their ordinary
meaning, unless the legislature indicates  a different one was intended."  2007-NMSC-053, ¶ 20.
The Court will determine the plain meaning of the words "used in the context of the statutory
text as a whole."  Quynh Truong v. Allstate Ins. Co., 2010–NMSC–009, ¶ 37, 147 N.M. 583, 227
P.3d 73.

- 137 -

The Tenth Circuit stated in <u>Elliott Indus.</u>: "A claim for underpayment of royalties may very well fall within the provisions of the Payment Act." <u>Elliott Indus.</u>, 407 F.3d at 1120. The Tenth Circuit concluded that the plaintiffs in <u>Elliott Indus.</u> could not bring a claim under the Proceeds Payment Act, because they had not alleged the existence of a contractual relationship between the parties. <u>See</u> 407 F.3d at 1120 ("[B]ased on the plain language of the statute, the district court properly concluded that in order to maintain a Payment Act claim, Elliott must allege a potentially successful claim for underpayment of royalties . . . ."). The Plaintiffs here suffer from no such deficiency, as they have alleged a potentially successful claim for underpayment of royalties based upon the parties' leases. The Court further concludes that the Proceeds Payment Act's plain language supports the Plaintiffs' theory of relief. Section 70-10-3 states that a royalty interest owner shall be paid for any

> oil and gas proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbon in New Mexico . . . not later than six months after the first day of the month following the date of first sale and thereafter not later than forty-five days after the end of the calendar month within which payment is received by payor for production . . . .

N.M.S.A. 1978, § 70-10-3. Additionally, the Proceeds Payment Act defines "oil and gas proceeds" as "all payments derived from oil and gas production from any well located in New Mexico, whether royalty interest, overriding royalty interest, production payment interest or working interest . . . ." N.M.S.A. 1978, § 70-10-2. Nothing in these sections, the act generally, or New Mexico or Tenth Circuit law, limits the definition of "proceeds" to exclude underpayments. Additionally, the Proceeds Payment Act provides that interest shall accrue only

- 138 -

on the "unpaid balance due," which connotes that a payor's interest liability may vary depending whether the payor paid in full or only in part.  N.M.S.A. 1978, § 70-10-5.  The Tenth Circuit has recognized that the Proceeds Payment Act "may very well fall within the provisions" of the Act. 407 F.3d at 1120.   The Tenth Circuit has similarly recognized that Oklahoma's Production Revenue Standards Act, 52 Okl. St. §§ 570.1-570.15, can apply to royalty underpayments.  See Okland Oil Co. v. Conoco, Inc., 144 F.3d 1308, 1320 (10th Cir. 1998)(recognizing that under Okla. Stat. § 570.10(D)(1), an oil-and-gas producer may interest based on the "underpayment amount . . . claimed for each contract" in a breach-of-contract action); Okl. St. § 570.10(D)(1)("Except as otherwise provided in . . . this section, where proceeds from the sale of oil or gas production or some portion of such proceeds are not paid prior to the end of the applicable time periods . . . . that portion not timely paid shall earn interest at the rate of twelve percent . . . .").  Accordingly, ConocoPhillips' assertion that the Proceeds Payment Act does not apply to underpayments is not supported by the Act's plain language, or the cases construing the Act in New Mexico and in the Tenth Circuit.

Additionally, the plain meaning of the Proceeds Payment Act's provisions regarding division orders does not require the Plaintiffs to furnish the Defendants with division orders before proceeding under the Act.  Although N.M.S.A. 1978, § 70-10-5 allows that a payor will not be held liable for late payments if the payor has not been furnished with a "division or transfer order that will set forth the proper interest to which the interest owner is entitled, as well as the mailing address to which payment may be directed," the same section requires a "payor"

- 139 -

to provide the division order to each "interest owner," and not vice-versa.  N.M.S.A. 1978, § 70-10-3.1(B) ("The payor shall make a diligent effort to furnish each interest owner with a reasonable division or transfer order . . . .").  Accordingly, the Plaintiffs, as interest owners, cannot be faulted for the Defendants' failure to provide them with division orders setting forth their interests.  Another inapplicable exception to N.M.S.A. 1978, § 70-10-5's penalties occurs when an interest owner "has failed or refused to execute a reasonable division or transfer order acknowledging the proper interest to which he claims to be entitled and setting forth a mailing address . . . ."  N.M.S.A. 1978, § 70-10-5(D).  The Defendants make no allegation that the Plaintiffs failed or refused to execute a reasonable division or transfer order.  Additionally, as WPX has pointed out, the New Mexico Legislature adopted the "common law" of division orders when it implemented the Proceeds Payment Act.  See WPX MTD at 22-24 (citing Murdock v. Pure-Lively Energy 1981-A Ltd., 108 N.M. at 579-80, 775 P.2d at 1296-97).  The New Mexico Legislature's intent in adopting the common law of division orders, however, was to relieve a payor of liability "when the payor believes in good faith that there is lack of a good and marketable title held by payee."  Murdock v. Pure-Lively Energy 1981-A Ltd., 108 N.M. at 580, 775 P.2d at 1297.  In this case, the Defendants concede that they have been making royalty payments to the Plaintiffs and that their legal departments are aware of the titles giving the Plaintiffs royalty interests.  See Tr. at 11:3-8 (Court, Campbell).  The Defendants cannot, therefore, in good faith assert that the Plaintiffs' ownerships interests are in doubt such that the Plaintiffs must execute a division order to verify proper title on the leases.  The Plaintiffs,

therefore, have stated a plausible claim for relief under the Proceeds Payment Act, by alleging an existing contractual relationship between the parties that requires the Defendants to make certain royalty payments and that the Defendants have failed to make those payments within the statutorily required time period.

On the other hand, the Tenth Circuit has concluded that federal courts within this Circuit do not have jurisdiction over a party's allegations of a violation of Colo. Rev. Stat. § 34-60-118.5.  As part of the Oil and Gas Conversation Act, Colo. Rev. Stat. § 34-60-118.5 provides that:

> payments of proceeds derived from the sale of oil, gas, or associated products shall be paid by a payer to a payee commencing not later than six months after the end of the month in which production is first sold.  Thereafter, such payments shall be made on a monthly basis not later than sixty days for oil and ninety days for gas and associated products following the end of the calendar month in which subsequent production is sold.  Payments may be made annually if the aggregate sum due a payee for twelve consecutive months is one hundred dollars or less.

Colo. Rev. State §§ 34-60-101; 34-60-118.5 (2)(a).  Additionally, the Oil and Gas Conservation Act provides that the oil-and-gas conservation commission

> has jurisdiction over all persons and property, public and private, necessary to enforce the provisions of this article, and has the power to make and enforce rules, regulations, and orders pursuant to this article, and to do whatever may reasonably be necessary to carry out the provisions of this article. Any delegation of authority to any other state officer, board, or commission to administer any other laws of this state relating to the conservation of oil or gas, or either of them, is hereby rescinded and withdrawn and such authority is unqualifiedly conferred upon the commission, as provided in this section. Any person, or the attorney general on behalf of the state, may apply for any hearing before the commission, or the commission may initiate proceedings upon any question relating to the administration of this article, and jurisdiction is conferred upon the commission to

hear and determine the same and enter its rule, regulation, or order with respect
thereto.

Colo. Rev. Stat. § 34-60-105 (1).  The Tenth Circuit has interpreted the Oil and Gas
Conservation Act to preclude federal district court jurisdiction over suits asserting injuries under
the Act.  In Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138 (10th Cir. 2000),
the Tenth Circuit held that a district court properly refused to apply Colo. Rev. Stat. § 34-60-
118.5 to a plaintiffs' allegation of late royalty payments in breach of the plaintiffs' oil-and-gas
contracts.  The Tenth Circuit explained that, "[b]y its terms, § 34-60-118.5 only governs
enforcement proceedings before the Commission and is inapplicable to claims for breach of
contract . . . ."  226 F.3d at 1157.  The Tenth Circuit relied upon a Court of Appeals of Colorado
case in making this statement, Grynberg v. Colo. Oil & Gas Conservation Comm'n, 7 P.3d 1060,
(Colo. Ct. App. 1999):

> "Section 34-60-118.5 does not create an entitlement to proceeds; it presumes the
> existence of such an entitlement and imposes deadlines for the payment to those
> legally entitled to receive payment. The statute demonstrates the General
> Assembly's intent to grant to the Commission jurisdiction only over actions for
> the timely payment of proceeds and not over disputes with respect to the legal
> entitlement to proceeds under the terms of a specific royalty agreement."

Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d at 1157 (quoting Grynberg v. Colo.
Oil & Gas Conservation Comm'n, 7 P.3d at 1063).  In Grynberg v. Colo. Oil & Gas
Conservation Comm'n, the Court of Appeals of Colorado emphasized that the oil and gas
commission does not have jurisdiction "to interpret any royalty agreement to determine the
propriety of disputed post-production deductions."  7 P.3d at 1063.

- 142 -

"Before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payor and payee.  If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court."

Grynberg v. Colo. Oil & Gas Conservation Comm'n, 7 P.3d at 1063 (quoting Colo. Rev. Stat. § 34-60-118.5(5.5)).  The oil and gas commission, therefore, cannot adjudicate a "legal entitlement to further payments under [a] royalty agreement that is at issue."  7 P.3d at 1062-63.   On the other hand, the oil and gas commission has "exclusive jurisdiction to enforce compliance with" the Oil and Gas Conservation Act's requirements of timely payments.  7 P.3d at 1062-63 (citing Colo. Rev. Stat. § 34-60-118.5(5)).

In light of these statements regarding Colorado law, the Tenth Circuit held, in Atl. Ritchfield Co. v. Farm Credit Bank of Wichita, that a federal district court cannot enforce the Oil and Gas Conservation Act's provisions regarding late payments on a party in federal court.  See 226 F.3d at 1157.  Accordingly, the Tenth Circuit held that the federal district court properly applied Colo. Rev. Stat. § 5-12-102(b), rather than Colo. Rev. Stat. § 34-60-118.5 to determine the prejudgment interest the defendant owed for late royalty payments.  The Tenth Circuit noted that its construction of Colorado law implicitly recognizes that a claimant may achieve different rates of prejudgment interest dependent upon the forum -- administrative or judicial -- in which the claimant brings its action.  The Tenth Circuit explained, however, that in Colorado, "[t]he law of oil and gas' is unlike any other area,'" and this inconsistency "hardly limits the Colorado General Assembly's ability to prescribe different rates of prejudgment interest for different types

- 143 -

of oil and gas proceedings."   226 F.3d at 1157 (quoting Davis v. Cramer, 808 P.2d 358, 359 (Colo. 1991)).

Because the Tenth Circuit has held that a federal district court does not have jurisdiction to enforce Colo. Rev. Stat. § 34-60-118.5, the Court cannot entertain the Plaintiffs' allegations under that statute in this case.   This tension does not preclude the Court from determining the Defendants' royalty obligations under the leases, although the Court cannot enforce Colo. Rev. Stat. § 34-60-118.5's interest provisions on any unpaid royalties for which the Defendants may be liable.   Accordingly, the Court dismisses the Plaintiffs' fourth cause of action in part.   The Plaintiffs may proceed under the Proceeds Payment Act, but may not proceed under the Oil and Gas Conservation Act in this forum.

## VI.   THE PLAINTIFFS MAY PROCEED ON THEIR CLAIMS FOR DECLARATORY RELIEF TO PROSCRIBE THE DEFENDANTS' FUTURE CONDUCT, BUT THEY MAY NOT SEEK EQUITABLE RELIEF FOR THE DEFENDANTS' PAST BREACH OF CONTRACT.

In their sixth cause of action, the Plaintiffs request the Court to remedy the Defendants' alleged unjust enrichment and to award equitable relief in the form of a declaratory judgment and injunction.   See FAC ¶¶ 65-68, at 18; SAC ¶¶ 67-69, at 18.   The Defendants assert that the parties' leases preclude the Plaintiffs from alleging unjust enrichment, and assert that the Plaintiffs' request for declaratory relief is non-specific and, therefore, insufficient under the Declaratory Judgment Act, and redundant to the Plaintiffs' breach of contract allegations, and the Plaintiffs have failed to allege the elements required to seek injunctive relief.   See CP MTD at 25-29; WPX MTD at 29.

- 144 -

First, the parties' leases preclude the Plaintiffs from alleging a claim for unjust enrichment.  As the Tenth Circuit explained, in Elliott Indus., the "hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations if the parties with respect to the disputed issue." Elliott Indus., 407 F.3d at 1117.  In Elliott Indus., the plaintiffs could not allege a successful claim for unjust enrichment even though they asserted that the parties' contract did not contain an express provision regarding the defendants' allegedly excessive deductions.  The Tenth Circuit explained that, even if the parties' contracts did not specifically delineate the deductions that the defendants may take, because the contracts "control how the royalties are to be paid," the parties' contracts precluded the plaintiffs from alleging a claim for unjust enrichment.  407 F.3d at 1117.  Similarly, here, the Plaintiffs do not disclaim that their leases provide for royalties to be paid in a certain manner; indeed, the Plaintiffs' breach-of-contract claim and allegations of a breach of the covenant of good faith and fair dealing are based upon a theory that the Defendants have underpaid the Plaintiffs as their leases require.  The Plaintiffs cannot hold onto a claim for unjust enrichment to protect them in case they decide that their contractual claims do not fully compensate them; the Tenth Circuit rejected a nearly identical theory in Elliott Indus.  See Tr. at 86:19-23 (Brickell)(asserting that the Plaintiffs are seeking equitable relief in case "the damages as may be proven under the breach of contract . . . fail to adequately compensate the parties").  Therefore, because the Plaintiffs' allegation of unjust enrichment is "grounded in the parties' contractual

relationship," the Plaintiffs may not proceed on their sixth cause of action to hold the Defendants

liable in equity for a breach of contractual duties.  407 F.3d at 1117.

On the other hand, the Court may award the Plaintiffs declaratory relief for the

Defendants' alleged breach of contract, and the Plaintiffs have made sufficient allegations to

support a plausible claim for declaratory relief.  As the Court has previously explained, a

"'declaratory judgment is meant to define the legal rights and obligations of the parties in

anticipation of some future conduct, not simply proclaim liability from a past act.'"  Copar

Pumice Co., Inc. v. Morris, 2009 WL 5201799, at *17 (quoting Lawrence v. Kuenhold, 271 F.

App'x. at 766).  The Tenth Circuit has stated that a district court should consider the following

factors when deciding whether to entertain a request for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it
> would serve a useful purpose in clarifying the legal relations at issue; [3] whether
> the declaratory remedy is being used merely for the purpose of procedural fencing
> or to provide an arena for a race to res judicata; [4] whether use of a declaratory
> action would increase friction between our federal and state courts and improperly
> encroach upon state jurisdiction; and [5] whether there is an alternative remedy
> which is better or more effective.

State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d at 983.  A declaratory judgment ordering that the

Plaintiffs "be paid lawfully, under the terms of their leases and state law, until said leases expire"

would settle the parties' controversy regarding their rights and duties under the leases, and

clarify the parties' legal relations, which are contested herein.  FAC ¶ 67, at 18; SAC ¶ 69, at 18.

The Court has no reason to conclude that the Plaintiffs are seeking a declaratory judgment only

for res judicata purposes, and the parties have not presented arguments regarding how a

- 146 -

declaratory judgment would create friction between the federal and state courts.  Last, although the Plaintiffs are seeking an alternative remedy in contract for the Defendants' alleged breach of the leases, a declaratory judgment would proscribe the Defendants' future conduct in accordance with the leases, and, therefore, an alternative contractual remedy is not "better or more effective."  State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d at 983.  Further, unlike remedies in equity or tort, "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57.  Thus, "declaratory relief is alternative or cumulative and not exclusive or extraordinary."  Fed. R. Civ. P. 57 advisory committee's note (1937 adoption).  The Plaintiffs, by requesting a declaratory judgment to "adjudicate and govern the future reporting of all production and imposition of any expenses or costs to Plaintiffs," and proscribing the Defendants' future conduct, have alleged a plausible claim for declaratory relief in their sixth cause of action.  FAC ¶ 75, at 20; SAC ¶ 77, at 20.

The Court will not, however, allow the Plaintiffs to seek injunctive relief from the Defendants' conduct, because they have not demonstrated that they will suffer irreparable harm from the Defendants' conduct.

> To obtain a permanent injunction, the party requesting such relief bears the burden of showing: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175, 1180 (10th Cir.2003) (citations omitted).

Williamson v. Sena, No. CIV 04-0537 JB/LFG, 2006 WL 1308268, at *3 (D.N.M. Mar. 29, 2006)(Browning, J.).  "A showing of irreparable harm requires that the injury be both certain and

great, . . . and that it must not be merely serious or substantial." <u>Port City Props. v. Union Pac.</u> <u>R.R. Co.</u>, 518 F.3d 1186, 1190 (10th Cir. 2008)(secondary quotation omitted).  "Economic loss 'usually does not, in and of itself, constitute irreparable harm.'" <u>Port City Props. v. Union Pac.</u> <u>R.R. Co.</u>, 518 F.3d at 1190 (quoting <u>Heidman v. S. Salt Lake City</u>, 348 F.3d 1182, 1189 (10th Cir. 2003)).  In both the FAC and the SAC, the Plaintiffs have not alleged a harm that money damages cannot compensate.  Throughout their claims for relief, the Plaintiffs allege that they have been underpaid for their royalty interests, a wrong which money damages can compensate. Additionally, to the extent that the Plaintiffs request that the Court enjoin the Defendants' future conduct, the only harm apparent to the Court that the Defendants' future conduct could cause is that the Plaintiffs would receive less money than they should under their leases.  The Plaintiffs, therefore, have not alleged any irreparable harm, as the only harm the Defendants' conduct is alleged to cause is monetary damage to the Plaintiffs.  The Court, therefore, will not allow the Plaintiffs to proceed on their claim for injunctive relief.

The Court will dismiss the Plaintiffs' sixth cause of action in part.  The Plaintiffs may seek declaratory relief to declare the Defendants' future obligations to the Plaintiffs.  The Plaintiffs may not seek equitable relief in the form of either unjust enrichment or injunctive relief to remedy the harm that the Defendants' alleged breach of contract caused.

## VII.   THE COURT WILL NOT DISMISS THE PLAINTIFFS' CLASS-ACTION ALLEGATIONS.

The Defendants request the Court to dismiss the Plaintiffs' class-action allegations as failing to state a claim for relief under rule 8(a).  <u>See</u> CP MTD at 31; WPX MTD at 32.  The

Defendants contend that the Plaintiffs have only restated rule 23(a)'s requirements in their class-action allegations, and have failed to "allege even a single question of law or fact that purportedly is common to the class and the named plaintiffs."  CP MTD at 33; WPX MTD at 33.  The Plaintiffs assert that they have stated a plausible claim for relief by alleging that the Defendants systematically failed to "accurately report, value, calculate and pay royalty on produced hydrocarbons."  CP MTD Response at 29; WPX MTD Response at 28-29.

The Defendants have cited to no binding authority that would require the Court to apply Ashcroft v. Iqbal or Bell Atl. Corp. v. Twombly to the Plaintiffs' class-action allegations.  See CP MTD at 31; WPX MTD at 32-33.  Although the Defendants cite to the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes for the proposition that the Plaintiffs' class-action allegations cannot survive a motion to dismiss, that case is procedurally and factually dissimilar.  In Wal-Mart Stores, Inc. v. Dukes, the issue before the Supreme Court was whether the lower courts had properly granted certification to a class of female Wal-Mart employees alleging that "a strong and uniform 'corporate culture' permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each of one Wal-Mart's thousands of managers," thereby discriminating against "every woman at the company."  131 S. Ct. at 2548.  The Supreme Court concluded that the certified class failed to meet rule 23's commonality requirement, because they had "not identified a common mode of exercising discretion that pervades the entire company."  131 S. Ct. at 2554-55.  The matter before the Court, on the other hand, is a motion to dismiss under rule 8(a), and not a motion for class certification under rule

- 149 -

23, which requires the Court to undergo a "rigorous analysis." 131 S. Ct. at 2551. Moreover, the

Plaintiffs' class-action allegations enable them to take advantage of a procedural device, not a

new cause of action.

> "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982). See Vallario v. Vandehey, 554 F.3d 1259, 1267 (10th Cir. 2009)("We, of course, adhere to the principle that class certification does not depend on the merits of a suit.").

In re Thornburg Mortg., Inc. Sec. Litig., No. CIV 07-0815 JB/WDS, 2012 WL 6004176, at *36

(D.N.M Nov. 26, 2012)(Browning, J.). See 4 Alba Conte, Herbert B. Newberg, Newberg on

Class Actions § 11:65, at 252-53 (4th ed. 2012)("It is settled law that during the interim between

filing of a class action and the 23(c)(1) determination by the court, it must be assumed to be a

class action for purposes of dismissal or compromise under 23(e) unless and until a contrary

determination is made under 23(c)(1)." (secondary quotations omitted)). The Supreme Court's

analysis of the sufficiency of class-wide allegations in Wal-Mart Stores, Inc. v. Dukes for the

purposes of class certification, therefore, is not applicable at this stage to the issue whether the

Plaintiffs' class-action allegations, which do not state a claim for relief on the merits, may

proceed beyond a motion to dismiss. Moreover, the Court previously determined that "[n]othing

in Bell Atlantic Corp. v. Twombly, or in the Supreme Court's subsequent decision in Ashcroft v.

Iqbal, . . . , requires a plaintiff to specifically plead each and every element of damages with

specificity. Such a requirement would result in a near wholesale abandonment of the concept of

notice pleading." Isengard v. N.M. Pub. Educ. Dep't, No. CIV 08-0300 JB/RLP, 2009 WL

- 150 -

5220371, at *7 (D.N.M. Dec. 9, 2009)(Browning, J.).   Just as the Court did not apply the Supreme Court's jurisprudence regarding motions to dismiss to damage theories, in the past, the Court does not see a reason to apply the rigorous standards of Ashcroft v. Iqbal or Bell Atl. Corp. v. Twombly to the Plaintiffs' class-action allegations now.   The class action allegations are rather pro forma at this point; the heavy lifting is done at the class certification hearing, rather than on a motion to dismiss.   See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974)(holding that a district court improperly weighed the merits of class action allegations on a motion to dismiss, rather than as required within rule 23's procedural safeguards); Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982)(holding that a district court improperly dismissed a proposed class action on its merits, and not on the basis of rule 23's requirements); Conte et al., supra, § 7:6, at 21 ("It is now settled that a class determination must be made independent of the merits of the suit.   Accordingly, it is improper to seek class denial by means of a motion to dismiss the action.").

Additionally, even if the Court were to apply Ashcroft v. Iqbal and Bell Atl. Corp. v. Twombly to the Plaintiffs' class-action allegations, the Court would likely deny the Defendants' motion to dismiss these portions of the FAC and of the SAC.   The Plaintiffs allege that the class represents at least 1,000 members, that their individual losses are so small that individual litigation is impracticable, that a common question of law and fact regarding the Defendants' payment practices required under the leases dominates the class-wide allegations, and that the

Plaintiffs will fairly and adequately represent the interests of the individual class members.  See

FAC ¶¶ 12-19, at 4-5; SAC ¶¶ 13-20, at 4-5.

> A defendant has a difficult burden when attacking class allegations via a motion to dismiss.  A motion to dismiss admits all facts well pleaded.  The reasonable inferences which may be drawn from the pleadings are taken as true for the purposes of the motion.  Furthermore, a reviewing court should interpret the facts alleged in the complaint in the light most favorable to the plaintiff.  Additionally, the complaint should not be dismissed unless the pleadings disclose that no set of facts could be proved that will entitle the plaintiff to relief.

Conte et al., supra, § 13:46, at 449.  Construing all reasonable inferences in the Plaintiffs' favor,

it is plausible that the Defendants have breached a duty, either imposed under the terms of the

leases or through the covenant of good faith and fair dealing, to calculate the Plaintiffs' royalty

payments based on arm's-length transactions and without deducting post-production costs.[10]  At

the hearing, the Plaintiffs asserted that the express provision they believe the Defendants have

---

[10] All classes must satisfy the prerequisites under rule 23(a) for certification:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

breached is the leases' royalty clauses.   <u>See</u> Tr. at 18:22-21:12 (Brickell).   The Court can reasonably infer that the royalty clauses are sufficiently similar such that the Defendants' conduct would breach the duties required in each lease at issue.   Additionally, even applying the Supreme Court's recent decision in <u>Wal-Mart Stores, Inc. v. Dukes</u> to the Plaintiffs' allegations, the Plaintiffs' allegations are not as problematic as those of women alleging that a policy allowing for discretion was implemented in a discriminatory manner.   Rather, the Plaintiffs have alleged that one practice -- the Defendants' conduct in royalty calculation -- breaches the same provision contained within each lease.   The Plaintiffs' allegations do not fail to plausibly meet the commonality requirement.

The Court, therefore, will grant the CP MTD and WPX MTD in part and deny in part. The Plaintiffs have stated a plausible claim for breach of contract, and the Court will not dismiss the Plaintiffs' first cause of action.   The Plaintiffs have also plausibly alleged that the Defendants' reporting and royalty calculation conduct breaches the Defendants' duty of good faith and fair dealing, implied at law into every contract in New Mexico.   The Court will not, therefore, dismiss the Plaintiffs' second cause of action as a claim for a breach of the duty of good faith and fair dealing, in contract.   The Court dismisses the Plaintiffs' second cause of action to the extent it asserts a stand-alone claim of fraud in tort.   The Court similarly dismisses the Plaintiffs' seventh cause of action, because the parties' leases preclude the Plaintiffs from recovering in tort for the breach of a duty that the leases cover.   The Court will dismiss the Plaintiffs' third cause of action, because New Mexico law does not recognize that the

Defendants' conduct alleged therein breaches the Defendants' implied duty to market hydrocarbons.  The Court will dismiss the Plaintiffs' fourth cause of action in part.  The Plaintiffs may proceed on their theory that the Defendants have failed to make timely payments as the Proceeds Payment Act requires, but may not proceed, before the Court, under Colorado's Oil and Gas Conservation Act.  The Court will not dismiss the Plaintiffs' fifth cause of action, because the Plaintiffs' have sufficiently alleged that the Defendants plausibly breached their duties under the leases, and the covenant of good faith and fair dealing, in bad faith.  The Court will dismiss the Plaintiffs' sixth cause of action in part.  The Plaintiffs may not recover in equity for conduct that allegedly breaches the parties' leases; the Court, therefore, dismisses the Plaintiffs' claim for unjust enrichment.  The Court also dismisses the Plaintiffs' claim for injunctive relief, because the Plaintiffs have alleged that the Defendants' conduct will cause them only monetary harm, a harm that is not irreparable.  The Plaintiffs may seek a declaratory judgment proscribing the Defendants' future conduct under the leases.  Last, the Court will not dismiss the Plaintiffs' class-action allegations, because these allegations do not purport to state a claim for relief, and, moreover, there is not an absence of any set of facts that would make the Plaintiffs' theories of recovery possible.

**IT IS ORDERED** that Defendant ConocoPhillips Company's Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0039 Doc. 11), and Defendants WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended

Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0040 Doc. 18), are granted in part and denied in part.  The Court: (i) does not dismiss the Plaintiffs' first cause of action for the failure to pay royalty on volumes of hydrocarbons, including drip condensate; (ii) does not dismiss the Plaintiffs' second cause of action to the extent that it alleges a breach of the duty of good faith and fair dealing, but dismisses the second cause of action to the extent it asserts a claim in tort for fraud and misstatement of the value of gas and affiliate sales; (iii) dismisses the Plaintiffs' third cause of action for breach of the duty to market hydrocarbons; (iv) dismisses the Plaintiffs' fourth cause of action to the extent it seeks the Court to apply Colorado's Oil and Gas Conservation Act, but does not dismiss Plaintiffs' allegations based on the Proceeds Payment Act; (v) does not dismiss the Plaintiffs' fifth cause of action for bad faith breach of contract; (vi) dismisses the Plaintiffs' sixth cause of action for unjust enrichment and to the extent the Plaintiffs are requesting injunctive relief, but does not dismiss the Plaintiffs' request for declaratory relief; (vii) dismisses the Plaintiffs' seventh cause of action for conversion; and (viii) does not dismiss the Plaintiffs' class-action allegations.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Brian K. Branch
The Law Office of Bryan K. Branch
Albuquerque, New Mexico

--and--

- 155 -

Turner W. Branch
Cynthia Zedalis
Branch Law Firm
Albuquerque, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, P.C.
Norman, Oklahoma

--and--

Karen Aubrey
Law Office of Karen Aubrey
Santa Fe, New Mexico

  *Attorneys for the Plaintiff*

Robert J. Sutphin
Holland & Hart LLP
Santa Fe, New Mexico

--and--

Michael B. Campbell
Campbell Trial Law LLC
Santa Fe, New Mexico

  *Attorneys for ConocoPhillips Company, LLC*

- 156 -