**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON
LIVING TRUST; THE PRICHETT
LIVING TRUST; CYNTHIA W.
SADLER; SHIRLEY L. SCANLON
LIVING TRUST AND ROBERT
WESTFALL,

        Plaintiffs,

vs.                                                                   No. CIV 12-0039 JB/KBM

CONOCOPHILLIPS COMPANY, LLC,

        Defendant.

and

THE ANDERSON LIVING TRUST
f/k/a THE JAMES H. ANDERSON
LIVING TRUST; THE PRICHETT
LIVING TRUST; CYNTHIA W.
SADLER; and ROBERT WESTFALL,

        Plaintiffs,

vs.                                                                   No. CIV 12-0040 JB/LFG

WPX ENERGY PRODUCTION, LLC f/k/a
WPX ENERGY SAN JUAN, LLC and
WILLIAMS PRODUCTION COMPANY,
LLC; and WPX ENERGY ROCKY MOUNTAIN,
LLC, f/k/a WILLIAMS PRODUCTION RMT
COMPANY, LLC,

        Defendants.

**<u>MEMORANDUM OPINION</u>**[1]

---

[1] On March 29, 2013, the Court entered an Order in both cases stating that it denies the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29,

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29, 2012 (Case No. CIV 12-0039 Doc. 37); and (ii) the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29, 2012 (Case No. CIV 12-0040 Doc. 52)(collectively "Motions to Certify").  The Plaintiffs named in the First Amended Complaint for Underpayment for Oil and Gas Royalties, filed in state court on December 5, 2011, filed in federal court on January 12, 2012 (Case No. CIV 12-0039 Doc. 1-1)("FAC") -- James H. Anderson Living Trust (through James Anderson as trustee), Pritchett Living Trust (through April Pritchett as trustee), Cynthia W. Sadler, Shirley L. Scanlon Living Trust (through Shirley L. Scanlon, as trustee), and Robert Westfall -- and the Plaintiffs named in the Second Amended Complaint, filed February 16, 2012 (Case No. CIV 12-0040 Doc. 10)("SAC") -- James H. Anderson Living Trust (through James Anderson as trustee), Pritchett Living Trust (through April Pritchett as trustee), Cynthia W. Sadler, and Robert Westfall -- are nearly identical and have made nearly identical allegations in both matters against the Defendants -- ConocoPhillips Company, LLC, and WPX Energy Production, LLC, f/k/a WPX Energy San Juan LLC, Williams Production Company, LLC, and WPX Energy Rocky Mountain, LLC, f/k/a Williams Production RMT Company, LLC.  The Plaintiffs' Motion to Certify is nearly identical in both cases, and the Defendants respond with similar arguments.  *See* ConocoPhillips Company's Response in Opposition to Plaintiff's Motion to Certify Question of

---

2012 (Case No. CIV 12-0039 Doc. 37), and the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29, 2012 (Case No. CIV 12-0040 Doc. 52).  <u>See</u> Order, filed March 29, 2013 (Case No. CIV 12-0039 Doc. 73); Order, filed March 29, 2013 (Case No. CIV 12-0040 Doc. 94)(collectively, "Orders").  The Court stated that it would "at a later date issue an opinion more fully detailing its rationale for this decision."  Orders at 2 n.1. This Memorandum Opinion is the promised opinion.

Law to the New Mexico Supreme Court, filed July 16, 2012 (Case No. CIV 12-0039 Doc. 42)("CP Response"); Defendant's Response to Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed July 16, 2012 (Case No. CIV 12-0040 Doc. 57)("WPX Response"). The Court will thus address the motions together in this Memorandum Opinion. Any differences in fact or law that exist between the two matters will be noted.

The Court held a hearing on the Motion to Certify on September 14, 2012. The primary issue is whether the Court should certify to the Supreme Court of New Mexico the question whether New Mexico recognizes the "marketable condition rule" in oil and gas leases. The Court will deny the Motion to Certify, because the United States Court of Appeals for the Tenth Circuit has held that there is no support for the marketable condition rule in New Mexico, see Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1114 (10th Cir. 2005)("Elliott Indus."), and there have not been any New Mexico appellate court decisions holding otherwise since Elliott Indus. Further, the Plaintiffs requested the Court to certify only after the Court indicated its inclination that Elliott Indus. is dispositive. The Court has since dismissed the Plaintiffs' only claim that relied on the marketable condition rule, making certification improper.

## FACTUAL BACKGROUND

This matter arises from a dispute over the royalty payments that the Defendants, producers of oil and gas in New Mexico and Colorado, and working interest holders on oil-and-gas leases belonging to the Plaintiffs, owe to the Plaintiffs, royalty interest holders on the leases.

> The San Juan Basin, one of the largest natural gas producing fields located in northwest New Mexico and southwest Colorado, was originally developed in the early 1950's by El Paso Natural Gas Company . . . . The natural gas produced in the San Juan Basin is conventional gas which contains methane (natural gas) and entrained natural gas liquids ("NGLs"), such as ethane and butane. In order to

> make the gas safe to enter the interstate pipeline, the NGLs must be removed from
> the gas stream.

Elliott Indus., 407 F.3d at 1099.  The Plaintiffs in this matter all own interests in hydrocarbons

derived from wells in the states of New Mexico and Colorado.  See FAC ¶¶ 1-7, at 1-2; SAC, ¶¶

1-4, at 1-2.  The Plaintiffs reside in the southwest, in Utah (Anderson Living Trust), Colorado

(Pritchett Living Trust), Texas (Sadler), and New Mexico (Scanlon Living Trust and Robert

Westfall).  See FAC ¶¶ 1-7, at 1-2; SAC ¶¶ 1-4, at 1-2.  ConocoPhillips and WPX Energy

Production, LLC, f/k/a WPX Energy San Juan LLC, Williams Production Company, LLC, and

WPX Energy Rocky Mountain, LLC, f/k/a Williams Production RMT Company, LLC ("WPX")

are producers and vendors of conventional natural gas, originating from the Fruitland coal

formation; coalbed methane ("CBM") natural gas; and other petroleum hydrocarbons from wells

in which the Defendants own lease-hold interests.[2]  See FAC ¶ 8, at 2-3; SAC ¶ 9, at 3.

"Plaintiffs each own a non-cost bearing interest in the revenues derived from the production and

sale of hydrocarbons pursuant to the terms of oil and gas leases owned or partially owned by" the

---

[2] "Conventional natural gas" differs from "unconventional natural gas" in the manner, ease, and cost associated with extracting the resources.  Conventional & Unconventional, Canadian Association of Petroleum Producers, http://www.capp.ca/CANADAINDUSTRY/NATURALGAS/CONVENTIONAL-UNCONVENTIONAL/Pages/default.aspx (last visited Apr. 24, 2012).  Conventional natural gas is produced from "relatively highly porous and permeable sandstone or carbone geologic formations."  Natural Gas: A Primer, Natural Resources Canada (last modified Jan. 18, 2011), http://www.nrcan.gc.ca/energy/sources/natural-gas/1233#conventional.  Unconventional natural gas is produced from "coal seams (. . . CBM) , low permeability rocks . . . , or shale . . . ."  Id.

The Fruitland Coal formation is "one of the most prolific sources of U.S. coalbed methane reserves."  Mesa Royalty Trust: Topics: San Juan Basin Fruitland Coal Drilling, wikinvest (April 24, 2013, 11:14 AM EDT), http://www.wikinvest.com/stock/Mesa_Royalty_Trust_%28MTR%29/San_Juan_Basin_Fruitland_Coal_Drilling.

CBM natural gas is natural gas extracted from coal beds.  See Coalbed Methane, Wikipedia (Apr. 23, 2013), http://en.wikipedia.org/wiki/Coalbed_methane.

Defendants in the "subject wells," except Scanlon Living Trust, which owns no interest in WPX lease-hold interests.  FAC ¶ 9, at 3; SAC ¶10, at 3.  The "subject wells" are "all wells in the States of New Mexico and Colorado in which [the Defendants own] all or a portion of the oil and gas leases under which non-cost bearing, royalty and/or overriding royalty payments are/were owed, and which produce or produced hydrocarbons."  FAC ¶ 10, at 3; SAC ¶ 11, at 3.  The Plaintiffs bring this action as a class against the Defendants on behalf of all owners of "non-cost bearing" royalty interests in the subject wells.[3]  FAC ¶ 12, at 4; SAC ¶ 13, at 4.

The Plaintiffs, or their predecessors, acquired their interests in the hydrocarbon revenues from the subject wells through executing oil-and-gas mining leases and/or permits to Defendants. See FAC ¶ 10, at 3; SAC ¶ 11, at 3.  Under the leases, the Defendants owe the Plaintiffs a "duty to pay royalties on all hydrocarbons" for the value or price which the Defendants do or should receive from an "arm's length" sale of the hydrocarbons.  FAC ¶ 11, at 3; SAC¶ 12, at 3-4.  The leases give the Plaintiffs a right to royalties in the "drip condensate," a liquid product which is recovered during the Defendants' oil and gas mining processes.[4]  FAC ¶ 26, at 9; SAC ¶ 28, at 9.

---

[3] The Plaintiffs exclude from the FAC and SAC "any claims previously asserted in prior cases in which such claims were determined by final judgment and/or settled by final order approving settlement at the time of this filing between the parties hereto, inclusive of putative Class Members."  FAC ¶ 20, at 6; SAC ¶ 21, at 6-7.  The Plaintiffs also exclude from the proposed class definition all "interests owned by any federal, state or municipal governmental bodies, as well as any interest held in trust by the federal government for any Indian tribe or organization."  FAC ¶ 20, at 6; SAC ¶ 21, at 6-7.

[4] Drip condensate is a "high-grade liquid which is sold like oil, that comes off of the production . . . ."  Transcript of Hearing at 20:10-15 (taken June 19, 2012), filed July 5, 2012 (Doc. 54)(Brickell)("MTD Tr.").  The Department of Interior has defined drip condensate as:

any condensate recovered downstream of the facility measurement point without resorting to processing.  Drip condensate includes condensate recovered as a

- 5 -

The Plaintiffs allege that the Defendants have not credited the Plaintiffs with the revenue derived from the drip condensate.  See FAC ¶ 27, at 9; SAC ¶ 29, at 9-10.  Currently, the Defendants calculate the Plaintiffs' royalty interests on the sale price received from the Defendants' affiliated intermediaries for hydrocarbons from wells in which the Plaintiffs own royalty interests, mixed with hydrocarbons from other wells in which the Plaintiffs do not own royalty interests.  See FAC ¶¶ 31-32, at 10-11; SAC ¶¶ 33-34, at 11.  The Plaintiffs assert that the leases do not provide for the Defendants to calculate the Plaintiffs' royalty payments using the average sale price of a mixture of hydrocarbons from wells in which the Plaintiffs own a royalty interest and other wells in which the Plaintiffs do not own royalty interests.  See FAC ¶ 11, at 3-4; SAC ¶ 12, at 3-4.  The Defendants' affiliated intermediaries sell the hydrocarbons at a significant profit, a profit which the Plaintiffs allege that the Defendants do not pass on to the Plaintiffs.  See FAC ¶ 32, at 11; SAC ¶ 33, at 11.  Additionally, the Defendants' royalty payments to the Plaintiffs have not been consistent.  On "numerous instances," the Plaintiffs complain that the Defendants have waited longer than forty-five or even ninety days after receiving revenue from the Plaintiffs' shares to pay the Plaintiffs their royalty interest.  FAC ¶¶ 55-57, at 17; SAC ¶¶ 57-60, at 16-17.

The Plaintiffs allege that the Defendants have not always disclosed to the Plaintiffs the gross volume of gas produced from the Plaintiffs' wells, the gross revenue or value the

---

result of its becoming a liquid during the transportation of the gas removed from the lease or recovered at the inlet of a gas processing plant by mechanical means, often referred to as scrubber condensate.

64 F.R. 43506-01.  Drip condensate is a "very valuable commodity."  MTD Tr. at 20:24-25 (Brickell).

Defendants obtain from the gross production of gas, and the extent of costs that are deducted from the Plaintiffs' royalty payments.  See FAC ¶ 36, at 12; SAC ¶ 38, at 12.  One such cost which is deducted from the Plaintiffs' royalty payments is the cost of rendering the natural gas and other hydrocarbons taken from the subject wells marketable.  See FAC ¶ 49, at 14; SAC ¶51, at 15.

## PROCEDURAL BACKGROUND

Relevant to this motion, the Plaintiffs allege in their third cause of action that the Defendants violated the terms of the leases by deducting from the Plaintiffs' royalties the cost of rendering the hydrocarbons marketable.  See FAC ¶¶ 46, 50, at 14, 15; SAC ¶¶ 47, 52, at 14, 15. The Plaintiffs contend that deducting such costs is a violation of the "mutual covenants and obligations contained in the Leases and/or under state law," which impose a duty on the Defendants to "market condensate, natural gas, natural gas liquids and all other products derived from the hydrocarbons produced, in order to obtain the highest possible price advantage" for the Plaintiffs.  FAC ¶¶ 42-43, at 13; SAC ¶¶ 44-45, at 14.  The Plaintiffs assert that the Defendants, as lessees and owners of working interests in the subject wells, have a duty to "render the natural gas and other hydrocarbons marketable at [their] own expense, and not at the expense of Plaintiffs and other non-cost bearing interest owners."  FAC ¶ 46, at 14; SAC ¶ 48, at 14.

1.    **The Defendants Moved to Dismiss the Plaintiffs' Cause of Action Which Relied on the Marketable Condition Rule.**

The Defendants filed motions to dismiss the Plaintiffs' third cause of action, among other claims.  See Defendant ConocoPhillips Company's Motion to Dismiss Plaintiffs' First Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-

- 7 -

0039 Doc. 11)("CP MTD"); Defendants WPX Energy Production, LLC and WPX Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for Underpayment of Oil and Gas Royalties, filed March 5, 2012 (Case No. CIV 12-0040 Doc. 18)("WPX MTD"). The Defendants argue that the Plaintiffs have unsuccessfully attempted to state a claim for a breach of the "marketable condition rule" in the third cause of action.  CP MTD at 12; WPX MTD at 11.  WPX asserts that the Plaintiffs' claim can survive only if the duty to "not deduct costs incurred before a gas is in a marketable condition" and to not "deduct costs that are not actually incurred or are unreasonable" is implied into the language of the leases.  WPX MTD at 11.  WPX posits that New Mexico case law does not allow a court to imply a covenant in an oil-and-gas lease "except in the absence of any expressed" covenant on the subject.  WPX MTD at 12 (citing Libby v. De Baca, 1947-NMSC-007, 51 N.M. 95, 99, 179 P.2d 263, 265; State ex rel. Shell Petroleum Corp. v. Worden, 1940-NMSC-038, 44 N.M. 400, 103 P.2d 124, 126.  WPX asserts that, under Cont'l Potash, Inc. v. Freeport-McMoran, Inc., 1993-NMSC-039, 115 N.M. 690, 858 P.2d 66, a court may imply a covenant only where the covenant is "fundamental to the purposes" of the lease at issue and "justified upon the grounds of legal necessity."  WPX MTD at 12.  The Defendants argue that the Plaintiffs' claim for breach of the marketable condition rule fails to articulate a claim for an implied covenant under New Mexico law.  See CP MTD at 17-18; WPX MTD at 13.   The Defendants allege that, because the Plaintiffs did not first demonstrate that leases are silent regarding the payment of royalties, or that a covenant must be implied into the lease by necessity, the Court cannot imply the marketable condition rule into the Leases.  See CP MTD at 17-18; WPX MTD at 13.  WPX further asserts that the implied duty to market does not extend beyond a lessee's obligation to "'make diligent efforts to market the

production in order that the lessor may realize on his royalty interest.'"   WPX MTD at 16

(quoting Wolfe v. Texas Co., 83 F.2d 425, 432 (10th Cir. 1936)).

  The Plaintiffs argue that New Mexico law follows the "marketable condition rule," which

requires the Defendants to bear the cost of making oil and hydrocarbons marketable, and that the

Defendants may not pass this cost onto the Plaintiffs.  See Plaintiffs' Response to Defendant

ConocoPhillips Company, LLC's Motion to Dismiss Plaintiffs' First Amended Complaint for

Underpayment of Oil and Gas Royalties at 18, filed April 18, 2012 (Case No. CIV 12-0039 Doc.

23)("CP MTD Response")(citing Creson v. Amoco Prod. Co., 2000-NMCA-081, ¶ 13, 129 N.M.

529, 10 P.3d 835); Plaintiffs' Response to Defendants WPX Energy Production, LLC and WPX

Energy Rocky Mountain, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint for

Underpayment of Oil and Gas Royalties at 18, filed April 18, 2012 (Case No. CIV 12-0040 Doc.

35)("WPX MTD Response")(same).  The Plaintiffs assert that, under the marketable condition

rule, the producer/lessee of a gas well must bear specific post-extraction costs, including the cost

of rendering the production marketable.  See CP MTD Response at 19; WPX MTD Response at

18.

  The Court held a hearing on the CP MTD and WPX MTD on June 19, 2012.  See

Transcript of Hearing (taken June 19, 2012), filed July 5, 2012 (Case No. CIV 12-0039 Doc. 39);

Transcript of Hearing (taken June 19, 2012), filed July 5, 2012 (Case No. CIV 12-0040 Doc. 54)

("MTD Tr.").  The Defendants asserted that the marketable condition rule runs afoul of the

"history of the industry in the San Juan Basin and in the country."  MTD Tr. at 50:2-3

(Campbell).  The Defendants contended that the "vast majority of states," including Texas and

New Mexico, have rejected the marketable condition rule.  MTD Tr. at 50:9-51:3 (Campbell).

The Defendants asserted that the Tenth Circuit rejected the same theory of a violation of the marketable condition rule in <u>Elliott Indus.</u>  <u>See</u> MTD Tr. at 51:8-21 (Campbell).  The Defendants asserted that <u>Elliott Indus.</u> extinguished a claim for a violation of the marketable condition rule "as a matter of New Mexico law."  MTD Tr. at 51:22-24 (Campbell).  The Defendants contended that the Supreme Court of New Mexico could have commented on the existence of a marketable condition rule in <u>Davis v. Devon Energy Corp.</u>, 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75, but, because the Supreme Court of New Mexico chose not to decide whether the rule exists in New Mexico, the Tenth Circuit's ruling in <u>Elliott Indus.</u> stands.  <u>See</u> MTD Tr. at 52:13-17 (Campbell).

The Plaintiffs countered that the Defendants' assertion that New Mexico chose not to adopt the marketable condition rule is not consistent with the Supreme Court of New Mexico's decision in <u>Davis v. Devon Energy Corp.</u>, because the Supreme Court of New Mexico remanded the case to the district court for an adjudication on the merits.  <u>See</u> MTD Tr. at 53:20-24 (Brickell).  The Plaintiffs asserted that whether the Supreme Court of New Mexico will adopt the marketable condition rule is still an open question, because the Supreme Court of New Mexico did not reject the rule in <u>Davis v. Devon Energy Corp.</u>  <u>See</u> MTD Tr. at 54:15-55:13 (Brickell). The Plaintiffs stated that they do not agree that the Tenth Circuit construed New Mexico law, in <u>Elliott Indus.</u>, to not follow the marketable condition rule.  <u>See</u> MTD Tr. at 57:16-21 (Court, Brickell).  The Plaintiffs contended that the Tenth Circuit did not rule on the existence of an implied duty to market hydrocarbons in <u>Elliott Indus.</u> because the plaintiffs had expressly dropped their breach-of-contract claims.  <u>See</u> MTD Tr. at 58:3-13 (Brickell).

The Defendants responded that the Tenth Circuit addressed the posture of the Plaintiffs'
claims in Elliott Indus., when the Tenth Circuit found that "'[t]his conception of the implied duty
to market finds no support within New Mexico case law.'"   MTD Tr. at 59:5-15
(Campbell)(quoting Elliott Indus., 407 F.3d at 1114).   The Defendants asserted that Davis v.
Devon Energy Corp. does not leave open the possibility that the Supreme Court of New Mexico
will adopt the marketable condition rule in the future, because the Supreme Court of New
Mexico stated that "'[n]othing in this opinion should be construed as either the recognition or
disapproval of the market-condition rule, its scope, or its applicability.'"   MTD Tr. at 60:4-11
(Brickell)(quoting Davis v. Devon Energy Corp., 2009-NMSC-048, ¶ 15.

The Court stated that it would study Elliott Indus. in further detail regarding the
Plaintiffs' claims for fraud and breach of an implied duty to market hydrocarbons.   See MTD Tr.
at 62:4-7 (Court).   The Court stated, however, that it understood Elliott Indus. to interpret New
Mexico law as not adopting the marketable condition rule, and was inclined to grant the CP
MTD and WPX MTD regarding the Plaintiffs' third cause of action.   See MTD Tr. at 62:12-25
(Court).   Neither the Plaintiffs nor the Defendants mentioned the option of certifying the
question to the Supreme Court of New Mexico at the hearing.

**2.      The Plaintiffs Moved to Certify the Question to the Supreme Court of New Mexico.**

Ten days later, on June 29, 2012, the Plaintiffs filed the Motion to Certify in both cases.
The Plaintiffs argue that the question whether New Mexico recognizes the marketable condition
rule is a "novel and unsettled question of state law in which the public has a significant interest,
making it ripe for certification."  Motion to Certify at 3.  The Plaintiffs emphasize that the Court

is to "ascertain and apply the state laws," and urge the Court to certify because "<u>neither</u> the New Mexico Supreme Court <u>nor</u> the Court of Appeals has definitively decided the issue of whether the marketable condition rule will be applied . . . as the law of the state."  Motion to Certify 4 (emphasis in original).  Although the Tenth Circuit has said that the marketable condition rule has "no support in New Mexico law," <u>Elliott Indus.</u>, 407 F.3d at 1114, the Plaintiffs assert that this statement is not only dicta, but it relies on factually dissimilar cases.  <u>See</u> Motion to Certify at 6.  The Plaintiffs argue that the Tenth Circuit, in relying on <u>Continental Potash</u>, read that case too broadly: "The <u>Elliott</u> court interpreted this decision as negating the marketable condition rule, even though the actual holding of <u>Continental Potash</u> was limited to a rejection of implied covenants when express contract provisions are available."  Motion to Certify at 6.  In <u>Creson v. Amaco Prod. Co.</u>, 2000-NMCA-081, 129 N.M. 529, 10 P.3d 853, the plaintiff "conceded that the carbon dioxide was marketable at the wellhead," 2000-NMCA-081, ¶ 22, a point to which the Plaintiffs in the current case do not stipulate.  Motion to Certify at 7.  Four years after the Tenth Circuit decided <u>Elliott Indus.</u>, the Supreme Court of New Mexico decided <u>Davis v. Devon Energy Corp.</u>, 2009-NMSC-048, 147 N.M. 157, 218 P.3d 75.  The Plaintiffs argue that, while the Supreme Court of New Mexico avoided deciding whether the marketable condition rule existed in New Mexico, it decided that "the reasoning used in the <u>Continental Potash</u> decision (relied on by the <u>Elliott</u> court in denying the existence of the marketable condition rule) was inapplicable to the marketable condition rule, when claimed as an implied legal duty."  Motion to Certify at 8.  The Plaintiffs argue that these cases show that New Mexico law is unsettled when it comes to the marketable condition rule and so certification is proper.  Motion to Certify at 10.  The Plaintiffs anticipated that the Defendants would argue that <u>ConocoPhillips v. Lyons</u>, 2013-NMSC-009,

299 P.3d 844, then pending before the Supreme Court of New Mexico, would address the marketable condition issue, but because the pending case was limited to statutory issues, the Plaintiffs asserted that the Supreme Court of New Mexico would not reach the question sought to be certified.  <u>See</u> Motion to Certify at 11-12.

The Defendants argue that certification is not proper, because "[t]he Tenth Circuit has addressed the very same state law question that Plaintiffs seek to certify and concluded that the 'marketable condition' rule does not exist within New Mexico's implied duty to market production under an oil-and-gas lease."  WPX Response at 2 (citing <u>Elliott Indus.</u>, 407 F.3d at 1113-14).  <u>See</u> CP Response at 2.  Responding to the argument that the controlling language in <u>Elliott Indus.</u> is dicta, the Defendants assert that the language comes from an alternate holding, which is not dicta.  <u>See</u> WPX Response at 4 (citing <u>Surefoot LC v. Sure Foot Corp</u>, 531 F.3d 1236, 1243 (10th Cir. 2008)("Alternative rationales such as this, providing as they do further grounds for the Court's disposition, ordinarily cannot be written off as dicta."); CP Response at 4 (citing <u>Thompson v. The Weyerhaeuser Co.</u>, 582 F.3d 1125, 1129(10th Cir. 2009)("[A] holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment.")).  The Defendants argue that the Court should not exercise its discretion to certify, because the Plaintiffs made the motion only after the Court indicated its inclination to follow <u>Elliott Indus.</u>.  <u>See</u> WPX Response at 9; CP Response at 9.  The Defendants argue: "'Once a question is submitted for decision to the district court, the parties should be bound by the outcome[.]'" WPX Response at 9 (quoting <u>Perkins v. Clark Equip. Co.</u>, 823 F.2d 207, 210 (8th Cir. 1987)); CP Response at 9 (same).  The Defendants also argue that the Supreme Court of New Mexico

- 13 -

would reach the marketable condition issue in the pending case <u>ConocoPhillips v. Lyons</u>, an additional factor weighing against certification in the present case.  <u>See</u> WPX Response at 9-10; CP Response at 9-10.

The Plaintiffs argue in reply that <u>Elliott Indus.</u> is not dispositive on the issue.  Plaintiffs' Reply in Support of Motion to Certify at 1, filed August 2, 2012 (Case No. CIV 12-0039 Doc. 43); Plaintiffs' Reply in Support of Motion to Certify at 1, filed August 2, 2012 (Case No. CIV 12-0040 Doc. 58)(collectively "Reply").  The Plaintiffs argue that the Supreme Court of New Mexico could have affirmed the findings and rationale of <u>Elliott Indus.</u> in <u>Davis v. Devon Energy Corp.</u>, but because the Supreme Court of New Mexico did not, it underscores the uncertainty of New Mexico law.  Reply at 3.  "[B]y refusing to acknowledge or adopt the findings in <u>Elliott</u> and <u>Continental Potash</u>, the New Mexico Supreme Court has disavowed them.  This is clearly a 'decision,' even if by omission."  Reply at 3.  The Plaintiffs assert that they are not making the motion to certify after an adverse decision, because the Court's statement regarding its inclination at a hearing was not an adverse decision.  <u>See</u> Reply at 7.

After the Supreme Court of New Mexico decided <u>ConocoPhillips v. Lyons</u>, the Plaintiffs filed that opinion as supplemental authority.  <u>See</u> Notice of Supplemental Authority – Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court and Request For Leave to Supplement Record, filed September 5, 2012 (Case No. CIV 12-0039 Doc. 53; Notice of Supplemental Authority – Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court and Request For Leave to Supplement Record, filed September 5, 2012 (Case No. CIV 12-0040 Doc. 67)(collectively "Supplemental Authority").  The Supreme Court of New Mexico did not address the marketable condition theory, and the Plaintiffs assert that the

- 14 -

"Defendant[s] relied, almost exclusively, on the 'predicted' outcome of said <u>Lyons</u> case . . . ." Supplemental Authority at 1.   CP responded that it did not rely on the outcome of <u>ConocoPhillips v. Lyons</u> as heavily as the Plaintiffs suggest and argues that <u>Elliot Indus.</u> remains binding precedent.   ConocoPhillips Company's Response to Plaintiffs' Notice of Supplemental Authority, filed September 12, 2012 (Case No. CIV 12-0039 Doc. 54).

The Court held a hearing on September 14, 2012.   <u>See</u> Transcript of Hearing (taken September 14, 2012)("Tr.")[5].   Responding to <u>ConocoPhillips v. Lyons</u>, the Court said the Supreme Court of New Mexico did not adopt the marketable condition rule.   <u>See</u> Tr. 5:5-12 (Court).   Although that case undermined the cases upon which the Tenth Circuit relied in <u>Elliot Indus.</u>, the Court indicated that the Tenth Circuit's opinion would likely still control.   <u>See</u> Tr. 5:12-22 (Court).   The Court asked the parties whether it was proper for a federal district court to certify a question to the Supreme Court of New Mexico when it seemed that the Tenth Circuit had issued a controlling opinion.   <u>See</u> Tr. 6:14-24.   The Plaintiffs said that, if a Tenth Circuit case was clearly controlling, it would not be proper to certify the question to the Supreme Court of New Mexico, but then argued that <u>Elliott Indus.</u> is not such a case.   <u>See</u> Tr. 9:22-10:18 (Brickell).   The Plaintiffs argued that subsequent decisions in New Mexico have shown that the law is unsettled and that the Court could properly exercise its discretion to certify the question to the Supreme Court of New Mexico.   Tr. 14:1-17 (Brickell).   The Plaintiffs also argued that they are timely in their request to certify; although they waited until after the Court indicated its

_____

[5] The Court's citations to the transcript of the hearing from September 14, 2012, refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and/or line numbers.

inclination, they did not wait until after the Court made a final ruling.  <u>See</u> Tr. 18:8-20:11 (Brickell).

The Court noted its inclination that New Mexico would recognize the marketable condition rule, and it asked the Defendants why the Court should wait for the Tenth Circuit to certify the question.  <u>See</u> Tr. 20:18-24 (Court).  The Defendants argued that, because of <u>Elliott Indus.</u>, the Court does not have discretion to certify in this case, and that proper procedures dictate applying <u>Elliott Indus.</u> and allowing the Tenth Circuit to certify the question if it decides certification is proper.  <u>See</u> Tr. 22:20-23:9 (Berge).  The Defendants also assert that, given the opportunity, the Supreme Court of New Mexico, based on its analysis in <u>Davis v. Devon Energy Corp.</u> and <u>ConocoPhillips v. Lyons</u>, would not recognize the marketable condition rule.  <u>See</u> Tr. 29:2-30:7 (Campbell).

**3.      <u>The Court Determined that Elliott Indus. Controls, and Dismissed the Plaintiff's Cause of Action that Relied on the Marketable Conditions Rule.</u>**

On March 29, 2013, the Court entered an Order in both cases stating that it granted in part and denied in part the CP MTD and WPX MTD.  <u>See</u> Order, filed March 29, 2013 (Case No. CIV 12-0039 Doc. 73); Order, filed March 29, 2013 (Case No. CIV 12-0040 Doc. 94)(collectively, "Orders").   On June 28, 2013, the Court issued its Memorandum Opinion, explaining that it disposed of the Plaintiffs' third cause of action.  <u>See</u> <u>Anderson Living Trust v. ConocoPhillips Co.</u>, Nos. CIV 12-0039 & CIV 12-0040, 2013 WL 3456913, at *59 (D.N.M. June 28, 2013).  The Court stated that, although there is support for the marketable condition rule in New Mexico law, <u>see</u> 2012 WL 3456913, at *39 n.7, "the Tenth Circuit's statements in <u>Elliott Indus.</u> bind the Court, unless and until the Supreme Court of New Mexico adopts a different

stance." 2012 WL 3456913, at *59. The Court noted that, after Elliott Indus., the Supreme Court of New Mexico has had the opportunity to address the marketable condition rule in Davis v. Devon Energy Corp. and in ConocoPhillips Co. v. Lyons, but it explicitly has chosen not to address the issue. 2012 WL 3456913, at *59. Thus, "the Tenth Circuit's pronouncement in Elliott Indus. remains binding on the Court." 2012 WL 3456913, at *59. The Court dismissed the Plaintiffs' third cause of action, which was the only claim requiring a determination of New Mexico law on the marketable condition rule. 2012 WL 3456913, at *59.

## LAW REGARDING CERTIFICATION TO
## THE SUPREME COURT OF NEW MEXICO

N.M.R.A. Rule 12-607 provides:

A. Power to answer.

(1) The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States, an appellate court of another state, a tribe, Canada, a Canadian province or territory, Mexico or a Mexican state if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling:

(a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or

(b) constitutional provision or statute of this state.

N.M.R.A. § 12-607(A)(1). See, e.g., Walker v. United States, 2007-NMSC-038, ¶ 1, 142 N.M. 45, 162 P.3d 882 (answering questions that the United States Court of Federal Claims certified); Campos v. Murray, 2006-NMSC-020, ¶ 2, 139 N.M. 454, 134 P.3d 741 (answering questions that the Honorable Bruce D. Black, United States District Judge for the United States District Court for the District of New Mexico, certified). Federal courts have the option of determining

- 17 -

what a state court would do if confronted with the same issue, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), or of certifying the question to the state appellate court for review, see Allstate v. Stone, 1993-NMSC-066, 116 N.M. 464, 465, 863 P.2d 1085, 1086 ("This matter comes before us by way of certification from the United States District Court for the District of New Mexico . . . ."). See Lehman Bros. v. Schein, 416 U.S. 386, 390-91 (1974)(stating that the decision to certify a question to the state supreme court "rests in the sound discretion of the federal court"). Pursuant to N.M.S.A. 1978, § 39-7-4, the Supreme Court of New Mexico may answer questions that the federal district court certifies to it if they involve propositions of New Mexico law that may be determinative of the matter before the certifying court and there are no controlling precedents from the New Mexico appellate court. See Swink v. Fingado, 1993-NMSC-013, 115 N.M. 275, 276 n.1, 850 P.2d 978, 979 n.1; Schlieter v. Carlos, 1989-NMSC-037, 108 N.M. 507, 508, 775 P.2d 709, 710.

The Supreme Court of New Mexico may answer questions that the federal district court certifies to it only "'if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.'" Arnold v. Farmers Ins. Co. of Ariz., 827 F. Supp. 2d 1289, 1294 (D.N.M. 2011)(Browning, J.)(quoting N.M.S.A. 1978, § 39-7-4). See N.M.R.A. 12-607(A). In explaining when it will accept certification from a federal court, the Supreme Court of New Mexico has noted:

> To date, we by and large have limited our acceptance of certifications prior to judgment to those cases in which there is no dispute over the factual predicates to the Court's determination of the questions certified, and our answer either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case.

Schlieter v. Carlos, 1989-NMSC-037, 108 N.M. 507, 508-09, 775 P.2d 709, 710-11 (internal

citations omitted).  One federal magistrate judge in the District of New Mexico has stated that

litigation is not pending under this statute when the district court "has already ruled upon the

issue for which [the party] seek[s] certification."  Hartford Ins. Co. of the Midwest v. Cline, 367

F. Supp. 2d 1342, 1344 (D.N.M. 2005)(Smith, M.J.).

 In Stoner v. New York Life Insurance Co., 311 U.S. 464 (1940), the Supreme Court of

the United States explained that, "in cases where jurisdiction rests on diversity of citizenship,

federal courts, under the doctrine of Erie Railroad Co. v. Tompkins . . . must follow the decisions

of intermediate state courts in the absence of convincing evidence that the highest court of the

state would decide differently."  311 U.S. at 467.  "In particular, this is true where the

intermediate state court has determined the precise question in issue in an earlier suit between the

same parties, and the highest court of the state has refused review."  Stoner v. New York Life

Insurance Co., 311 U.S. at 467.  See Adams-Arapahoe Joint School Dist. No. 28-J v. Continental

Ins. Co., 891 F.2d 772, 774 (10th Cir. 1989)("With respect to issues which the Colorado

Supreme Court has not addressed, we may consider all available resources, including Colorado

appellate court decisions, other state and federal decisions, and the general trend of authority, to

determine how the Colorado Supreme Court would construe the law in this case.").  As the Tenth

Circuit explained in Wade v. Emcasco Insurance Co., 483 F.3d 657 (10th Cir. 2007):

> In cases arising under diversity jurisdiction, the federal court's task is not to reach
> its own judgment regarding the substance of the common law, but simply to
> ascertain and apply the state law.  The federal court must follow the most recent
> decisions of the state's highest court.  Where no controlling state decision exists,
> the federal court must attempt to predict what the state's highest court would do.
> In doing so, it may seek guidance from decisions rendered by lower courts in the

relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law.  Ultimately, however, the Court's task is to predict what the state supreme court would do. Our review of the district court's interpretation of state law is de novo.

483 F.3d at 665-66 (internal citations and quotation marks omitted).

The Tenth Circuit "generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."  Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d 1325, 1331 (10th Cir. 1994).   See Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir.1988)(noting that "[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law," and that "the plaintiff did not request certification until after the district court made a decision unfavorable to her"); Boyd Rosene & Assoc., Inc. v. Kan. Mun. Gas Agency, 178 F.3d 1363, 1364 (10th Cir. 1999)("Late requests for certification are rarely granted by this court and are generally disapproved, particularly when the district court has already ruled."); Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 n.6 (10th Cir. 1996)(denying request for certification in removed case where the moving party had not moved for certification in the district court and had received an adverse ruling).

## ANALYSIS

The Plaintiffs moved the Court to certify the question whether New Mexico recognizes the marketable condition rule after the Court indicated its inclination that the Tenth Circuit's opinion in Elliott Indus. was binding.  The Court then dismissed the Plaintiffs' third cause of action, which was the only cause of action requiring a determination whether New Mexico recognizes the marketable condition rule.  Because the Tenth Circuit's decision in Elliot Indus. is

- 20 -

binding on the Court, and because the Court has dismissed Plaintiffs' third cause of action, the Court will not certify the question to the Supreme Court of New Mexico.

The Supreme Court of New Mexico may only answer questions that exist in "pending litigation" that will dispose of the case or controversy.  See N.M.S.A. 1978, § 39-7-4; N.M.R.A. 12-607(A); Schlieter v. Carlos, 775 P.2d at 710-11.  "[L]itigation is no longer pending under New Mexico law when the federal court has already decided the issue the party seeks to certify." Arnold v. Farmers Ins. Co. of Ariz., 827 F. Supp. 2d at 1297.  Likewise, the Tenth Circuit has stated that it is generally not appropriate to "certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."  Massengale v. Okla. Bd. of Exam'rs in Optometry, 30 F.3d at 1331.  Although the Plaintiffs made the request before the Court finally ruled on the question they seek to certify, they did not make the request before they submitted the same question to the Court to answer. Indeed, they did not make the request to certify until the Court indicated that it was inclined to think that it was bound, as a district court, by the Tenth Circuit's language in Elliott Indus.  See MTD Tr. at 62:12-25 (Court).  "Once a question is submitted for decision in the district court, the parties should be bound by the outcome unless other grounds for reversal are present."  Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir. 1987).  Asking two courts to answer the same question only prolongs litigation and wastes judicial resources.  While certifying questions to the state supreme court can "save time, energy, and resources," Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974), the Plaintiffs were not doing the Court any favors by asking to certify the question after the Court had already done a lot of work in ascertaining the applicable law.

- 21 -

As the Court explained in its Memorandum Opinion which dismissed Plaintiffs' third cause of action, Elliott Indus. is binding on the Court, and it answers the question whether New Mexico law recognizes the marketable conditions rule in the negative.  See Anderson Living Trust v. ConocoPhillips, 2012 WL 3456913, at *59.  The Court may disagree with the Tenth Circuit regarding whether that is a correct statement of New Mexico law, see 2012 WL 3456913, at *39 n.7, but the subsequent Supreme Court of New Mexico cases to which the Plaintiffs cite do not change the outcome.  The Court dismissed the Plaintiffs' claim which relied on the marketable conditions rule and, thus, certification to the Supreme Court of New Mexico would not be proper, because the answer would not "be determinative of an issue in pending litigation . . . ." N.M.R.A. § 12-607(A)(1).

In sum, the Court believes it would be unseemly to certify the marketable conditions issue to the Supreme Court of New Mexico.  The Court feels such a move would be an end-run on the Tenth Circuit.  In the Court's view, the Tenth Circuit has spoken on this issue, and while the Court has some reservations about the Tenth Circuit's interpretation of New Mexico law, the Court as a district court, and in an orderly federal system, must do as the Tenth Circuit has said.  Otherwise, the system gets chaotic.  The proper procedure, the Court believes, is to let the issue proceed to the Tenth Circuit, and if the Tenth Circuit for any reason decides what the Court, the parties, or the Supreme Court of New Mexico have said undermines its confidence in the continuing viability of Elliott Indus., the Tenth Circuit -- not this Court -- is the appropriate judicial level to certify the issue to the Supreme Court of New Mexico.  In other words, if this issue is to be reconsidered in the federal courts, that is a decision for the Tenth Circuit, not this Court.

**IT IS ORDERED** that the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29, 2012 (Case No. CIV 12-0039 Doc. 37), and the Plaintiffs' Motion to Certify Question of Law to the New Mexico Supreme Court, filed June 29, 2012 (Case No. CIV 12-0040 Doc. 52), are denied.  The Court will not certify the question submitted to the Supreme Court of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Brian K. Branch
The Law Office of Bryan K. Branch
Albuquerque, New Mexico

--and--

Turner W. Branch
Cynthia Zedalis
Branch Law Firm
Albuquerque, New Mexico

--and--

Karen Aubrey
Law Office of Karen Aubrey
Santa Fe, New Mexico

--and--

Bradley D. Brickell
Brickell & Associates, P.C.
Norman, Oklahoma

   *Attorneys for the Plaintiffs Anderson Living Trust, Pritchett Living Trust,*
      *Cynthia W. Sadler and Robert Westfall*

Robert J. Sutphin
Holland & Hart LLP
Santa Fe, New Mexico

--and--

Michael B. Campbell
Campbell Trial Law LLC
Santa Fe, New Mexico

    *Attorneys for Defendant ConocoPhillips Company, LLC*

Bradford C. Berge
Robert J. Sutphin
Holland & Hart LLP
Santa Fe, New Mexico

    *Attorneys for Defendant Williams Production Company, LLC and*
       *Williams Production RMT Company, LLC*